Leslie T. Gladstone, Esq. (SBN 144615)
Christin A. Batt, Esq. (SBN 222584)
FINANCIAL LAW GROUP
5656 La Jolla Blvd.
La Jolla, CA 92037
Telephone: (858) 454-9887
Facsimile: (858) 454-9596
E-mail: ChristinB@flgsd.com

Attorneys for Leslie T. Gladstone, Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>VILLA CHARDONNAY HORSES WITH WINGS, INC.,<br><br>Debtor. | Case No.: 25-04245-JBM11<br><br>**MOTION TO APPROVE TRUSTEE'S EMPLOYMENT OF JEFF WIEMANN AS NON-PROFIT CONSULTANT**<br><br>Date: March 26, 2026<br>Time: 2:00 p.m.<br>Dept: Two (2)<br>Honorable J. Barrett Marum |

     Leslie T. Gladstone, the chapter 7 trustee ("**Trustee**"), submits this Motion to Approve Trustee's Employment of Jeff Wiemann as Non-Profit Consultant ("**Motion**"). This Motion is based on the Memorandum of Points and Authorities cited herein, the Notice of Hearing and Motion and the Declarations of Leslie T. Gladstone and Jeff Wiemann filed concurrently herewith, and the record before the Court.[1]

---

[1] Trustee respectfully requests, pursuant to Rule 201 of the Federal Rules of Evidence, made applicable herein by Rule 9017 of the Federal Rules of Bankruptcy Procedure, that the Court take judicial notice of the case docket for

# I.
# **INTRODUCTION**

Debtor is a non-profit organization that has been out of compliance with California non-profit law. Trustee and the California Attorney General reached an agreement to allow Debtor to operate, provided that Debtor comply with non-profit law. As Debtor has no employee or consultant with experience in non-profit law, Trustee must retain a consultant to assist in Debtor's compliance. Had Debtor previously employed someone in this capacity, Trustee's employment of the consultant would be a simple business operating expense. In this case, however, Debtor failed to employ anyone competent in non-profit law so Trustee must retain her consultant as a professional under Sections 327 and 328 of the Bankruptcy Code.

Trustee seeks an order authorizing the employment of Jeff Wiemann ("**Wiemann**"), pursuant to Bankruptcy Code sections 327 and 328, and authorizing Wiemann's compensation, subject to holdback, to be paid as an administrative expense, on a monthly basis, after Trustee's review and approval and subject to the procedures described below.

# II.
# **STATEMENT OF FACTS**

On October 14, 2025, Villa Chardonnay Horses with Wings, Inc. ("**Debtor**"), commenced this bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.

Three and a half months later, on January 29, 2026, Trustee was appointed as chapter 11 trustee of Debtor's bankruptcy estate (the "**Estate**").

///

---

the above-captioned case and each of the pleadings and other documents on file in the case.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

Debtor is an animal sanctuary which houses elderly and sick animals. (ECF No. 1, Sched. A/B ¶ 77) Debtor operates out of real property located at 4554 Boulder Creek Road, Julian, CA 92036 and 4430 Boulder Creek Road, Julian, CA 92036.

Debtor is a California nonprofit public benefit corporation (a "**Nonprofit Corporation**"), subject to California's Supervision of Trustee and Fundraisers for Charitable Purposes Act and related regulations (Cal. Gov. Code §§12580 *et seq.*; Cal Code Regs., tit.11, §§300, *et seq.*, collectively, the "**Charitable Supervision Act**"). As a Nonprofit Corporation, Debtor was issued registration number CT0261810 by the Registry of Charities and Fundraisers (the "**Registry**").

Prior to the initiation of this bankruptcy case, Debtor's registration with the Registry became delinquent. As a result, while its registration was not in good standing, Debtor could not operate as a Nonprofit Corporation or solicit for charitable purposes pursuant to Cal. Code Regs. Tit 11, § 312.

Shortly after her appointment, Trustee and the California Attorney General's Office reached agreement that requires Debtor's compliance with the Charitable Supervision Act and the Registry. (ECF Nos. 99 & 101)

This case is unusual in that it requires compliance with the Charitable Supervision Act and the Registry requirements. Trustee has determined that it is in the best interest of the Estate to employ Wiemann, as he has significant experience in the non-profit sector and is well versed with compliance requirements. Wiemann's CV is attached hereto as <u>Exhibit A</u> and incorporated herein.

A consultant like Wiemann is typically compensated on a weekly or monthly basis. Trustee is informed and believes that waiting an extended period of 120 days for payment of compensation would place undue hardship on Wiemann or any other consultant with similar experience in the non-profit sector. Lastly, the proposed procedure for monthly compensation will satisfy Section 327

and Section 1103 by requiring a noticed hearing for approval of interim compensation at regular 120-day intervals.

