Nissan Thomas, Esq. (SBN 250273)
Law Offices of Nissan Thomas
6230 Wilshire Blvd., Suite 2015
Los Angeles, CA 90048
Telephone: (424) 781-7653
Email: info@nissanthomaslaw.com

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

In re:

VILLA CHARDONNAY HORSES WITH WINGS, INC.,

Debtor

LESLIE T. GLADSTONE,
Chapter 11 Trustee,

CASE NO.: 25-04245-JBM11

NOTICE OF MOTION AND MOTION TO REMOVE CHAPTER 11 TRUSTEE; TO STAY, VACATE, OR MODIFY TURNOVER ORDERS; FOR PRESERVATION ORDER; AND FOR EMERGENCY EVIDENTIARY HEARING

Date:  August 26, 2026
Time: 10:00AM
Place:  Dept. 2, room 118
Judge: Hon J. Barret Marum

**TO: THE HONORABLE UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ANY OTHER PARTIES IN INTEREST; DEBTOR, VILLA CHARDONNAY HORSES WITH WINGS, INC. SEEKS TO FILE A** MOTION TO REMOVE OR RESTRICT CHAPTER 11 TRUSTEE; TO STAY, VACATE, MODIFY, OR CLARIFY MAY 1 TURNOVER ORDER; AND FOR PRESERVATION, ACCOUNTING, PAYOFF DISCLOSURE, AND EMERGENCY EVIDENTIARY HEARING

Debtor Villa Chardonnay Horses With Wings, Inc. ("Debtor" or "Villa Chardonnay"), , respectfully files this  Motion to remove Chapter 11 Trustee Leslie T. Gladstone for cause under 11 U.S.C. § 324(a), or alternatively to suspend or limit her authority; to stay, vacate, modify, or clarify the May 1, 2026 turnover order and related property-control orders under Bankruptcy

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

Rule 9024; to require return, retrieval, preservation, and animal-by-animal accounting of Villa Chardonnay animals; to require accounting of estate funds and animal-care funds; to require immediate payoff disclosure; to restrict third-party use of estate property; to preserve evidence and claims; to appoint a neutral examiner, replacement trustee, or neutral animal-care/property fiduciary; and to set an evidentiary hearing.

DATE:   June 26, 2026

Nissan Thomas, Esq.

Attorney for Debtor,
Villa Chardonnay Horses
With Wings, Inc.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

<u>MEMORANDUM</u>

I. INTRODUCTION

1. This motion is about five urgent failures in estate administration: due process, funding, turnover, payoff, and possession control.

2. First, due process failed. Villa Chardonnay's reliable mailing address was P.O. Box 1000, Julian, California. USPS does not deliver ordinary mail to the physical property addresses in the area. Flores Decl. ¶¶ 4–8, Exs. H–J. Yet Debtor contends that beginning in approximately mid-February 2026 and continuing until approximately June 2026, mail connected to P.O. Box 1000, including Villa-related mail, bankruptcy mail, personal mail, and residential mail, was forwarded or routed away from Debtor and to Trustee Gladstone's office at 5656 La Jolla Boulevard, La Jolla, California. Flores Decl. ¶¶ 7–10, Exs. J–K; Kerber Decl. ¶ 10, Ex. C.

3. That is not a technical service issue. It strikes at the foundation of notice. Notices could appear proper on paper because they were addressed to P.O. Box 1000, while the actual mail stream was allegedly redirected away from Debtor and toward the Trustee's office. During that same period, the Trustee pursued funding relief, adversary relief, animal-related relief, turnover relief, possession-related relief, sale-related relief, default-related consequences, and carve-out activity. See Request for Judicial Notice ("RJN") ¶¶ –.

4. Second, the funding record raises serious fiduciary concerns. The Trustee sought, obtained, controlled, or relied on funding represented as necessary for preservation, animal care, feed, administration, and continued estate operations, including post-petition financing of approximately $400,000. RJN ¶¶ –. Yet Debtor contends that the people actually feeding and caring for the animals received no Trustee-controlled funds for feed, veterinary care, farrier care, medication, or daily animal needs, despite requests from Monika Kerber.

5. Third, the May 1 turnover was entered on an incomplete record and without a meaningful opportunity to be heard. Prior animal-control review did not support neglect. Kerber

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

Decl. ¶ 8, Ex. A. April 23 information reflected that animals had plenty of food and water. Kerber Decl. ¶ 11, Ex. D. Monika Kerber obtained equine veterinary follow-up on April 29 and cat veterinary evaluation on April 30, before the May 1 turnover hearing. Kerber Decl. ¶¶ 14–19, Exs. E–F. The Court did not receive the full veterinary context before ordering sanctuary-wide turnover.

6. Fourth, payoff transparency is being obstructed or conditioned. Debtor and its funder seek to pay, cure, escrow, refinance, or otherwise satisfy liens and claimed payoff amounts necessary to preserve the property. Instead of providing full payoff information, the Trustee stated in substance that payoff information would be provided only after Monika Kerber and Mercedes Flores vacated or were removed, after cleaning and repairs, and after the property was prepared for sale. Flores Decl. ¶ 26, Ex. O.

