Leslie T. Gladstone, Esq.  (SBN 144615)
Christin A. Batt, Esq.  (SBN 222584)
Hilda M. Montes de Oca, Esq.  (SBN 287605)
FINANCIAL LAW GROUP
5656 La Jolla Blvd.
La Jolla, CA 92037
Telephone:  (858) 454-9887
Facsimile:  (858) 454-9596
E-mail:  HildaM@flgsd.com

Attorneys for Leslie T. Gladstone, Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>VILLA CHARDONNAY HORSES WITH WINGS, INC.,<br><br><br>Debtor. | Case No.:  25-04245-JBM11<br><br>**TRUSTEE'S OPPOSITION TO: (1) EMERGENCY MOTION TO INTERVENE AS AN INTERESTED PARTY; REQUEST FOR IMMEDIATE HEARING; AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, FILED BY NOAH'S ARK OF VILLA TRUST; AND (2) JOINDER FILED BY MONIKA KERBER PEREZ**<br><br>Date:        TBD<br>Time:        TBD<br>Dept:        2<br>Honorable J. Barrett Marum |

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

IN RE VILLA CHARDONNAY HORSES WITH WINGS, INC., CASE NO. 25-04245-JBM11

i

TRUSTEE'S OPPOSITION TO EMERGENCY MOTION TO INTERVENE AND TRO

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS ................................................................... 2

III. MEMORADUM OF POINTS AND AUTHORITIES ......................... 9

    A.   Noah's Ark Has Not Demonstrated Grounds for Mandatory or Permissive Intervention under Federal Rules of Civil Procedure 24. ...................................................................... 9

        1.   The Intervention Motion Is Untimely and Cannot Be Granted. ................................................................ 10

            i.   It Is Too Late to Intervene in the Adversary Proceeding. ........................................................ 10

            ii.  Allowing Noah's Ark to Intervene at this Advanced Stage Would Severely Prejudice Trustee and the Estate. ........................................... 11

            iii. Noah's Ark's Delay Is Devoid of Good Faith. ................ 11

    B.   Noah's Ark Has Not Demonstrated Grounds for Injunctive Relief under Federal Rules of Civil Procedure 65. .................. 13

        1.   It Is Extremely Unlikely that Noah's Ark Will Succeed on the Merits. .................................................... 13

        2.   Trustee Will Suffer Irreparable Injury if Injunctive Relief Is Granted. ............................................. 15

        3.   The Balance of the Equities Tips Heavily in Trustee's Favor. ................................................ 16

        4.   The Public Interest Favors Denial of Injunctive Relief. ...... 16

    C.   Kerber's Request for Relief Outside the "Joined" Pleading Is Improper and Should Not Be Considered. ........................... 17

IV.  CONCLUSION ................................................................................. 18

# TABLE OF AUTHORITIES

<u>Federal Statutes</u>                                                                                    <u>Page</u>

  11 U.S.C. § 363  ............................................................................ 2, 15

  11 U.S.C. §542  ..................................................................................... 3

  28 U.S.C. § 1334  ................................................................................ 17

<u>Federal Rules</u>

  Fed. R. Bankr. P. 2018  .......................................................................... 1

  Fed. R. Bankr. P. 7024  .......................................................................... 9

  Fed. R. Bankr. P. 7065  ........................................................................ 13

  Fed. R. Bankr. P. 9017  .......................................................................... 1

  Fed. R. Civ. P. 7  ........................................................................... 17, 18

  Fed. R. Civ. P. 24  ................................................................. 1, 2, 9, 10

  Fed. R. Civ. P. 65  .......................................................................... 2, 4, 13

  Fed. R. Evid. 201  ................................................................................. 1

<u>California Statutes</u>

  Civ. Code § 2332  ................................................................................ 13

<u>Cases</u>

  *Alliance for Wild Rockies v. Cottrell*,
      632 F.3d 1127 (9th Cir. 2011)  .............................................. 13, 17

  *Bergstrom v. Zions Bancorporation*, *N.A.*,
      78 Cal. App. 5th 387, 399 (Cal. Ct. App. 2022)  ........................ 12

  *Boardman v. Pac. Seafood Group*,
      822 F.3d 1011 (9th Cir. 2016)  ...................................................... 15

  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
      647 F.3d 893 (9th Cir. 2011)  ........................................................ 9

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

*Kalbers v. United States Dept. of Justice*,
    22 F.4th 816 (9th Cir. 2021) ........................................................ 10