### III.
### PROPOSED COMPENSATION AND REIMBURSEMENT PROCEDURE

Trustee proposes the following procedures for Wiemann's compensation and Court approval ("**Interim Compensation Procedure**").

(1) Wiemann will be compensated on an hourly basis at a billing rate of $175.00 per hour. Wiemann will also bill all expenses at standard rates. Expenses include photocopying, travel, long-distance telephone, messenger service and express mail, and other research.

(2) Wiemann shall be paid monthly compensation of 80% of the fees requested (with a hold-back of 20% of such fees) and reimbursement of 100% of expenses only after expiration of the 14-day objection deadline described below.

(3) At the end of each month, Wiemann will submit to Trustee his invoice for compensation and reimbursement of expenses, with supporting documentation (collectively, "**Invoices**"), for that month.

(4) Trustee will serve copies of Wiemann's Invoices on Debtor, the U.S. Trustee, the 20 largest unsecured creditors, and parties requesting special notice. These parties will have an opportunity to object to the Invoices within 14 calendar days after service of the Invoices by notifying Trustee and Wiemann in writing and setting forth the specific grounds for the objection.

(5) Upon receipt of a written objection, Wiemann will have the option to either request a hearing on the objection or agree to Trustee holding back the amount of fees and/or expenses that are the subject of the objection until the hearing on the quarterly application for interim compensation. The automatic 20% hold-back of fees may include any fees to which an objection was raised.

(6) If no timely objection is received, after review and approval by Trustee, Trustee shall pay 80% of the requested fees and 100% of the expenses.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

Trustee will report these fees and expenses in her Monthly Operating Report filed with the Court.

(7) Approximately once every 120 days Wiemann will file and serve an application for an interim award of compensation and expenses, in compliance with applicable federal and local bankruptcy rules and the Guidelines of the Office of the United States Trustee for the Southern District of California. Each application will be filed with the Court and noticed for hearing in accordance with LBR 2002-2. If Wiemann fails to comply with the 120-day fee application procedure set forth above, Wiemann shall not be entitled to continue to utilize the interim fee compensation procedure thereafter.

(8) Neither the U.S. Trustee nor any party in interest shall be barred from raising objections to any charge or expense in any fee application filed with the Court on the ground that no objection was raised with respect to an Invoice.

Trustee is informed and believes that Wiemann does not represent any interest adverse to Debtor or the Estate, and Wiemann is a disinterested person with respect to Debtor and the Estate within the meaning of 11 U.S.C. section 101(14), as is more specifically set forth in the Declaration of Jeff Wiemann, filed concurrently herewith.

A formal retention agreement is waived.

## IV.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.** **The Interim Compensation Procedure Is Appropriate in this Case.**

Bankruptcy Code section 328(a) provides that bankruptcy courts may authorize the employment of professionals "on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

In *Knudsen Corp. v. U.S. Trustee (In re Knudsen Corp.)*, 84 B.R. 668 (B.A.P. 9th Cir. 1988), the Bankruptcy Appellate Panel for the Ninth Circuit

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

Court of Appeals approved periodic retainer payments under certain conditions. The court was particularly concerned with payments made to a professional (two large law firms) before court scrutiny of fees and expenses during the formal court-approval process. The court suggested a variety of methods that could be used to ensure recovery of fees that were paid but not later approved. These methods include, without limitation, retainer agreements for only a percentage of the amount billed to minimize the necessity of repayment; the professional posting a bond; the professional's financial position is such that reassessment can be repaid; and/or funds paid prior to allowance be held in a trust account until final allowance. *Id.* at 672.

In this case, Trustee will holdback 20% of Wiemann's requested fees (or the total amount of any objection in excess of such 20% amount), and Wiemann will only be paid 80% of his requested fees and 100% of expenses *after* Trustee, Debtor, the U.S. Trustee, the 20 largest unsecured creditors, and parties requesting special notice have had an opportunity to object to an Invoice and have not objected. This procedure satisfies the reassessment requirements of *Knudsen Corp.*

In addition, the court suggested that an interim retainer procedure, such as the procedure requested here, may be approved where the bankruptcy court makes the following findings.

1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;

2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;

3. The court is satisfied that counsel can respond to any reassessment in one or more of the ways listed above; and

  4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

*Id.* at 672-73.