7. Fifth, the Trustee's possession theory is internally inconsistent. To the extent the Trustee relies on any 60-day turnover, termination, or vacate theory to force Monika Kerber and Mercedes Flores from the property, that position cannot be reconciled with the Trustee allegedly authorizing, adding, permitting, or recognizing a new tenant, occupant, licensee, or third-party user of the same property after that asserted period. A trustee cannot use one theory to remove the sanctuary operators and another theory to allow substitute users without disclosure, Court approval, insurance, compensation, access limits, and proof of estate benefit.

8. These five issues are not separate technical disputes. Together, they show a breakdown in fiduciary neutrality, due process, estate preservation, animal protection, funding accountability, and Court-supervised administration. Cause exists to remove Trustee Gladstone under 11 U.S.C. § 324(a), or at minimum to suspend or sharply limit her authority pending an evidentiary hearing and appointment of a neutral fiduciary.

## II. RELEVANT FACTS

### A. Due Process, Address Inconsistencies, and Mail Forwarding

9. Villa Chardonnay's official principal street address is 4554 Boulder Creek Road, Julian, California 92036. Its official mailing address is P.O. Box 1000, Julian, California 92036.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

Mercedes Flores is identified as Secretary and agent for service of process in the California Secretary of State records. Flores Decl. ¶ 4, Ex. H.

10. USPS does not deliver ordinary mail to the physical property addresses in the area. P.O. Box 1000 was the reliable mailing address for Villa Chardonnay, Villa-related mail, property and animal-related mail, and personal/residential mail. Flores Decl. ¶ 6.

11. Mercedes Flores prepared and reviewed a combined service and address chart showing address and service inconsistencies in the Villa Chardonnay main bankruptcy case, Monika Kerber Perez's personal bankruptcy case, and the related adversary proceeding. The chart shows that records and proofs of service used P.O. Box 1000, 4554 Boulder Creek Road, and 4430 Boulder Creek Road at different times. Flores Decl. ¶ 5, Ex. I.

12. Debtor contends that mail connected to P.O. Box 1000 was forwarded away from the P.O. Box and routed to Trustee Gladstone's office at 5656 La Jolla Boulevard, La Jolla, California beginning in approximately mid-February 2026 and continuing until approximately June 2026, when Monika Kerber and Mercedes Flores were able to address the issue and re-establish control over the mailbox and mail delivery. Flores Decl. ¶¶ 7–10, Exs. J–K; Kerber Decl. ¶ 10, Ex. C.

13. Mercedes Flores did not authorize the forwarding of her personal mail, residential mail, or any mail that would interfere with her ability to receive notice, protect personal rights, protect Villa Chardonnay's rights, protect the animals, or respond timely in this bankruptcy case. Flores Decl. ¶¶ 7–10, Exs. J–K.

14. This occurred during the same period when major bankruptcy events were occurring, including Trustee administration, Attorney General-related filings, post-petition financing, animal-related proceedings, adversary proceedings, default issues, emergency turnover proceedings, possession-related proceedings, and sale/carve-out activity. RJN ¶¶ –.

15. A proof of service showing mailing to P.O. Box 1000 does not establish meaningful notice if mail addressed to P.O. Box 1000 was being forwarded to the Trustee's own office. Likewise, use of 4554 or 4430 did not cure the problem where ordinary USPS

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

mail was not delivered to the physical property addresses and where Debtor disputes 4430 as a reliable residence or mailing address. Flores Decl. ¶¶ 5–8, Exs. H–J.

16. The due-process injury is structural. The notice channel used for deadlines, defaults, hearings, emergency filings, adversary papers, turnover relief, funding relief, and sale-related matters was allegedly redirected without Court order, without Debtor's consent, and without notice reasonably calculated to reach Debtor.

B. Funding Represented for Animal Care Was Not Given to the Operators

17. The Trustee sought, obtained, controlled, or relied on estate funding represented as necessary for animal care, feed, preservation, administration, and continued estate operations. RJN ¶¶ –.

18. The Attorney General-related filings and orders, continued-use-of-funds filings, Trustee status reports, and post-petition financing filings are central because they show the Trustee's funding and preservation representations. RJN ¶¶ –.

19. Debtor contends that approximately $400,000 in post-petition financing or estate-controlled funding was available, approved, sought, or controlled under the Trustee's administration for preservation-related purposes, including animal-related needs. RJN ¶¶ –.

20. Yet Debtor contends that the operators who were actually feeding and caring for the animals did not receive those funds for feed, veterinary care, farrier care, medication, supplies, or daily animal needs. Kerber Decl. ¶¶ __, Ex. __.

21. Monika Kerber repeatedly requested funds or assistance for animal needs, including animal-care expenses, but Debtor contends the Trustee did not provide funds to Monika, Mercedes, or the Villa Chardonnay operators for actual daily animal care. Kerber Decl. ¶¶ __, Ex. __.