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) ..................................................... 10

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
    934 F.2d 1092 (9th Cir. 1991) ..................................................... 12

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) ................................... 9

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ..................................................... 14

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ...................................................... 13

*United States v. Washington*,
    86 F.3d 1499 (9th Cir. 1996) ................................................. 10, 12

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................. 13, 15

IN RE VILLA CHARDONNAY HORSES WITH            iv            TRUSTEE'S OPPOSITION TO EMERGENCY
WINGS, INC., CASE NO. 25-04245-JBM11                           MOTION TO INTERVENE AND TRO

Leslie T. Gladstone, the chapter 11 trustee ("**Trustee**") of the bankruptcy estate of Villa Chardonnay Horses With Wings, Inc. ("**Villa Chardonnay**" or "**Debtor**"), submits this Opposition to the *Emergency Motion to Intervene as an Interested Party; Request for Immediate Hearing; and Application for Temporary Restraining Order and Preliminary Injunction* (the "**Intervention Motion**"), filed by Noah's Ark of Villa Trust ("**Noah's Ark**"), and the Joinder to the Intervention Motion filed by Monika Kerber Perez.  This Opposition is supported by the memorandum of points and authorities cited herein, the Declaration of Leslie T. Gladstone ("**Gladstone Declaration**"), the Declaration of Hilda M. Montes de Oca ("**Montes de Oca Declaration**"), filed concurrently herewith, and the record before the Court.[1]

## I.

## INTRODUCTION

The Intervention Motion was filed in the main bankruptcy case and so Federal Rules of Bankruptcy Procedure 2018 is the applicable statute for the relief requested.  The substance of the Intervention Motion, however, seeks authorization to intervene under Federal Rules of Civil Procedure 24 as to matters related to the adversary proceeding *Gladstone v. Kerber Perez and Flores*, 26-90029-JBM (the "**Adversary Proceeding**") in which Trustee obtained a judgment for turnover and a writ of possession as to the real property commonly known as 4554 Boulder Creek Road, Julian, CA 92036 and 4430 Boulder Creek Road, Julian, CA 92036 (collectively, the "**Property**").  Thus,

---

[1] Trustee respectfully requests, pursuant to Rule 201 of the Federal Rules of Evidence, made applicable herein by Rule 9017 of the Federal Rules of Bankruptcy Procedure, that the Court take judicial notice of the case docket for the above-captioned case and each of the pleadings and other documents on file in the case, including without limitation those attached and marked as exhibits to the supporting declaration filed herewith.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

Trustee focuses her analysis and argument on the requirements under Civil Rule[2] 24.

Noah's Ark completely fails to meet the threshold requirements for intervention under Civil Rule 24.  Furthermore, Noah's Ark cannot demonstrate that it is entitled to injunctive relief under Civil Rule 65.

The Intervention Motion is the latest attempt by Debtor's principals Monika Kerber Perez ("**Kerber**") and Mercedes Flores ("**Flores**" and collectively with Kerber, "**Defendants**") to interfere with Trustee's administration of the assets of this chapter 11 estate.  Trustee requests that Noah's Ark's Intervention Motion be denied in its entirety so that Trustee can proceed with a sale of the Property under 11 U.S.C. Section 363 and pay the creditors of the Estate.

## II.

## STATEMENT OF FACTS

### A.    THE BANKRUPTCY CASE

Villa Chardonnay commenced the Bankruptcy Case in October 2025.  On January 23, 2026, senior secured creditors River Falls, LLC, Private Mortgage Lending, Inc., and the Armburst Trust (the "**River Falls Lender**") filed an Emergency Motion to Appoint Chapter 11 Trustee.  [Bankr. ECF No. 63].  Trustee was thereafter appointed as chapter 11 trustee of the Bankruptcy Case on January 29, 2026.  [Bankr. ECF No. 84 and 89] ("**Trustee's Appointment Date**").

Villa Chardonnay was a non-profit animal sanctuary which formerly housed hundreds of elderly and sick animals, including horses, cats and various farmed animals (collectively, the "**Animals**") that operated on the Property.

___

[2]  The term "**Civil Rule**" refers to the applicable rule under the Federal Rules of Civil Procedure, and the term "**Bankruptcy Rule**" refers to the applicable rule under the Federal Rules of Bankruptcy Procedure.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

The Property encompasses approximately 45 acres including a main house of approximately 4,700 square feet (the "**Main House**").   As of and from the Petition Date, Villa Chardonnay owns the Property and the Main House.