  The first suggested finding (an unusually large case in which an exceptionally large amount of fees accrue each month) cannot be made in this case. That should not, however, doom Wiemann to wait more than 120 days to be paid for his services. This is a relatively small chapter 11 case with about $3.6 million in scheduled assets. (ECF Nos. 1 & 37, Sched. A/B) Wiemann is an individual with lengthy experience operating non-profit organizations. The bulk of Wiemann's work is expected to be concentrated in the first few months to bring Debtor into compliance with California law and then monitor to ensure continued compliance. Wiemann is an individual, not a large law firm as were the two law firms in *Knudsen Corp.* And his billing rate of $175/hour will likewise not result in the possibility of large amounts of reassessment to be repaid. Also, as mentioned above, had Debtor employed a like individual in its operations prior to filing bankruptcy, compliance with the *Knudsen Corp.* requirements would not be an issue; to operate successfully and compliantly, Debtor needs this assistance. Under the circumstances of this case, the inapplicability of this first finding should not be fatal to Court approval of the proposed Interim Compensation Procedure.

  The second finding (that waiting an extended period would place an undue hardship on Wiemann) applies here. Wiemann is an individual who is typically compensated on a weekly or monthly basis. Waiting an extended period of 120 days for payment of compensation would place an undue hardship on Wiemann or any other consultant with similar experience in the non-profit sector.

  The third finding (that Wiemann can respond to any reassessment in one of the ways listed above) also applies here. As explained above, Trustee will holdback 20% of Wiemann's requested compensation (or the amount of any

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE VILLA CHARDONNAY HORSES WITH WINGS, INC. 7 MOTION TO APPROVE TRUSTEE'S
CASE NO. 25-02425-JBM11  EMPLOYMENT OF JEFF WIEMANN

objection in excess of such 20% amount). Such holdback will not be paid unless and until the Court approves Wiemann's application for interim compensation.

The fourth finding (that the fee retainer procedure is subject to a noticed hearing before any payment is made) applies here as well. This Motion, requesting approval of the Interim Compensation Procedure, has been scheduled for hearing on March 26, 2026, and noticed to Debtor, the U.S. Trustee, all creditors and equity holders, and parties requesting special notice.

The Interim Compensation Procedure complies in all relevant respects with the decision in *Knudsen Corp.* and should be approved by the Court.

## B. The Interim Compensation Procedure Complies with the Court's Local Rules.

Appendix D5 of the Court's Local Rules sets forth several requirements for approval of interim compensation of professionals. The Interim Compensation Procedures above meet these requirements.

This Motion has been scheduled for hearing and noticed to all applicable parties in interest. This Motion also describes in detail the proposed procedures.

The Interim Compensation Procedure:

(1) Provides for the monthly payment of fees and reimbursement of expenses.

(2) Requires service of copies of the Invoices and supporting timesheets for which fees and costs are requested on Debtor, the United States Trustee, the 20 largest unsecured creditors, and parties requesting special notice.

(3) Provides those served with an opportunity to object within 14 calendar days after the service of the Invoices by notifying Trustee and Wiemann in writing and setting forth the specific grounds for the objection.

///

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

(4) Provides Wiemann with the option to either request a hearing on the objection or holdback the amount of fees and/or expenses that are the subject of the objection until the hearing on the application for interim compensation.

(5) Provides for an award of 80% of the fees requested with a holdback of 20% of requested fees and for an award of 100% of expenses; provided that the 20% holdback of fees may include any fees to which an objection was raised.

(6) Requires that an application for an interim award of compensation and expenses, in compliance with applicable federal and local bankruptcy rules and the Guidelines of the Office of the United States Trustee for the Southern District of California, must be filed with the Court and noticed for hearing in accordance with LBR 2002-2 approximately once every 120 days.

(7) States that neither the United States Trustee nor any party in interest shall be barred from raising objections to any charge or expense in any professional fee application filed with the Court on the ground that no objection was raised with respect to the Invoice.

(8) Provides that if the Wiemann fails to comply with the 120-day fee application procedure set forth above, Wiemann shall not be entitled to continue to utilize the interim fee compensation procedure thereafter.

The Interim Compensation Procedure complies with the Court's Local Rules and should be approved.

## V.
## CONCLUSION

The Interim Compensation Procedure complies in all practical terms with *Knudsen Corp.* and the Court's Local Rules. Trustee requests an order

authorizing the employment of Jeff Wiemann, pursuant to Bankruptcy Code sections 327 and 328, and authorizing Wiemann's compensation to be paid as an administrative expense, on a monthly basis, in accordance with the Interim Compensation Procedure described above.