22. At the same time, estate resources were used for Trustee professionals, legal fees, consultants, security, litigation, property control, and sale-related administration. RJN ¶¶ –.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

23. This funding disparity is a fiduciary issue. If funding was represented as necessary to preserve animals and the sanctuary estate, estate administration should have prioritized food, veterinary care, farrier care, medication, supplies, and continuity of care. A trustee cannot seek money for preservation and animal care, deny or withhold actual care funding from the operators, and then rely on alleged animal-care distress to justify turnover, removal, property clearing, professional-fee expansion, and sale-related relief.

C. Sale-First Conduct, Possession Control, and the 60-Day/New-Tenant Contradiction

24. Trustee Gladstone was appointed on January 29, 2026. By February 23, 2026, before the May 1 animal turnover, trustee communications referenced Paul Buie / Onyx coming to the property to plan for sale and changing or adding locks to the guest house. Kerber Decl. ¶ 9, Ex. B.

25. The Trustee's adversary filings sought possession-related and vacate-related relief, including turnover of property and assistance of U.S. Marshals. RJN ¶¶ –. The May 1 animal turnover occurred in the same broader sequence of possession-control and sale-clearing activity. RJN ¶¶ –.

26. Debtor contends the May 1 turnover was used to accomplish, through emergency animal turnover, the same possession-control and sale-clearing objectives the Trustee had already been pursuing in the adversary proceeding: removal of animals, restriction of residents, third-party control, and practical clearing of the property for sale.

27. The Trustee's 60-day turnover, termination, or vacate theory is internally inconsistent if the Trustee simultaneously authorized, added, permitted, or recognized a new tenant, occupant, licensee, vendor, security user, third-party animal organization, volunteer, contractor, broker, realtor, consultant, or other third-party user of the same real property after that asserted period.

28. If the asserted purpose of turnover or termination was to clear, preserve, secure, or protect the real property, adding or allowing a new tenant or occupant undermines the Trustee's stated justification. It suggests selective possession control: removing Debtor's

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

principals and sanctuary operators while allowing others to use or benefit from the same property.

29. The Court should require the Trustee to identify, under oath, every tenant, occupant, licensee, vendor, security person, animal organization, volunteer, contractor, broker, realtor, auctioneer-like person, consultant, or other third party allowed to occupy, use, access, store property on, conduct activity on, or benefit from Villa Chardonnay's real property after any asserted 60-day turnover, termination, or vacate period. The Trustee should also identify the legal authority, Court order, lease, license, insurance, compensation, indemnity, access limits, and estate benefit for each.

D. The Veterinary Record Did Not Support Sanctuary-Wide Turnover

30. Prior animal-control review did not support emergency seizure or turnover of the entire sanctuary. Vaughn Maurice, then Director of San Diego County Department of Animal Services, responded to accusations concerning Villa Chardonnay and stated that the prior matter had been closed, that there had not been signs of neglect, and that complaints or statements about Villa Chardonnay had been misrepresented for years. Kerber Decl. ¶ 8, Ex. A.

31. On or about April 23, 2026, before the April 27 unannounced entry, animal-control and/or veterinary personnel observed animals at the property. That April 23 information reflected that animals had plenty of food and water. Kerber Decl. ¶ 11, Ex. D.

32. Debtor disputes that either the April 15 contact or the April 27 unannounced SDHS/Jace Huggins visit justified sanctuary-wide turnover. If the April 15 contact truly revealed an emergency requiring seizure of the sanctuary, emergency veterinary demands should have been made then. They were not.

33. On April 27, SDHS/animal-control personnel, including Jace Huggins, came to the property without advance notice to Mercedes Flores. Flores Decl. ¶ 13. The visit did not identify a sanctuary-wide emergency requiring removal of all animals. At most, concerns were raised regarding a limited number of animals.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

34. Debtor disputes the denied-access narrative. Mercedes Flores states that Villa Chardonnay did not receive any call, note at the gate, written request, or proper notice from animal control stating that access had been attempted and denied. Flores Decl. ¶¶ 11–16, Exs. L–M. She also provided communications and a photograph showing prior access by animal-control/veterinary personnel. Flores Decl. ¶ 15, Ex. M.

35. After the April 27 visit, follow-up veterinary care was requested within approximately forty-eight hours. Kerber Decl. ¶¶ 14–15. Monika obtained an equine veterinary examination on April 29, 2026, and Dr. Max examined horses at Villa Chardonnay. Kerber Decl. ¶ 16, Ex. E.

36. Trustee Gladstone spoke with Dr. Max by speakerphone in front of Jace Huggins, Jeff Wiemann, and other officers. The Trustee also spoke with Dr. Flores. Kerber Decl. ¶ 17.

37. Monika obtained veterinary evaluation for the cats on April 30, 2026. The cat veterinary information was emailed to the Trustee before the May 1 emergency hearing. Kerber Decl. ¶ 18, Ex. F.

38. The Court was not presented with the full veterinary context before the May 1 turnover, including the April 23 observations, the April 29 equine veterinary follow-up, the Trustee's direct speakerphone communication with Dr. Max, and the April 30 cat veterinary information. Kerber Decl. ¶ 19, Exs. D–F.