Initially, after Trustee's Appointment Date, Trustee allowed the continued occupation of the Main House by Kerber and Flores while they tended the Animals, despite there being no written lease agreement and no payment of rent to Villa Chardonnay or the Estate.  However, on February 24, 2026, Trustee caused to be served on Defendants a 60-Day Notice to Terminate Tenancy (the "**Notice to Terminate**").  After the 60-day period referenced in the Notice to Terminate expired on April 24, 2026, Defendants refused to turnover  possession of the Property to Trustee as required under 11 U.S.C. Section 542 and continued in their unlawful possession of the Property.

**B.** **THE ADVERSARY COMPLAINT**

On April 1, 2026, Trustee filed her *Complaint for Turnover of Property of the Estate and Issuance of Writ of Execution for Possession of Real Property* against all occupants of the Main House (the "**Complaint**") and caused the Complaint to be served on Kerber and Flores.  [Adv. ECF Nos. 1 and 6]  Kerber filed an Answer (the "**Kerber Answer**") on May 5, 2026.  [Adv. ECF No 7] Flores failed to answer the Complaint and a default was taken on May 8, 2026. [Adv. ECF No 12]  On June 12, 2026, the Court vacated the default and Flores filed her answer (the "**Flores Answer**") on June 17, 2026.  [Adv. ECF Nos. 47 and 50]

On May 8, 2026, Trustee filed her *Emergency Application for Temporary Restraining Order and for Issuance of Order to Show Cause Why a Preliminary Injunction Should Not Be Issued Against the Defendants* (the "**TRO Motion**"). [Adv. ECF No. 13]  On May 11, 2026, Defendants filed their opposition to the TRO Motion.  [Adv. ECF No. 17]

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

On May 12, 2026, Trustee obtained a temporary restraining order (the "**TRO**") restricting Defendants' access of the Property to only the Main House and the roadway between the Main House and the 4554 Boulder Creek Road exit gate.  [Adv. ECF No 19]  The Court then set a hearing on Trustee's request for a preliminary injunction for May 21, 2026.

**C.      THE CONSOLIDATED TRIAL**

On May 18, 2026, Trustee filed a *Motion 1) To Compel Turnover of Property of the Estate; 2) For Writ of Execution to Compel Defendants to Vacate Property, With Assistance of U.S. Marshals; and 3) To Advance the Trial on the Merits and Consolidate with the Preliminary Injunction Hearing under Federal Rule of Civil Procedure 65* (the "**Consolidation Motion**"), concurrent with an *Ex Parte Application for Order Shortening Time.* [Adv. ECF Nos. 20 and 21]

The Court issued the preliminary injunction and granted Trustee's request under Civil Rule 65, scheduling a consolidated trial on the merits on July 1 and 2, 2026 (the "**Consolidated Trial**").  [Adv. ECF No. 34]

On June 3, 2026, the Court entered its Scheduling Order for Trial, setting specific filing and exhibit-exchange deadlines and clearly ordering that failure to comply with the deadlines would result in exclusion of evidence. ECF No. 39. Trustee timely complied with the Scheduling Order. Neither Kerber nor Flores complied with the Scheduling Order.

At the June 26, 2026 Final Pretrial Status Conference, the Court ruled that neither Defendant Kerber nor Defendant Flores would be permitted to put on any substantive witnesses nor any substantive exhibits in their cases in chief due to their failure to comply with the Court's Scheduling Order for Trial. [ECF. No. 70]  The Court also ordered, pursuant to all parties' agreement on the record, the issues for trial be bifurcated.  The possession and turnover issues

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California  92037

would be determined at the Consolidated Trial scheduled for July 1 and 2, 2026, and issues related to the Trustee's claims for damages and Flores's counterclaims would be tried at a later date.

The matter came on for trial on July 1, 2026, at 9:00 a.m., in Department Two (2) of the above-entitled Court, the Honorable J. Barrett Marum presiding. Hilda M. Montes de Oca appeared for Plaintiff, chapter 11 trustee Leslie T. Gladstone. Thomas appeared for Defendant Monika Kerber Perez. Defendant Mercedes Flores appeared *pro se*. Chapter 11 trustee, Leslie T. Gladstone, and Trustee's consultant, Jeff Wiemann, appeared as witnesses for Plaintiff. No other appearances were made.