    The Trustee also requests such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  February 18, 2026    FINANCIAL LAW GROUP


By:   /s/ Christin A. Batt
      Christin A. Batt, Esq.
      Attorneys for Leslie T. Gladstone, Trustee

# EXHIBIT A

# EXHIBIT A
# Wiemann's CV

# JEFF WIEMANN

## Contact

858- 397-3847 

jeff.wiemann@outlook.com 

## Professional Summary

Visionary leader with more than thirty years executive leadership experience and proven track record in organizational realignment & growth, workforce development & retention, change management and strategic planning. Expert in leading administrative and operational functions of large complex public and private organizations in a variety of industry sectors.

## Skills

- Team Building
- Budget Management & Contracts
- Legislative & Regulatory Analysis
- Organizational Effectiveness
- Community Engagement / Stakeholder Relations
- Public Speaking

- Change Management
- Workforce Development & Retention
- Policy & Procedure Development
- Information Technology
- Fundraising / Revenue Generation
- Crisis Management & Response

## Demonstrated Experience

**MATRIXED ORGANIZATION EXPERT**

Led organizations / divisions / departments ranging in size from **20** to **2,500** employees

Direct Budget Responsibility from **$3 million** to **$100 million**

Total Organization Budgets from **$3 million** to **$1 billion**

Industry Sectors Include:
**Government** (K-12 Education, Department of Defense, Department of Homeland Security)

**Non-Profit** (Foster Care, Disaster Preparedness & Response, Intellectual & Developmental Disabilities, Foundation & Chamber of Commerce)

**For Profit** (Start-up, Software Development, Technology Services, Engineering Program Management)

Exhibit A
2 of 5

## Experience

**EXECUTIVE DIRECTOR / CEO**                                                                                          Nov 2013 - Present
ANGELS FOSTER FAMILY NETWORK

- A 501(c)(3) non-profit organization licensed by the State of California as a Foster Family Agency (FFA) and accredited by CARF International. Focused on the stable placement of children ages 0-5 with nurturing resource families who promote healing and attachment, leading to healthy growth and development
- Lead organization of 21 employees, 80+ Resource Families and annual revenues of $3.3 million.
- Recognized as a Best Places to Work by the San Diego Business Journal 2016 - 2023
- Chair, Association of Foster Family Agencies of San Diego County

**PRESIDENT/CHIEF EXECUTIVE OFFICER**                                                                         Jun 2007 - Oct 2013
THE MANN COMPANY

- Founded consulting practice to enhance organizational performance through improving leadership/management practices, corporate culture, effective operations, & enhanced branding and communication
- Selected clients and engagements include Strategic Advisor (Aerospace and Defense Industry Partners, Inc.), Faculty Member (University of Phoenix, School of Business), Strategic Advisor (Templar Titan, Inc./Titan Development Group), Titan Development Group, LLC, Superior Athlete/Superior Life, Chief Financial Officer (Solute, Inc.), Strategic Advisor (Terben, Inc.)

**INTERIM PRESIDENT/CHIEF EXECUTIVE OFFICER**                                                          Feb 2008 - Mar 2009
ARC OF SAN DIEGO

- Retained as Interim President & CEO after a board directed spontaneous change in leadership
- Led organization of 1,500 full and part time staff with annual revenues exceeding $33 million
- Created insourced janitorial program, through supported employment of adults with developmental disabilities eliminating a $200,000 annual expense
- Led stabilization and rebuilding efforts focused on: Contract Revenue Generation/Fundraising, Board Governance/Accountability, Organizational Structure/Business Process Improvement, Marketing/Public Relations, Corporate Values/Culture

**EXECUTIVE DIRECTOR**                                                                                                       Nov 2007 - Mar 2008
SAN DIEGO REGIONAL DISASTER FUND

- Retained by the San Diego Foundation to serve as Executive Director, San Diego Regional Disaster Fund in response to the 2007 San Diego Wildfires
- Developed and implemented Community Grant Program to disburse over $10 million and a program community-based recovery teams to manage monetary and philanthropic resources
- Transitioned program by recruiting and training full time replacement employed by San Diego Foundation

**CHIEF EXECUTIVE OFFICER**                                                                                              Nov 2005 - May 2007
AMERICAN RED CROSS

- Rebuilt the community's trust while restoring the organization's financial strength to one of the top ten Red Cross Chapters in the country
- Led a 24/7/365 organization of 200 paid staff and 1,200 volunteers with annual revenues exceeding $11 million