E. May 1 Was Not a Meaningful Opportunity to Be Heard

39. On May 1, 2026, a search warrant was executed at the Villa Chardonnay property shortly before the emergency turnover hearing. Phones, computers, and electronic devices were seized. Kerber Decl. ¶ 20.

40. The seizure impaired Villa Chardonnay's ability to communicate with counsel, access records, access email, gather veterinary evidence, review filings, and present evidence at the emergency hearing. Kerber Decl. ¶ 21.

41. Because of the timing of the warrant execution, device seizure, and emergency hearing, Villa Chardonnay, Mercedes Flores, and Monika Kerber were not meaningfully able to be heard before the animals were turned over. Kerber Decl. ¶ 22.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

42. The May 1 order also treated animals broadly as estate property without animal-by-animal ownership review. Debtor disputes that every animal taken belonged to Debtor or the estate. Personal animals, privately owned animals, animals subject to different custody arrangements, and animals not listed in Debtor's schedules required individualized ownership review before seizure, transfer, adoption, euthanasia, release, relocation, medication, or disposition. Flores Decl. ¶¶ 17–19.

43. Physical presence on estate real property does not automatically establish that every animal is property of the estate. Section 542 requires property-specific analysis, not blanket treatment of every living animal as estate property without ownership review.

F. Post-Turnover Harm and Need for Accounting

44. Since turnover, animals have been moved from the sanctuary and placed outside Villa Chardonnay's care and control. Kerber Decl. ¶ 23.

45. Horses later tested positive for strangles after removal. Kerber Decl. ¶ 24, Ex. G.

46. Many Villa Chardonnay animals are elderly, fragile, disabled, special-needs, or hospice animals. Transfer, commingling, quarantine exposure, unfamiliar handling, separation, stress, medication changes, illness, adoption, or euthanasia can cause irreversible harm. Kerber Decl. ¶ 25.

47. Every additional day without Court protection increases the risk that animals will be transferred, adopted out, medicated, euthanized, become ill, die, or be placed beyond the Court's ability to restore. Kerber Decl. ¶¶ 26–30.

48. Villa Chardonnay has not received a complete animal-by-animal accounting showing each animal's current location, condition, medication, transfer history, illness status, death status, euthanasia status, ownership status, or custodian. Kerber Decl. ¶ 28.

G. Residential Privacy, False Reports, and Third-Party Use

49. Trustee Gladstone admitted that Monika Kerber and Mercedes Flores resided in the main house as holdover tenants. They were not trespassers without privacy, possessory, or due-process rights.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

50. Since the Trustee and her agents took control, Mercedes Flores has experienced serious interference with her personal residence, privacy, and safety. On or about May 26, 2026, the Trustee and/or persons acting with or for her entered private residential areas and inspected or photographed personal areas, including drawers, closets, personal belongings, and private spaces. Flores Decl. ¶¶ 20–22.

51. Mercedes objected to this intrusion and called law enforcement. She has video of personal drawers being opened and photographs being taken of personal items, closets, and drawers, and she repeatedly told the Trustee to stop. Flores Decl. ¶ 21.

52. On or about June 6, 2026, a report was made suggesting that a female was inside the house when Mercedes was not home. Mercedes states she and Monika entered the property at approximately 6:40 p.m. and were not at the property all day. Flores Decl. ¶¶ 23–24, Ex. N.

53. Through animal removal, lock changes, security presence, access restrictions, third-party occupation, threats of removal, property-control measures, and sale-related activity, the Trustee created de facto constructive displacement and possession-control pressure.

54. SDHS, Humane Society, animal-control personnel, security, agents, vendors, volunteers, auctioneer-like persons, realtors, contractors, brokers, consultants, tenants, licensees, and other third parties have used or accessed estate property without transparent occupancy terms, accounting, payment, insurance, or Court-approved access protocol. Villa Chardonnay owns the land. Third-party use cannot be invisible, uncompensated, uninsured, or outside Court supervision.

H. Payoff Obstruction

55. Debtor and its funder are attempting to pay, cure, refinance, escrow, or otherwise satisfy the liens and claimed payoff amounts necessary to stop sale pressure and preserve the real property. Debtor seeks a full payoff, not a partial payoff or informal estimate.

56. Mercedes Flores, as Secretary of Villa Chardonnay, submitted an email requesting payoff information and copied U.S. Trustee Trial Attorney Haeji Hong. Trustee Gladstone

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

responded that payoff information would be provided only after Monika Kerber and Mercedes Flores vacated or were removed. Flores Decl. ¶ 26, Ex. O.

57. Conditioning payoff information on vacating the property, cleaning, repairs, listing, or marshal removal is improper. Payoff information is needed to preserve estate property and pay creditors. It should not be used as leverage to force possession surrender, sale-clearing, or liquidation.

58. The Trustee should not be permitted to control payoff information, refuse or delay disclosure, and then argue that sale, carve-out, displacement, or liquidation is inevitable. Paying, curing, escrowing, or refinancing all liens and claimed payoff amounts necessary to preserve the property should protect the estate. It should not be blocked in order to create leverage for a Trustee-led liquidation.