The Court closed evidence and the trial on July 1, 2026 and delivered a bench ruling on July 8, 2026, finding that Trustee was entitled to an order compelling Defendants and any other occupants of the Main House to vacate and orderly turnover the Property to Trustee on or before July 15, 2026. The Court also found that Trustee was entitled to a writ of possession of the Property, directing the U.S. Marshal and/or other applicable law enforcement to immediately assist the Trustee to take possession of the Property by promptly removing Defendants and any other occupants from the Property, using force if necessary, if Defendants had not vacated the Property on or before July 15, 2026.

On July 13, 2026, the Court entered the *Order on Findings of Fact and Conclusions of Law after Trial*, and the *Judgment After Trial* (the "**Judgment**"). [Adv. ECF Nos. 83 and 84]. The Judgment declares that all occupants are divested of possession rights for the Property and must vacate on or before July 15, 2026.

Continuing through July 15, 2026, Kerber and Flores occupied the Main House, after which time their unlawful possession was terminated and their

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

removal from the Property was officially conducted by the United States Marshal.

There have been no other occupants of the Main House at any time since the Trustee's Appointment Date.  The TRO and Preliminary Injunction specifically prohibit any occupants on the Property other than Kerber and Perez and third-parties authorized by Trustee.

**D.      PRIOR REQUESTS FOR EMERGENCY RELIEF FROM THIS COURT WERE DENIED.**

Defendants' pattern of filing "emergency" and/or *ex parte* requests for immediate relief has forced Trustee to incur the expense of responding to what are ultimately found to be repeated recitations of the same arguments.

On May 26, 2026, Kerber filed on behalf of Debtor an *Emergency Motion for (1) Temporary Restraining Order; (2) Temporary Restraining and Protective Relief; (3) Preservation of Disputed Non-Estate Property, Rescue Animals and Evidence; (4) Accounting and Disclosure Relief; (5) Order Shortening Time & (6) Request to Terminate Financial Orders* (the "**Kerber Emergency Motion**" Bankr. ECF No. 171]  After reviewing the Kerber Emergency Motion and Trustee's Opposition, the Court denied the Kerber Emergency Motion without a hearing.  *See* Bankr. ECF No. 175.

Next, on June 17, 2026, Flores filed in the Adversary Proceeding an *Emergency Motion to Strike, Vacate, Stay, Or Limit Relief Based on Defective Proofs of Service, Inaccurate Address Filings, Mail Interference and Lack of Meaningful Notice* (the "**Flores Emergency Motion**" Adv. ECF No. 53]  After reviewing the Flores Emergency Motion and Trustee's Opposition, the Court denied the Flores Emergency Motion without a hearing.  *See* Adv. ECF No. 57.

On June 24, 2026, the deadline set by the Court for the parties to submit their trial briefs, witness and exhibit lists, Kerber erroneously filed on behalf of Debtor in the adversary proceeding an *Emergency Application to Remove Chapter*

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

*11 Trustee, To Stay, Vacate, Or Modify Turnover Orders; For Preservation Order; and for Emergency Evidentiary Hearing.* [Adv ECF No. 63]  The next day, on June 25, 2026, Kerber filed on behalf of Debtor in the bankruptcy case an *Emergency Application to Remove Chapter 11 Trustee, To Stay, Vacate, Or Modify Turnover Orders; For Preservation Order; and for Emergency Evidentiary Hearing* (the "**Emergency Motion to Remove Trustee**," Bankr. ECF No. 201).  On that same day, June 25, 2026, the Court denied the Emergency Motion to Remove Trustee without prejudice to Kerber refiling it to be heard on regular notice.  To date, the Emergency Motion to Remove Trustee has not been properly noticed for hearing.

On June 30, 2026, one day before the scheduled commencement of trial, Kerber filed on behalf of Debtor in the bankruptcy case a pleading styled *Ex Parte Application to Continue July 1, 2026 Hearing on Trustee's Motion for Turnover* (the "**Continuance Application**," Bankr. ECF No. 213).  The Court denied the Continuance Application on the record at the start of trial on July 1, 2026.  *See* Adv. ECF No. 73.

Finally, on July 16, 2026, Flores's newly disclosed entity Noah's Ark filed the Intervention Motion, by the same attorney who represented Kerber in the Adversary Proceeding.  [Bankr. ECF No. 229]  The latest challenge to Trustee's administration was filed in the bankruptcy case one day after the deadline set forth in the Judgment for Defendants and all other occupants to vacate the Property.