- Created and implemented a customer/donor centric revenue generation model while embedding a new organizational culture based on the chapter's vision, mission, and core values, aligning priorities, training, and decision making
- Created and implemented a new staff compensation and performance management system rewarding staff for performance, longevity, and support and devotion to the chapter's vision, mission, and core values
- Financial Achievements (source annual audits): FY 2003 to FY2007, Increased net assets by 395%, Increased cash and investment reserves by 245%, for FY2007, Increased fundraising (less legacies and bequests) by 14.87%, Increased products and services revenue by 13.94%, Reduced operating expenses by 11.29%, Reduced organizational overhead from 16.80% to 13.15%

**CHIEF OPERATING OFFICER/CHIEF FINANCIAL OFFICER**                                              Jun 2003 - Nov 2005
AMERICAN RED CROSS

- Developed and implemented core legal, financial, legislative, and operating strategy for rebuilding the chapter from financial & community crisis
- Leveraged $20 million in Chapter real estate assets to rebuild reserves, eliminate debt and procure and outfit a modern chapter headquarters, including a 24-hour emergency response operations center
- Led functional review and reorganization efforts to close a $3.2 million budget shortfall in FY 2003

**DEPUTY CHIEF OF BUSINESS OPERATIONS**                                                          Dec 2001 - Jun 2003
SAN DIEGO UNIFIED SCHOOL DISTRICT

- Deputy Chief for Business Operations Branch overseeing Fiscal Control, Budget Management, Risk Management, Contracting & Purchasing, Warehousing & Distribution, Food Services, Transportation, and Information Technology
- Led the team responsible for the design and implementation of a district wide enterprise resource software programs for Finance, Contracts, Purchasing, Inventory, Human Resources, and Student Information
- Managed the redesign of the district's self and excess insurance funds.
- Designed and implemented next day delivery of office & school supplies generating incentive rebates while saving the district $2.6 million in year one.
- Improved working relationship with employee unions by building trust through open dialogue and feedback to solve long standing and ignored challenges

**CHIEF OPERATING OFFICER**                                                                      Oct 2000 - Dec 2001
NETWORK INSIGHT, LLC

- Led day-to-day operations of a dynamic information technology consulting company
- Supported the rapid expansion from 24 employees to 52 employees and from one to three office locations in less than six months
- Also served as CFO and VP of Business Development during start up

**VICE PRESIDENT, PROGRAMS & EVENTS**                                                            Mar 1998 - Oct 2000
SAN DIEGO CHAMBER OF COMMERCE

- Chamber's lead advocate for the High-Tech/Bio-Tech and Military business industries
- Led the production of over 70 annual events generating $1.1 million in revenue
- Led over 200 staff and volunteers in the planning and production of Fleet Week San Diego, the nation's largest event honoring the military
- Doubled sponsorship sales from $225,000 in 1998 to $450,000 in 1999

**NAVAL OFFICER**                                                                                                               **May 1990 - Feb 1998**
UNITED STATES NAVY

- Deputy Public Affairs Officer, Public Relations Advisory for Commander, Navy Region Southwest (aka San Diego's Navy Mayor)
- Led over 50 Department of Defense Public Relations Representatives in California and Nevada
- Served aboard USS Hurricane (PC 3) and USS Ford (FFG 54)

## Academic Credentials Degrees

University of San Diego, Master of Science in Executive Leadership (MSEL), 2003
United States Naval Academy, Bachelor of Science in Systems Engineering (BSSE), 1990

## Awards Recognition

San Diego Business Journal Top 50 Veteran Business Leaders of Influence 2023
San Diego Business Journal Best CEO's Finalist 2017
79th Assembly District Male Social Services Leader of the Year 2017
San Diego Magazine's 50 People to Watch for 2007
San Diego Metropolitan Magazine 40 under 40 for 2006
Various Military Awards and Decorations

## References

**References available upon request**

## Community Service

**CHILD & FAMILY STRENGTHENING ADVISORY BOARD**                 **Nov 2023 - Present**
COUNTY OF SAN DIEGO
Second Term

**CHILD & FAMILY STRENGTHENING ADVISORY BOARD**                 **Apr 2019 - Apr 2023**
COUNTY OF SAN DIEGO
First Term

**CHILD ABUSE PREVENTION COORDINATING COUNCIL**               **Feb 2019 - Jan 2023**
COUNTY OF SAN DIEGO

**LEAD SAN DIEGO - INFLUENCE GRADUATE**                                   **Jan 2020 - Feb 2020**
SAN DIEGO REGIONAL CHAMBER OF COMMERCE

**CHILD WELFARE SYSTEM - CAPCC WORKING GROUP**                     **Aug 2018 - Dec 2018**
COUNTY OF SAN DIEGO

**FOSTER PARENT**                                                                                                                    **Apr 2013 - Oct 2013**
ANGELS FOSTER FAMILY NETWORK