## III. LEGAL STANDARD

59. Under 11 U.S.C. § 324(a), the Court may remove a trustee, other than the United States Trustee, for cause after notice and a hearing. The Bankruptcy Code does not define "cause" for purposes of § 324(a); cause is determined based on the facts and circumstances of the case. Dye v. Brown (In re AFI Holding, Inc.), 530 F.3d 832, 845 (9th Cir. 2008).

60. A Chapter 11 trustee is a fiduciary charged with administering estate property, accounting for estate property, investigating estate affairs, and preserving value. See 11 U.S.C. §§ 704(a)(2), 1106; Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985). Cause exists where continued trustee control threatens estate value, due process, fiduciary accountability, neutrality, or public confidence in estate administration.

61. Bankruptcy Rule 9024 incorporates Civil Rule 60 in bankruptcy cases. Rule 60(b) permits relief from an order affected by mistake, newly discovered evidence, fraud, misrepresentation, misconduct, voidness, or other extraordinary circumstances. Relief is appropriate where an order was entered through a process in which a party lacked meaningful notice, access to counsel and records, access to evidence, or opportunity to oppose extraordinary relief.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

62. Due process requires notice reasonably calculated, under all circumstances, to inform interested parties and allow them to object. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Due process also requires the opportunity to be heard at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545, 552 (1965). When a party knows ordinary notice has failed or is unreliable, additional reasonable steps may be required before property rights are affected. Jones v. Flowers, 547 U.S. 220, 234 (2006). Bankruptcy Rule 9014 similarly requires reasonable notice and an opportunity for hearing in contested matters. These principles are especially important here because Debtor contends its only reliable USPS mailing channel, P.O. Box 1000, was forwarded away from Debtor and to the Trustee's office from approximately mid-February 2026 until June 2026, while ordinary USPS mail was not deliverable to the physical property addresses and major bankruptcy, adversary, turnover, possession, funding, and sale/carve-out proceedings were moving forward.

63. Sections 541 and 542 require property-specific analysis. Physical presence on estate real property does not automatically establish that every animal, personal item, document, record, donation, or item of property belongs to Debtor or the estate. Turnover cannot be used as an eviction shortcut, possession shortcut, sale-clearing shortcut, or liability shield that bypasses disputed ownership, occupancy rights, personal property rights, animal ownership issues, and due-process protections.

64. Section 363 requires Court oversight for use, sale, or lease of estate property. Section 105(a) authorizes this Court to issue orders necessary or appropriate to carry out the Bankruptcy Code and prevent abuse of process. These authorities support preservation orders, accounting orders, access protocols, evidence preservation, payoff-transparency orders, animal-preservation orders, third-party property-use restrictions, funding accounting, and limitation of trustee authority pending evidentiary hearing.

65. Bankruptcy courts are courts of equity, but equitable authority cannot override the Bankruptcy Code or constitutional protections. Law v. Siegel, 571 U.S. 415, 421 (2014).

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

66. California Civil Code § 2943 recognizes the right of an entitled person or authorized agent to obtain a payoff demand statement. Separately, this Court has authority under 11 U.S.C. §§ 105 and 363 to prevent abuse of process, condition any sale process, and require transparency necessary to preserve estate value.

IV. ARGUMENT

A. Due Process Was Compromised.

67. Due process is the first and controlling issue. Villa Chardonnay's reliable mailing address was P.O. Box 1000 because USPS does not deliver ordinary mail to the physical property addresses. Flores Decl. ¶¶ 4–8, Exs. H–J. Yet service and address records used P.O. Box 1000, 4554 Boulder Creek Road, and 4430 Boulder Creek Road inconsistently. Flores Decl. ¶ 5, Ex. I.

68. Debtor contends that mail connected to P.O. Box 1000 was forwarded away from Debtor and to the Trustee's office during the same period when the Trustee pursued major relief. Flores Decl. ¶¶ 7–10, Exs. J–K; Kerber Decl. ¶ 10, Ex. C.

69. The Trustee should not benefit from alleged lack of opposition, missed deadlines, default, claimed silence, or alleged noncompliance where Debtor's only reliable mail channel was compromised and address records were inconsistent.

70. The May 1 due-process problem was compounded because Debtor's principals were deprived of meaningful access to phones, records, counsel, and evidence immediately before the emergency hearing. Kerber Decl. ¶¶ 20–22.

71. The May 1 order should therefore be stayed, vacated, modified, clarified, or set for immediate evidentiary hearing under Bankruptcy Rule 9024 and Civil Rule 60(b).

B. The Funding Record Supports Removal or Restriction of the Trustee.

72. The Trustee's funding conduct supports cause under 11 U.S.C. § 324(a). The Trustee sought or controlled funding represented as necessary for preservation and animal care, including Attorney General-related funding and post-petition financing of approximately $400,000. RJN ¶¶ –.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

73. Debtor contends that the operators received no money for daily feed, veterinary care, farrier care, medication, or animal needs despite repeated requests. Kerber Decl. ¶¶ __, Ex. __.

74. At the same time, estate funds were used for Trustee professionals, legal fees, consultants, security, litigation, property control, and sale-related administration. RJN ¶¶ –.