E.    <u>PRIOR REQUEST FOR EMERGENCY RELIEF FROM THE STATE COURT WAS DENIED.</u>

On May 8, 2026, Trustee filed an unlawful detainer complaint in the San Diego Superior Court (the "**State Court**") against Kerber and Flores in an abundance of caution, assigned case no. 26UD 025466C (the "**UD Case**").  Trustee ultimately decided that the UD Case was not the preferred forum and focused her resources on the Adversary Proceeding.  On June 4, 2026, Kerber and

Flores each filed in the UD Case a *Motion to Quash Service of Summons*, and each filed an application for a fee waiver, which the State Court granted. The hearings on the Motions to Quash were set for May 21, 2027.

On July 8, 2026, the day the Bankruptcy Court issued its oral trial ruling, Noah's Ark filed a *Pre-Judgment Claim of Right of Possession* in the UD Case. Thereafter on July 10, 2026, Trustee filed her Request for Dismissal of the UD Case. Also on July 10, 2026, Noah's Ark filed an *Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction* (the "**UD TRO Application**"). The State Court set a hearing on the UD TRO Application for July 14, 2026.

On July 14, 2026, counsel for Trustee appeared at the hearing on the UD TRO Application. After confirming for the State Court that the matter was dismissed, the State Court denied the UD TRO Application. A true and correct copy of the State Court Order Denying the UD TRO Application is attached as Exhibit A to the Montes de Oca Declaration and incorporated herein.

## F. THERE IS NO RECORD OF NOAH'S ARK AS A REGISTERED NONPROFIT.

On July 10, 2026, after Trustee was served with the UD TRO Application, Trustee reviewed the Declaration of Mercedes Flores supporting the UD TRO Application, wherein Flores attested that Noah's Ark is "a nonprofit organization engaged in charitable, educational, animal welfare, rescue, sanctuary, and related activities." A true and correct copy of the Declaration of Mercedes Flores in Support of the UD TRO Application is attached as Exhibit B to the Montes de Oca Declaration and incorporated herein.

Trustee reviewed Debtor's Schedules and could not find any reference to a lease or acknowledged interest of Noah's Ark. Trustee then searched the California Secretary of State and California Attorney General's website for Registry of Charities and Fundraisers for "Noah's Ark of Villa" and "Noah's Ark

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

of Villa Trust" and did not find a for-profit or nonprofit organization registered under those names.  A search of the Internal Revenue Service's website for Tax Exempt Organizations also revealed no registration for "Noah's Ark of Villa" or "Noah's Ark of Villa Trust."

**III.**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    NOAH'S ARK HAS NOT DEMONSTRATED GROUNDS FOR MANDATORY OR PERMISSIVE INTERVENTION UNDER FEDERAL RULES OF CIVIL PROCEDURE 24.**

Intervention in the Adversary Proceeding is governed by Civil Rule 24, made applicable under Bankruptcy Rule 7024, which provides in part as follows: On timely motion, a party who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.  Fed. R. Civil P. 24(a)(2).

An applicant seeking to intervene as of right under Civil Rule 24 must satisfy the following four requirements: (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 896-97 (9th Cir. 2011) (*citing Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)).  An applicant seeking to intervene has the burden to show that these four elements are met.  *See Prete*, 438 F.3d at 954.

Permissive intervention in the Ninth Circuit is governed by Civil Rule 24(b).  Under this framework, a court may exercise its discretion to permit

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

intervention upon a timely motion if the applicant meets three threshold requirements: (1) An independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law or fact between the movant's claim or defense and the main action. *United States v. Washington*, 86 F.3d 1499, 1506-07 (9th Cir. 1996). In exercising its discretion, the court must explicitly consider whether allowing the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Id*.

**1.      The Emergency Motion Is Untimely and Cannot Be Granted.**

Timeliness is the threshold requirement for intervention under Civil Rule 24. *Kalbers v. United States Dept. of Justice*, 22 F.4th 816 (9th Cir. 2021), *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997), *United States v. Washington*, 86 F.3d 1499 (9th Cir. 1996). Timeliness is determined by three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *Kalbers*, 22 F.4th 816, 822 (9th Cir. 2021) (internal citations omitted).