75. That is not neutral preservation of a sanctuary estate. If the Trustee believed animal care was urgent, she had a fiduciary duty to use available estate resources to support actual care before seeking sweeping turnover relief.

76. The Trustee should not be permitted to withhold animal-care funding, allow conditions to worsen or appear worse, and then rely on those conditions to justify animal removal, possession control, and sale-clearing relief.

77. This funding disparity supports removal, restriction, accounting, surcharge review, and appointment of a neutral fiduciary or examiner.

C. Cause Exists to Remove or Restrict the Trustee.

78. Cause exists because the Trustee's continued control threatens estate value, due process, fiduciary accountability, neutrality, and public confidence in estate administration.

79. The Trustee is now a central disputed actor in issues requiring Court review: mail forwarding, notice, service, emergency turnover, animal accounting, funding use, professional fees, sale efforts, payoff obstruction, residential privacy, third-party occupancy of estate land, evidence preservation, animal ownership, liability-release language, 60-day turnover/termination inconsistencies, and sanctuary-value destruction.

80. Sale-first conduct began early. By February 23, trustee communications referenced Paul Buie / Onyx coming to the property to plan for sale and changing or adding locks to the guest house. Kerber Decl. ¶ 9, Ex. B.

81. The Trustee's June payoff position confirms the problem. Mercedes Flores requested payoff information and copied Haeji Hong. Trustee Gladstone responded that payoff

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

would be provided only after Monika Kerber and Mercedes Flores vacated or were removed. Flores Decl. ¶ 26, Ex. O.

82. The Trustee's 60-day possession theory also supports removal or restriction. If the Trustee relies on a 60-day turnover, termination, or vacate theory to remove Debtor's principals, she cannot simultaneously allow another tenant or third-party user to occupy, use, or benefit from the property without Court approval and transparent estate-benefit findings.

83. The Trustee, Jeff Wiemann, and related third parties are necessary witnesses regarding notice, access, mail forwarding, funding, veterinary information, payoff communications, animal disposition, third-party use of estate property, fundraising, 60-day possession/tenant issues, and the May 1 turnover process. A trustee cannot fairly administer the estate while simultaneously being a central witness to disputed events forming the basis for emergency relief.

D. The May 1 Turnover Order Should Be Vacated, Modified, or Clarified.

84. The May 1 turnover order was entered through emergency procedures that deprived Debtor of meaningful notice and a meaningful opportunity to respond. It affected extraordinary rights and property interests, including animals, estate records, corporate records, occupancy rights, personal property, residential privacy, and property control.

85. Relief is appropriate under Civil Rule 60(b)(3) because the record was incomplete or materially misleading. Prior animal-control review did not show neglect. Kerber Decl. ¶ 8, Ex. A. April 23 information reflected plenty of food and water. Kerber Decl. ¶ 11, Ex. D. Debtor had already arranged and obtained veterinary follow-up for the identified animals. Kerber Decl. ¶¶ 14–19, Exs. E–F.

86. Relief is also appropriate under Civil Rule 60(b)(4) and 60(b)(6) because the May 1 order was entered without meaningful notice and under extraordinary circumstances involving hundreds of elderly, sick, hospice, medically fragile, disabled, blind, lame, and special-needs animals; the sanctuary's charitable mission; estate land; residential/occupancy

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

interests; corporate and veterinary records; evidence access; donor goodwill; and sale-clearing property control.

87. The order should be vacated, modified, or clarified because it appears to have treated all animals located at Villa Chardonnay as estate property without an animal-by-animal ownership determination. Physical presence on estate real property does not automatically establish that every animal belonged to Debtor or the bankruptcy estate. Flores Decl. ¶¶ 17–19.

88. Any liability-release, waiver, Barton-doctrine, indemnity, immunity, or protective language entered through the May 1 emergency process should also be vacated, modified, or clarified. Such language should not protect Trustee Gladstone, Jeff Wiemann, SDHS, Humane Society, or others from accountability for acts taken without meaningful notice, outside the scope of bankruptcy authority, based on disputed ownership, or on an incomplete or materially misleading record.

E. Payoff Transparency Is Necessary to Preserve the Estate.

89. Debtor's ability to pay, cure, escrow, refinance, or otherwise satisfy liens and claimed payoff amounts is central to estate preservation. Full payoff transparency is not optional where the Trustee is using alleged secured debt, sale pressure, carve-out pressure, and property-control measures to justify irreversible loss of the real property.

90. Debtor seeks full payoff information for all liens and claimed payoff amounts necessary to preserve the property, including first-position debt, junior liens, recorded liens, asserted post-petition financing, default interest, lender fees, legal fees, protective advances, trustee-asserted cure amounts, and any disputed sums the Trustee or any secured creditor contends must be escrowed to stop sale pressure.

91. The Trustee's duty is not to make payoff impossible. If a full payoff, escrow, refinancing, or cure path can preserve the real property, protect creditors, and avoid destruction of the sanctuary, the Trustee must facilitate transparency rather than use control of information as leverage for a forced sale.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

92. The Trustee's written response conditioning payoff on vacating or removal is inconsistent with 11 U.S.C. §§ 704(a)(7), 1106(a)(1), and 1109(b). It is also inconsistent with due process because a meaningful opportunity to preserve property does not exist where the Trustee controls the sale/carve-out process while withholding payoff information necessary to satisfy liens and preserve the property. Flores Decl. ¶ 26, Ex. O.