If a court finds that a motion to intervene is untimely, it need not analyze the remaining elements of the intervention standard. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997); *see also United States v. Washington*, 86 F.3d 1499, 1506-07 (1996) (a finding of untimeliness defeats a motion for permissive intervention under Civil Rule 42(b)(2)).

**i)      It Is Too Late to Intervene in the Adversary Proceeding.**

Here, the Adversary Proceeding as relates to possession of the Property is concluded,[3] as shown by entry of the Judgment, and turnover has been

---

[3] Pursuant to the Court's Order, Adv. ECF No. 70, the matters raised in the Adversary Proceeding were bifurcated so that the issues related to turnover and possession of the Property were decided on the merits in the Consolidated Trial, held on July 1, 2026. *See* Adv. ECF Nos. 83, 88, and 91. The remaining issues as

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

effectuated by execution of the Writ of Possession.  *See* Adv. ECF Nos. 88 and 91.  Trustee is informed that Defendants have removed all personal property and vacated the Property.  It is simply too late for Noah's Ark to intervene in the matters involving turnover and possession that are now resolved in the Adversary Proceeding.

### ii)     Allowing Noah's Ark to Intervene at this Advanced Stage Would Severely Prejudice Trustee and the Estate.

Allowing Noah's Ark to Intervene after the Judgment is entered and after Trustee obtained possession of the Property will cause extreme prejudice to Trustee, the innocent party who is duty-bound to protect and administer the Property for the benefit of the Estate.  At every turn, Trustee's efforts have been met with an onslaught of meritless "emergency" motions and objections to routine administrative applications.  Trustee was even required to appear and respond to Noah's Ark's post-trial attempt to obtain injunctive relief from the state court in Trustee's dismissed unlawful detainer action.

If intervention was to be allowed now, Trustee would be severely prejudiced by having to engage in another front of litigation with Noah's Ark, an apparently fictional entity that has lain in wait until Trustee prevailed at trial to then assert spurious and untimely claims to the Property.  Each new attempt to undo the work of Trustee and the Court in resolving the issues related to turnover and possession on their merits increases the administrative expenses of the Estate as well as increasing the secured claim balances that must be paid upon sale, causing less ultimate benefit to junior lien and unsecured creditors of the estate.

### iii)    Noah's Ark's Delay Is Devoid of Good Faith.

Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties,

---

to Trustee's claims against Defendants for money damages and Flores's Counterclaims against Trustee are to be tried at a later date.  Ad. ECF No. 50.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

not the date it learned of the litigation. *United States v. Washington*, 86 F.3d at 1503, *citing Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 934 F.2d 1092, 1095 (9th Cir. 1991). Although the length of the delay is not determinative, any substantial lapse of time weighs heavily against intervention. *Id*.

The impact of the Adversary Proceeding on Noah's Ark has been foreseeable since at least February 28, 2026, when Trustee served Flores, the principal of Noah's Ark, with the Notice to Terminate. Once Flores was served on April 8, 2026, with Trustee's Complaint seeking turnover and issuance of a writ of possession, there could have been no doubt in Flores' mind that Villa Chardonnay would not adequately protect any alleged holdover tenancy rights of Noah's Ark because Trustee was standing in the shoes of Villa Chardonnay, as the chapter 11 trustee, seeking expedited relief to "remove all unauthorized occupants at the [Property]." Adv. ECF No. 1.

At no point in the protracted, heavily briefed litigation that ensued did Flores even mention the existence of another entity under her control that asserted possessory rights as to the Property. Not even when the Court was considering Trustee's emergency request for injunctive relief, which was ultimately granted, did Flores mention Noah's Ark, an entity that she appears to wholly control, or any alleged tenancy rights to the Property.

Instead, Flores waited until after the trial was concluded and until after the Court issued its ruling and Judgment, to assert that her entity Noah's Ark had any interest in the Property. Because Noah's Ark was aware that its interests would no longer be protected adequately by Debtor since at least April 8, 2026, it cannot establish good cause for this egregious delay. *Bergstrom v. Zions Bancorporation, N.A.*, 78 Cal. App. 5th 387, 399 (Cal. Ct. App. 2022) (holding that when an individual acting as a principal or agent of a business entity acquires material information within the scope of their authority, that knowledge is

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

conclusively attributed to the entity itself and the presumption is irrebuttable); *see also* California Civil Code Section 2332.