93. The Court should order the Trustee, lenders, lender counsel, and any party asserting liens or payoff amounts to provide, by a date certain, a complete itemized payoff demand, wire or escrow instructions, per diem interest, good-through date, lien-release conditions, and identification of any disputed amounts to be escrowed pending further Court order.

94. The Court should further order that no sale, auction, carve-out approval, lockout, possession-control expansion, third-party occupancy expansion, or property-clearing activity proceed until Debtor has received a meaningful opportunity to tender, escrow, cure, refinance, or otherwise satisfy the full payoff amounts necessary to preserve the property.

F. Third-Party Use, Residential Privacy, and 60-Day/New-Tenant Issues Require Court Control.

95. Villa Chardonnay owns the real property. SDHS, Humane Society, security, agents, vendors, volunteers, auctioneer-like persons, realtors, contractors, consultants, animal organizations, tenants, occupants, licensees, and other third parties have occupied or used estate property, including land, structures, barns, animal areas, access roads, gates, and private residential areas.

96. Third-party use cannot be invisible, uncompensated, uninsured, or outside Court supervision. If third parties contend they must remain on the property, they should be required to identify the exact bankruptcy authority, purpose, scope, duration, insurance, indemnity, compensation, and Court order authorizing that presence.

97. On or about May 26, 2026, trustee-side persons entered or accessed residential and personal areas, including drawers, closets, personal belongings, and private spaces. Flores Decl. ¶¶ 20–22. That did not preserve the estate. It invaded private residential space.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

98. The 60-day turnover/termination and new-tenant/occupant issue shows why Court supervision is urgently needed. If the Trustee contends existing residents must be removed under a turnover, termination, or vacate theory, she cannot simultaneously authorize or permit a substitute tenant, licensee, or third-party user without Court approval and full disclosure.

G. Animals, Fundraising, and Evidence Must Be Preserved.

99. Animals taken from Villa Chardonnay already had a forever home. Many were senior, disabled, blind, lame, hospice, medically fragile, elderly, or sick animals. Kerber Decl. ¶¶ 5–7, 23–30. Since turnover, animals remain outside Debtor's custody and Debtor has not received a complete animal-by-animal accounting. Kerber Decl. ¶ 28.

100. If animals were adopted, transferred, fostered, relocated, released, medicated, euthanized, or placed with third parties, records should exist identifying each animal, adopter, transferee, foster, custodian, current location, medical status, medication status, fundraising history, and disposition.

101. Public fundraising materials appear to have solicited donations connected to Villa Chardonnay animals, their seizure, care, transfer, and adoption. Any funds, donations, grants, matching funds, adoption fees, sponsorships, reimbursements, restricted gifts, unrestricted gifts, in-kind benefits, media fundraising, television fundraising, or other proceeds generated from Villa Chardonnay animals, estate goodwill, estate property, or the turnover narrative should be preserved and accounted for pending further Court order.

102. The Court should order immediate return, retrieval, preservation, and animal-by-animal accounting to the extent legally and physically possible, and should preserve all bankruptcy-related evidence.

V. REQUESTED RELIEF

Debtor respectfully requests that the Court enter an order granting the following relief:

1. Remove Trustee Leslie T. Gladstone for cause under 11 U.S.C. § 324(a), or alternatively suspend or limit her authority pending an emergency evidentiary hearing;

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

2. Appoint a replacement trustee, neutral examiner, neutral animal-care/property fiduciary, or other neutral fiduciary to preserve the estate pending further order;

3. Stay, vacate, modify, or clarify the May 1 turnover order and any related order to the extent entered without meaningful notice, on an incomplete or materially misleading record, or without animal-by-animal ownership review;

4. Order immediate return, retrieval, preservation, and animal-by-animal accounting of all animals taken from Villa Chardonnay, including species, identifying description, medical status, current location, custodian, transfer/adoption/foster history, medication history, euthanasia/death status if applicable, and legal basis for each disposition;

5. Prohibit adoption, transfer, euthanasia, relocation, release, medication, or disposition of any Villa Chardonnay animal except emergency veterinary care necessary to prevent imminent suffering, pending further order;

6. Require any party claiming return is impossible to identify the specific animal, current custodian, legal basis, factual basis, medical status, disposition history, and reason return is allegedly impossible;

7. Require SDHS, Humane Society, security, agents, vendors, volunteers, auctioneer-like persons, realtors, contractors, consultants, animal organizations, tenants, occupants, licensees, and other third parties to vacate estate property unless expressly authorized by this Court under a written access protocol;

8. Require any authorized access protocol to include person-by-person identification, purpose, dates, times, insurance, indemnity, compensation, gate logs, visitor logs, and limitations on access, including prohibitions against residential/private-area entry and opening drawers, closets, files, storage areas, computers, phones, or personal-property areas without further order;