**B.      NOAH'S ARK HAS NOT DEMONSTRATED GROUNDS FOR INJUNCTIVE RELIEF UNDER FEDERAL RULES OF CIVIL PROCEDURE 65.**

Civil Rule 65(b), made applicable by Bankruptcy Rule 7065, provides in relevant part:

> (1)     Issuing Without Notice.  The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A)    specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B)    the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. Proc. 65(b).

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical."  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking a preliminary injunction must establish that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (3) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts may evaluate these factors on a "sliding scale." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

**1.      It Is Extremely Unlikely that Noah's Ark Will Succeed on the Merits.**

In weighing a plaintiff's likelihood of success on the merits, the Ninth Circuit employs a version of the sliding scale that addresses "serious questions"

Financial Law Group
5656 La Jolla Boulevard
La Jolla, California 92037

going to the merits, rather than likelihood of success.  "A preliminary injunction is appropriate when a plaintiff demonstrates [in addition to irreparable harm and public interest] that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35.  A serious question exists where "the moving party has a fair chance of success on the merits."  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (internal quotation omitted).

In its Emergency Motion, Noah's Ark "expressed its willingness to purchase the Property" subject to this Court's approval, and seeks a temporary restraining order to prevent Trustee from enforcing the Writ of Possession so that the Court has an opportunity to consider the "proposed transaction."  Emergency Motion, 2:17-26.  The Attachment to the Emergency Motion is a California Residential Purchase Agreement and Joint Escrow Instructions, dated July 7, 2026 (the "**Noah's Ark Agreement**"), electronically signed by Kerber on behalf of Villa Chardonnay as Seller and Flores on behalf of Noah's Ark as Buyer, for a purchase price of $3,000,000.00.  Bankr. ECF No. 229, p. 10-28.  Noah's Ark has also filed a Request for Stipulation pertaining to the Noah's Ark Agreement, to which Trustee is responding separately.

Aside from the obvious impropriety of Kerber signing as Seller on behalf of Villa Chardonnay, Trustee also notes that on June 8, 2026, just one day after signing as the principal for Noah's Ark, Flores filed in the UD Case a Request to Waive Court Fees, Judicial Counsel of California Form FW-001 ("**Request for Fee Waiver**") in *Gladstone v. Perez, et al.*, California Superior Court Case No. 26UD025466C, Register of Actions ("**ROA**") as No. 19, which request was granted on June 11, 2026 (the "**Fee Waiver Order**").  A true and correct copy of the Fee Waiver Order is attached as Exhibit C to the Montes de Oca Declaration and incorporated herein.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

A review of Judicial Counsel of California Form FW-001 reveals that a party may request to have their filing fees waived if they receive government assistance, if their gross monthly income for a household of two is less than $2,660.00, and/or if they attest that they do not have enough income to pay for their household's basic needs.  A copy of Judicial Counsel of California Form FW-001 is attached as Exhibit D to the Montes de Oca Declaration and incorporated herein.

It follows that if Flores was able to demonstrate that her financial situation was dire enough that the State Court granted her request and entered the Fee Waiver Order, her assertions here that she will purchase the Property for $3,000,000.00, through her entity Noah's Ark, will not bear the weight of scrutiny when the Court evaluates a sale under 11 U.S.C. Section 363.

Furthermore, as the Court has previously noted, there have been several instances following Trustee's appointment where Defendants have been admonished that Trustee is the only person empowered to act for Villa Chardonnay.  *See* Bankr. ECF No. 175.  Kerber is without any legal authority to execute contracts on behalf of Villa Chardonnay.  If by some miracle the offer is found to be bona fide, the contract is void.

## 2.    Trustee Will Suffer Irreparable Injury if Injunctive Relief Is Granted.

"A threat of irreparable harm is sufficiently immediate to warrant preliminary injunctive relief if the plaintiff 'is likely to suffer irreparable harm before a decision on the merits can be rendered.'"  *Boardman v. Pac. Seafood Group*, 822 F.3d 1011, 1023 (9th Cir. 2016) (quoting *Winter*, 555 U.S. at 22).

The Bankruptcy Court has rendered its decision on the merits at trial as relates to Trustee's right to turnover and possession of the Property, thus Defendants cannot suffer irreparable harm if injunctive relief is denied.  This

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

conclusion is bolstered by the fact that Defendants have already removed their personal property and vacated the Property.