9. Require the Trustee to disclose, under oath, whether any new tenant, occupant, licensee, vendor, security person, animal organization, volunteer, contractor, broker, realtor, auctioneer-like person, consultant, or other third party has been authorized, permitted, invited, or allowed to occupy, use, access, store property on, conduct activity on, or

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

benefit from Villa Chardonnay's real property after any asserted 60-day turnover, termination, or vacate period, and to identify the legal authority, Court order, lease, license, insurance, compensation, indemnity, access limits, and estate benefit for each such person or entity;

10. Require a complete accounting of all estate funds, post-petition financing, cash collateral, donations, grants, advances, professional payments, security payments, consultant payments, animal-related charges, and preservation-related expenditures, including a specific line-item disclosure of whether any funds were provided to Monika Kerber, Mercedes Flores, or Villa Chardonnay operators for feed, veterinary care, farrier care, medication, supplies, or daily animal needs, and if not, why not;

11. Require accounting and appropriate payment, surcharge, reimbursement, disgorgement, administrative rent, use-and-occupancy value, or other recovery for prior third-party use, occupation, control, or benefit from Villa Chardonnay property;

12. Require preservation and accounting of all funds, donations, grants, matching funds, adoption fees, sponsorships, reimbursements, restricted gifts, unrestricted gifts, in-kind benefits, media fundraising, television fundraising, or other proceeds generated from Villa Chardonnay animals, estate goodwill, estate property, or the May 1 turnover narrative;

13. Require the Trustee, secured creditors, lender counsel, title, escrow, or any party asserting liens or payoff amounts to provide a complete itemized payoff demand by a date certain, including all liens, per diem interest, wire instructions, escrow/title instructions, good-through date, release conditions, disputed amounts, and amounts the Trustee contends must be paid or escrowed to preserve the property;

14. Stay any sale, auction, carve-out approval, lockout, possession-control expansion, third-party occupancy expansion, property-clearing activity, eviction activity, marshal-removal activity, liquidation activity, or irreversible sale-related action until Debtor has received a meaningful opportunity to tender, escrow, cure, refinance, or otherwise satisfy the full payoff amounts necessary to preserve the property;

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

15. Require any Trustee, secured creditor, or party opposing payoff to state under oath the legal and factual basis for opposing payoff, including each amount, lien, condition, release issue, disputed item, or Court order allegedly preventing payoff;

16. Preserve all bankruptcy-related evidence, including mail records, USPS records, electronic records, emails, texts, veterinary records, animal records, photographs, videos, communications with SDHS/Humane Society, communications with creditors, payoff communications, funding communications, animal-care funding requests, fundraising records, third-party access logs, security logs, and property-use records;

17. Clarify that nothing in the May 1 order, turnover stipulation, or related orders grants any release, immunity, indemnity, waiver, Barton protection, or pre-approval of conduct by Trustee Gladstone, Jeff Wiemann, SDHS, Humane Society, security, volunteers, agents, contractors, or third parties;

18. Preserve Debtor's claims, counterclaims, objections, surcharge rights, accounting rights, disgorgement rights, avoidance or recovery rights, personal-property rights, animal-ownership objections, due-process objections, appellate rights, and all remedies against any responsible party;

19. Set an emergency evidentiary hearing on the earliest available date and permit appearance by Zoom or other remote means for counsel and necessary declarants; and

20. Grant such other and further relief as the Court deems just and proper.

VI. CONCLUSION

This record presents an emergency requiring immediate Court supervision.

The first issue is due process. Debtor's reliable mailing channel was allegedly redirected to the Trustee's office while inconsistent addresses were used and major bankruptcy, adversary, turnover, possession, funding, and sale-related proceedings moved forward.

The second issue is fiduciary funding. The Trustee sought or controlled funds represented for preservation and animal care, yet Debtor contends the operators received no money for daily animal needs while estate money funded professionals, consultants, security, litigation, and property control.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**

The third issue is turnover. The May 1 order was entered on an incomplete veterinary record, without meaningful access to phones, counsel, records, and evidence, and without animal-by-animal ownership review.

The fourth issue is payoff. Debtor seeks payoff transparency to preserve the real property, but the Trustee conditioned payoff information on vacating or removal while continuing sale and carve-out pressure.

The fifth issue is possession control. The Trustee cannot rely on a 60-day turnover, termination, or vacate theory to remove the sanctuary operators while allegedly allowing a new tenant, occupant, licensee, or third-party user to occupy, use, or benefit from the same property without Court approval and disclosure.

The Court should remove Trustee Gladstone for cause or, at minimum, immediately suspend or restrict her authority, appoint a neutral fiduciary or examiner, require funding and payoff disclosure, require animal and third-party-use accounting, preserve animals and evidence, restrict further third-party use, and set an emergency evidentiary hearing.

DATED: June 26, 2026

Respectfully submitted,

LAW OFFICES OF NISSAN THOMAS

By: _____

Nissan Thomas

Attorney for Debtor

Villa Chardonnay Horses With Wings, Inc.

**MOTION TO REMOVE CHAPTER 11 TRUSTEE**