Trustee would suffer irreparable injury if injunctive relief is granted and her ability to sell the Property is impeded.  If injunctive relief is granted, there is a substantial likelihood that Trustee will be required to halt any efforts to sell the Property while also being duty-bound to maintain the upkeep on this large rural Property, to the detriment of the Estate and its creditors.  Such situation would result in significant reduction of the value of the Property for the benefit of the Estate, all so that the Court can consider a void sales contract executed by a seller without legal authority and a buyer without money.  The Estate will suffer irreparable harm if injunctive relief is granted.

### 3.     The Balance of the Equities Tips Heavily in Trustee's Favor.

The harm, if any, that Defendants may suffer if injunction relief is denied does not outweigh the irreparable harm to the Estate if injunction relief is granted.  Trustee's attempts to ensure that the Property is preserved for the benefit of the Estate have been met with intransigence and, after fighting an onslaught of meritless emergency requests, the Court held a trial on the merits as to Trustee's claims for turnover and possession of the Property.  Even after successfully moving to vacate her default, Flores participated in the trial without once asserting Noah's Ark's alleged interest.

Here, the balance of the equities weighs overwhelmingly in favor of Trustee and the Estate, where Trustee has succeeded in securing the Property for the benefit of the Estate, and against Noah's Ark through its principal Flores, who was given a full and fair opportunity to participate in the trial on the merits but chose, for whatever reason, to remain silent.

### 4.     The Public Interest Favors Denial of Injunctive Relief.

"The public interest analysis for the issuance of a preliminary injunction requires us to consider whether there exists some critical public interest that

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE VILLA CHARDONNAY HORSES WITH
WINGS, INC., CASE NO. 25-04245-JBM11          16          TRUSTEE'S OPPOSITION TO EMERGENCY
MOTION TO INTERVENE AND TRO

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

would be injured by the grant of preliminary relief." *Alliance for Wild Rockies*, 632 F.3d at 1138.

In this case, the public interest favors the decisive Judgment after a full trial on the merits of the Estate's superior interest in the Property. The public interest would be offended by Noah's Ark's intervention and any TRO against the Estate after the close of trial, rendering of the Judgment, and issuance and enforcement of the Writ of Possession. The Estate will be significantly injured by the granting of any injunctive relief in favor of Noah's Ark. Already, the Estate has incurred sizable administrative fees and expenses obtaining the Judgment and Writ of Possession, given the constant barrage of frivolous pleadings by Kerber and Flores. The Court should tolerate no more.

## C. <u>KERBER'S REQUEST FOR RELIEF OUTSIDE THE JOINED PLEADING IS IMPROPER AND SHOULD NOT BE CONSIDERED.</u>

In her Joinder, Kerber makes additional requests for relief that are outside the scope of the relief requested in the Intervention Motion. Kerber also seeks declaratory relief regarding the dismissed UD Case, and a request for abstention under 28 U.S.C. Section 1334(c)(1). Joinder of Monika Kerber Perez (the "**Kerber Joinder**"), ECF No. 230, p. 3-6.

It is inappropriate for a party to use a joinder to introduce new, independent requests for affirmative relief. *See generally* Fed. R. Civ. P. 7(b). Instead, joinders are limited to situations where the joining party shares identical grounds and aligned interests with the moving party. The requests for affirmative relief sought by Kerber in the Kerber Joinder require at the very least a properly noticed

motion Civil Rule 7(b). Federal courts will generally decline to consider requests for affirmative relief that are not properly raised in a motion.

Any request for relief in the Kerber Joinder that is outside the scope of the Intervention Motion is inappropriate and should not be considered. If Kerber intends to go forward with her independent requests for affirmative relief, she should be required to renew her requests by filing a motion that complies with Civil Rule 7(b), on regular notice unless the Court orders otherwise.

## IV.

## **CONCLUSION**

Noah's Ark has not demonstrated even an inkling that intervention or issuance of injunctive relief is warranted. For all the foregoing reasons, Trustee requests that the Intervention Motion be denied and any additional relief sought in the Kerber Joinder be disregarded. Trustee also requests such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: July 20, 2026          FINANCIAL LAW GROUP


By:   /s/ Hilda M. Montes de Oca
      Hilda M. Montes de Oca, Esq.
      Attorneys for Leslie T. Gladstone,
      Trustee

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE VILLA CHARDONNAY HORSES WITH WINGS, INC., CASE NO. 25-04245-JBM11          18          TRUSTEE'S OPPOSITION TO EMERGENCY MOTION TO INTERVENE AND TRO