Leslie T. Gladstone, Esq.  (SBN 144615)
Christin A. Batt, Esq.  (SBN 222584)
Hilda M. Montes de Oca (SBN 287605)
FINANCIAL LAW GROUP
5656 La Jolla Blvd.
La Jolla, CA 92037
Telephone:  (858) 454-9887
Facsimile:  (858) 454-9596
E-mail:  HildaM@flgsd.com

Attorneys for Leslie T. Gladstone, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

| In re: | Case No.:  25-04245-JBM11 |
|---|---|
| VILLA CHARDONNAY HORSES WITH WINGS, INC., | **TRUSTEE'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION TO REMOVE TRUSTEE; TO STAY, VACATE, OR MODIFY TURNOVER ORDERS; FOR PRESERVATION ORDER; AND FOR EMERGENCY EVIDENTIARY HEARING** |
| Debtor. | |

Date:      August 26, 2026
Time:      10:00 a.m.
Dept:      Two (2)
Honorable J. Barrett Marum

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................... 1

II.  STATEMENT OF FACTS ............................................................. 2

     A.   Villa Chardonnay's Prior Chapter 11 Case ................................ 2

     B.   Kerber's Chapter 7 Bankruptcy Case ...................................... 2

     C.   Villa Chardonnay's Current Chapter 11 Case ........................... 2

          1.   Appointment of Chapter 11 Trustee ................................ 3

          2.   Employment of Professionals and Fee Applications ........ 4

          3.   Mail Forwarding ........................................................... 6

          4.   Operations/ Animal Seizure/ Undisclosed Employees ..... 7

          5.   Eviction Notice ............................................................. 10

     D.   The Adversary Proceeding ....................................................... 11

          1.   Temporary Restraining Order; Preliminary Injunction; and Consolidated Trial ....................................................... 12

          2.   Judgment and Writ of Possession ................................... 13

          3.   Status of the Main House and Property .......................... 13

     E.   The Motion to Remove Trustee ................................................ 14

III. MEMORANDUM OF POINTS AND AUTHORITIES ..................... 15

     A.   Debtor Has No Standing to Bring the Motion. ......................... 15

     B.   The Motion Is a Frivolous Attempt to Relitigate Issues Already Decided. ..................................................................... 16

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE VILLA CHARDONNAY HORSES WITH WINGS            ii            TRUSTEE'S OPPOSITION TO EMERGENCY
CASE NO. 25-04245-JBM11                                                         MOTION TO REMOVE TRUSTEE

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

1. Debtor Has Not Demonstrated Grounds for Reconsideration under Federal Rule of Civil Procedure 60(b). .................................... 17

2. The Villa Orders and Findings Therein Are Law of the Case. .................................... 18

    (a) Issues Raised as to Service of Process Have Been Decided. .................................... 19

    (b) Issues Raised as to the Postpetition Finance Order Have Been Decided. .................................... 21

C. Debtor Has Utterly Failed to Demonstrate Cause to Remove Trustee. .................................... 21

1. Warrant Is Not Reviewable by the Bankruptcy Court. .................................... 22

2. SDHS Is Not a Tenant on the Property. .................................... 23

3. Trustee's Actions Were an Appropriate Exercise of Her Business Judgment. .................................... 23

IV. CONCLUSION .................................... 25

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

# TABLE OF AUTHORITIES

**Cases** <u>Page</u>

*In re AFI Holding, Inc.*,
530 F.3d 832 (9th Cir. 2008) .............................................. 21, 22

*In re Albert-Sheridan*,
676 B.R. 214 (Bankr. C.D. Cal. 2025) ...................................... 22

*In re Baroni*,
643 B.R. 253 (Bankr. C.D. Cal. 2022) .............. 15, 16, 22, 23, 24

*In re Carvalho*, 578 B.R. 1 (Bankr. D.D.C. 2017) ............................. 23

*In re Consol. Indus. Corp.*,
330 B.R. 712 (Bankr. N.D. Ind. 2005) ...................................... 23

*In re Eisen,* 2006 Bankr. LEXIS 4790
(B.A.P. 9th Cir., Dec. 28, 2006) ................................... 16

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005) ...................................................... 22

*Matter of Fondiller*, 707 F. 2d 441 (9th Cir. 1983) ............................ 15

*Hall v. City of Los Angeles*,
697 F.3d 1059 (9th Cir. 2012) ........................................ 18, 19

*Jones v. Flowers*, 547 U.S. 220 (2006) ................................... 19

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
902 F.2d 703 (9th Cir. 1990) ...................................... 18

*Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003) ...................................... 22

*In re Palmdale Hills Property, LLC*,
654 F. 3d 868 (9th Cir. 2011) ...................................... 15

*Pit River Home & Agric. Coop. Ass'n v. United States*,
30 F.3d 1088 (9th Cir. 1994) ...................................... 18

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

**Federal Statutes**

11 U.S.C. § 101(14) ....................................................................................... 3, 4

11 U.S.C. § 324 ................................................................... 1, 21, 22, 23

11 U.S.C. § 704 ................................................................................. 16

11 U.S.C. § 727 ................................................................................... 2

11 U.S.C. § 1106 .............................................................................. 16

**Federal Rules**

Fed. R. Bankr. P. 2015 ...................................................................... 16

Fed. R. Bankr. P. 9017 ........................................................................ 1

Fed. R. Civ. P. 4 ......................................................................... 17, 18

Fed. R. Civ. P. 60 ................................................................... 17, 18, 21

Fed. R. Evid. 201 ................................................................................ 1

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

Leslie T. Gladstone, the chapter 11 trustee ("**Trustee**") for the bankruptcy estate (the "**Estate**") of Villa Chardonnay Horses with Wings, Inc. ("**Villa Chardonnay**" or "**Debtor**"), submits this *Opposition to Debtor's Emergency Motion to Remove Trustee; to Stay, Vacate, or Modify Turnover Orders; for Preservation Order; and for Emergency Evidentiary Hearing* (the "**Motion**"), filed by Debtor in violation of the Court's Order that the only party that can act on behalf of the Debtor is Trustee.[1]  This Opposition is based on the Memorandum of Points and Authorities cited herein, the Declaration of Leslie T. Gladstone ("**Gladstone Declaration**"), filed concurrently herewith, and the record before the Court.[2]

## I.    INTRODUCTION

Although the Motion is styled as a motion to remove Trustee under 11 U.S.C. Section 324, Debtor's regurgitated arguments are aimed at reconsideration of several of the Court's Orders[3] (collectively, the "**Villa Orders**").  It is not surprising that Debtor completely fails to meet the threshold requirements for

---

[1] The caption of the Motion lists the movant as "Debtor" or "Villa Chardonnay" even though the Court has made it abundantly clear that the only party that can act on behalf of Debtor is Trustee.  *See* ECF No. 175.

[2] Trustee respectfully requests, pursuant to Rule 201 of the Federal Rules of Evidence, made applicable herein by Rule 9017 of the Federal Rules of Bankruptcy Procedure, that the Court take judicial notice of the case docket for the above-captioned case and each of the pleadings and other documents on file in the case, including without limitation those attached and marked as exhibits to the supporting declaration filed herewith.

[3] *Order Approving the Appointment of Chapter 11 Trustee* (the "**Appointment Order**," ECF No. 89); *Order Denying Emergency Motion to Strike, Vacate, Stay, or Limit Relief Based on Defective Proofs of Service, Inaccurate Address Filings, Mail Interference and Lack Of Meaningful Notice* (the "**Order re Service**," Adv. ECF No. 57); *Interim and Final Orders on Trustee's Motion for Order Authorizing Postpetition Financing* (the "**Postpetition Financing Order**," ECF Nos. 113 and 125); and *Order Approving Emergency Motion for Approval of Stipulation Regarding Immediate Turnover of Animals to the San Diego Humane Society* (the "**Seizure Stipulation Order**," ECF No. 159.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

reconsideration here.  Debtor and its principals Monika Kerber Perez ("**Kerber**") and Mercedes Flores ("**Flores**" collectively with Kerber, the "**Villa Principals**") have already sought and been denied reconsideration of many of the Villa Orders complained of in the Motion — the result will be the same here and will not serve to do anything other than increase the administrative costs to the Estate.

Astonishingly, Debtor is barefaced in its motivation to stay the effects of the Court's Judgment and Writ of Possession by attempting to remove Trustee merely because Villa Principals disagree with Trustee's appropriate exercise of her business judgment.  Trustee requests that the Motion be denied in its entirety.

## II.  STATEMENT OF FACTS

### A.  Villa Chardonnay's Prior Chapter 11 Case

Villa Chardonnay filed a voluntary chapter 11 petition on September 1, 2025, in the Bankruptcy Court for the Southern District of California as Case No. 25-03692-JBM11.  On October 1, 2025, the prior Chapter 11 case was dismissed on a motion by the United States Trustee due to Debtor's failure to provide the required proof of insurance.  [25-03692-JBM, ECF No. 45]

### B.  Kerber's Chapter 7 Case

On October 20, 2025, Kerber filed a voluntary chapter 7 petition, bankruptcy case no. 25-04318-JBM7.  The chapter 7 is open and discharge is not entered, as Kerber is a defendant in a pending adversary proceeding (26-90010-JBM), filed by creditor Ark Watch Foundation/Celine Myers on January 20, 2026, seeking denial of discharge under 11 U.S.C. Section 727.

### C.  Villa Chardonnay's Current Chapter 11 Case

On October 14, 2025, Debtor filed its second voluntary chapter 11 petition, commencing the present case (the "**Case**").

On January 23, 2026, senior secured creditors River Falls, LLC, Private Mortgage Lending, Inc., and the Armbrust Trust filed an *Emergency Motion to Appoint Chapter 11 Trustee*.  On January 29, 2026, the Court entered its Order

Conditionally Appointing Chapter 11 Trustee (the "**Appointment Order**," ECF No. 84).

Thereafter, also on January 29, 2026, the United States Trustee filed its *Application for Approval of Leslie Gladstone as Chapter 11 Trustee* (ECF No. 88) and the Court confirmed the appointment of Ms. Gladstone as Trustee ("**Order Confirming Appointment**," ECF No. 89).  In the Appointment Order, the Court states as follows: "The Chapter 11 trustee will have the full powers of a Chapter 11 trustee, including discretion to determine what is in the best interests of the bankruptcy estate, regardless of the terms in the probationary registration." *Appointment Order*, ECF No. 84, p. 2.

1.    Appointment of Chapter 11 Trustee

Prior to her appointment, Trustee reviewed the bankruptcy schedules and case docket for Villa Chardonnay as well as the schedules for Kerber.  A review of the petition and schedules showed that Villa Chardonnay owns approximately 42 acres of land in Julian, California located at 4554 and 4430 Boulder Creek Road, Julian, California (the "**Property**").  Trustee also reviewed the Grant Deed for the Property, showing ownership of the Property held by Villa Chardonnay.

Trustee's review also revealed that the Property was being used to operate an animal sanctuary, allegedly for aging and disabled animals, and that there were approximately 600-700 animals on the Property at the time of the Case was filed (the "**Animals**").

Trustee also reviewed Villa Chardonnay's corporate records indicating that Kerber and Flores were the officers for Villa Chardonnay.  Based on her review, Trustee determined that Trustee was disinterested under 11 U.S.C. Section 101(14).  Trustee reviewed all potential conflicts of interest and completed a declaration stating that there were none in the Case.  *See* ECF No. 88; Attachment #1.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California  92037

2.      Employment of Professionals and Fee Applications

On February 9, 2026, Trustee filed an application to employ Financial Law Group ("**FLG**") as her attorneys for the Case (the "**FLG Employment Application**").  [ECF No. 104]  The FLG Employment Application clearly states that FLG is disinterested, as that term is defined in the Bankruptcy Code.  *See Id.*, Attachment #1; 11 U.S.C. Section 101(14).  Trustee has retained FLG in hundreds of other cases in which she is appointed trustee, always with full disclosure of the fact that she is FLG's founder and owner.

The Court approved the FLG Employment Application on February 11, 2026, stating specifically:

> [T]he Court being satisfied that said attorneys hold and represent no interest adverse to the individual creditors herein, Villa Chardonnay Horses with Wings, Inc ("Debtor") or the estate of Debtor and that the employment of said attorneys is necessary for the Trustee to employ attorneys skilled in bankruptcy law and that Financial Law Group is such a firm, and that Financial Law Group represents no adverse interest which would prohibit or impair the employment of the firm and that the employment of Financial Law Group is in the best interest of this estate. …

*See id*. at p. 2.

On February 18, 2026, Trustee filed a *Motion to Approve Employment of Jeff Wiemann as Non-Profit Consultant in the Case* (the "**Wiemann Employment Motion**").  [ECF No. 121]  On March 12, 2026, the Court granted the Wiemann Employment Motion in its entirety, and entered an order thereon on March 17, 2026.  [ECF No. 147]

Also in February 2026, Trustee initiated discussions with Paul Buie of Onyx Asset Advisors as to assisting her with possible sale of the Property. Trustee worked with Mr. Buie in a previous complicated case and found his work to be extremely competent.  Trustee is also aware of Mr. Buie's excellent

reputation in other cases and from their networking involvement in Turnaround Management Association. Neither Trustee or FLG ever receive any personal benefit or compensation, in the Case or in any other case, as a result of employing Mr. Buie or Onyx Asset Advisors.

Ultimately, Trustee decided that Onyx Asset Advisors was not the best fit for the Case. Trustee is currently negotiating a listing agreement with Geffen Real Estate ("**Geffen**") and expects to have an Application to Employ Geffen on file with the Court shortly.

On May 18, 2026, Trustee filed the *First Interim Fee Applications* for FLG, Wiemann and the Estate's accountants Bachecki, Crom & Co, LLP ("**Bachecki**") (the "**Fee Applications**"). The Fee Applications were noticed to all creditors and everyone requesting special notice in the Case on May 18, 2026. The unopposed Bachecki Fee Application and Wiemann Fee Application were granted by separate orders on June 22, 2026. [ECF Nos. 198 and 199]

Opposition and Objection to the FLG Fee Application was filed by attorney Nissan Thomas, purportedly on behalf of Debtor, on June 2, 2026 (the "**FLG Fee Opposition**"). Kerber submitted a sworn declaration in support of the FLG Fee Opposition. No other opposition was filed.

The FLG Fee Application was granted in full on June 17, 2026 (the "**FLG Fee Application Order**"). The Court's ruling in the FLG Fee Application Order is instructive as to many of the points made in the Motion. First, the Court questioned the standing of the "dispossessed Debtor" to bring the FLG Fee Opposition but, given that the FLG Fee Application was for interim fees, the Court declined to make a ruling on standing. The Court did say that it "could not disagree more with [the Debtor's] implication that FLG's fees with respect to the animals' turnover to SDHS did not benefit the estate. . . It is clear to the Court that the Trustee reasonably cooperated with SDHS when it served the warrant and to coordinate SDHS' next steps." [ECF No. 192] The Court further noted it was

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

"satisfied that FLG's fees overall were reasonable, necessary and that they have conferred a benefit upon the estate." *Id.*

3.      Mail Forwarding

Upon her appointment, Trustee performed many routine tasks; tasks that frequently are involved in corporate cases. One of these routine tasks is to cause the US Postal service to forward the mail for the Debtor entity. In this Case, Trustee caused the forwarding to be done on February 5, 2026, from the address listed on the bankruptcy petition, PO Box 1000, Julian, California (the "**PO Box**"), to Trustee's business address of 5656 La Jolla Blvd, La Jolla CA 92037.

From her review of the case docket and Debtor's corporate records, Trustee learned that Kerber and Flores were the corporate officers of Debtor prior to her appointment and were living at the main house (the "**Main House**") on the Property.

Upon learning that Kerber and Flores were receiving personal mail at the PO Box that served as Debtor's business address, Trustee cautioned Kerber and Flores that they should immediately obtain a separate mailing address for their personal mail. While Trustee only requested a forwarding of mail addressed to Villa Chardonnay, in her experience, the Post Office may forward all mail from the corporate address.

Indeed, Trustee did receive several items of mail addressed to Flores and/or Kerber. Trustee personally delivered this mail to the Main House, as close as reasonably possible to when received. When Trustee delivered this mail, she again admonished Kerber and Flores to obtain a separate mailing address. She also confirmed this requirement in writing on at least one occasion.

To Trustee's knowledge, no separate mailing address was ever obtained by Kerber or Flores. Instead, and incredibly, it appears that Kerber and/or Flores at some point caused the forwarding of Debtor's mail to be canceled such that the Estate was no longer receiving any Villa Chardonnay mail. This was without

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

IN RE VILLA CHARDONNAY HORSES WITH WINGS     6     TRUSTEE'S OPPOSITION TO EMERGENCY
CASE NO. 25-04245-JBM11                                                    MOTION TO REMOVE TRUSTEE

Trustee's permission. In fact, Trustee did not even receive notice that the mail had been redirected until June 9, 2026, when Kerber and Flores simply included in emails to Trustee that the mail forwarding issue "has now been corrected." At no time has either Kerber or Flores provided Trustee with any of the redirected mail of Villa Chardonnay.

Consequently, in addition to personal service of many key matters, Trustee routinely sent Kerber and Flores copies of all pleadings to their personal emails. Trustee also mailed multiple items to either the 4554 Boulder Creek Road and/or the 4430 Boulder Creek Road addresses, and both Kerber and her attorney are listed as electronic notice recipients.

### 4. Operations/Animal Seizure/Undisclosed Employees

On January 30, 2026, the day after her appointment, Trustee met with Kerber at the Property in order to understand any urgent matters and to adequately plan for her operations. During that visit, Kerber gave Trustee a tour of the Property but would not consent to her viewing of the Main House where apparently the records of Villa Chardonnay were located. Kerber informed Trustee that she and Flores live at the Main House, although they do not have a lease and do not pay any rent for their occupancy. At that time Kerber discussed her supposed plan for the Property and that Kerber intended to pay all of the claims in the Case within 1-3 weeks.

To be respectful of their living space, Trustee arranged a second meeting which included Debtor's chapter 11 counsel Michael Totaro and Trustee's consultant Wiemann. At that second meeting on February 6, 2026, Trustee was permitted entry to the Main House, containing the "business office" of Villa Chardonnay. Alarmingly, Kerber informed Trustee and Wiemann during the meeting that Kerber and Flores recently shredded the vast majority of Villa Chardonnay's records because the records were kept in garbage bags and there was "just too much paper."

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

The only business records Trustee was able to recover during that visit were the feed and supply receipts since her appointment date, which Trustee had specifically mandated to be provided daily (they were not provided daily, as requested, but a small stack of them was waiting for Trustee at this meeting). Notwithstanding the extreme deficiency of business records, in her early operations of the Case, Trustee allowed Kerber and Flores to continue to care for and feed the animals, based primarily on Kerber's representation that she needed only a maximum of three weeks to come up with sufficient funds to pay all of the creditors in the Case.

When this funding did not come to pass, Trustee still cooperated with Kerber and Flores but informed them that she would need to follow "parallel paths" of administration.  In other words, Trustee would continue to allow them to care for the animals and to work towards this supposed funding for the creditors but would also need to take steps towards relocating the animals and selling the Property.

During this time, Trustee continued to communicate with Kerber and Flores via text and email on a daily basis as to their caring and feeding of the Animals and Trustee obtained daily receipts as to the number of volunteers on the Property and the feed/supply receipts from donors.

Trustee also began speaking with various non-profit agencies and shelter organizations about the Animals.  Trustee arranged for a veterinary team to examine various of the Animals, in order to gauge exactly what would be required to re-house the several animal species on the Property.  Trustee also continued to monitor the condition and activities at the Property, by her and/or Wiemann's visits, to verify that the daily reports of animals and operations were accurate.

On two separate occasions during this initial time, Trustee and/or Wiemann observed at least ten dogs in the area just outside the Main House, despite Kerber having promised Trustee that she was not housing any dogs on the Property.  This

was an important factor because dogs in that magnitude must have adequate shelters (there were none visible) and also dogs were excluded from coverage on the liability insurance for Villa Chardonnay.  On another occasion, there were at least ten cats in the master bedroom, the toilet was clogged with human feces, and there was evidence of multiple cat feces in the bathtub.

San Diego Humane Society ("**SDHS**") was one of the shelter organizations that Trustee began speaking with in April 2026.  Initially, SDHS was potentially interested in receiving approximately 100 of the cats on the Property and so arrangements were made for SDHS to visit the cattery.  Jace Huggins ("**Huggins**") was the primary officer attending this initial visit and, based on his review, he then requested to view all the Animals on site.

Around this same time, the vet reports came in from the veterinary team examinations.  The results of the SDHS inspections and vet reports were alarming; many of the Animals were determined to be receiving inadequate care.  As a result of its own inspections and review of the vet reports, SDHS informed Trustee on April 28, 2026, that its intention was to obtain a warrant to seize all of the Animals on site (the "**Seizure**").   On April 30, 2026, the California Superior Court (the "**State Court**") issued a warrant (the "**Warrant**") ordering the Seizure of the Animals, the Honorable Judge Polly Shamoon, presiding.  Trustee was notified that the Warrant had been issued and was a provided a copy to review during the Seizure.  A copy of the Warrant is attached as <u>Exhibit A</u> to the Gladstone Declaration and incorporated herein.

Upon issuance of the Warrant, Trustee filed a request for an emergency hearing with the Court on May 1, 2026, to approve a stipulation with SDHS (the "**SDHS Stipulation**") granting SDHS some requested assurances as to the Animals being property of the Estate and that relief from stay to carry out the Seizure was approved.  On May 1, 2026, Trustee personally served her request for an emergency hearing and the SDHS Stipulation. *Proof of Service of Emergency*

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

*Motion to Approve SDHS Stipulation*, ECF No. 169.  The Court held a hearing on May 1, 2026, at 3:00 p.m., at which time the SDHS Stipulation was approved in its entirety.  *Seizure Stipulation Order*, ECF No. 159.

The Seizure occurred on May 1, 2026.  At the time of the Seizure, there were approximately 30 dogs and 14 cats located inside the Main House.  In the exercise of her business judgment, Trustee cooperated and continues to cooperate fully with the Warrant and Seizure and any continued involvement of SDHS with the Animals.

During the Seizure, two men visited the Property who claimed they were landscape employees of Debtor.  The two gentlemen admitted that they were not legal to work in the United States.  Trustee advised them that she could not allow them to work and that they needed to leave.  Upon Kerber's confirmation, Trustee allowed them to pick up some of their landscape tools that they had left on the Property two days previous when they were working there.  At no time have any records been provided to Trustee as to employee files.  Kerber at all times vehemently insisted to Trustee that Villa Chardonnay never had employees and that Kerber had never allowed anyone to work illegally on the Property.

On an earlier occasion, Trustee also observed what appeared to be Kerber and Flores providing accommodation to employees in the guest house.  When Trustee visited the guest house, one of the rooms appeared to have had someone recently sleeping there.  Consequently, on February 24, 2026, on a visit when the guest house was empty, Trustee caused the locks to be changed to ensure there were no further security transgressions.

5.    Eviction Notice

Contemporaneous with setting up the initial vet examinations and inspections and due to the failure of Kerber's alleged funding scheme, Trustee began the process of eviction for Kerber and Flores.  On February 24, 2026, Trustee effectuated personal service on Kerber and Flores and posted on the Main

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

House her termination of any tenancy rights of Kerber, Flores, and any other occupants of the Main House (the "**Termination Notice**"). The Termination Notice provided Kerber and Flores with sixty days' notice of termination commencing on February 24, 2026 and concluding on April 24, 2026. The Termination Notice allowed the time period to commence for eviction while still allowing for the Estate to cooperate with Kerber and Flores if they were able to accomplish the funding that they continued to maintain was imminent.

Unfortunately, the funding promised by Kerber and Flores never came to pass and, when it became clear to Trustee that Kerber and Flores were just stalling for time and that they were not going to cooperate with voluntarily vacating the Property, Trustee filed the *Complaint for (1) Turnover of Real Property of the Estate and (2) Issuance of Writ of Execution for Possession of Real Property* on April 6, 2026 (the "**Turnover Complaint**").

In addition, during this time, Kerber had ceased using the DIP account for deposits and expenses. Instead, the Villa Principals had donors provide feed donations by gift cards, donations in kind and likely undisclosed cash donations. Other than the funds received from the post-petition financing and one trust estate distribution, there were no ongoing funds being deposited into the DIP account or Trustee's estate account. It became increasingly clear to Trustee that there was no other option for this Case other than to relocate the Animals and sell the Property, in order to provide some benefit to the creditors of the Estate.

### D. The Adversary Proceeding

As stated above, Trustee caused to be filed the Turnover Complaint against Kerber and Flores on April 6, 2026. The Turnover Complaint was personally served on Kerber and Flores on April 8, 2026. Kerber answered the Turnover Complaint on May 5, 2026 (the "**Kerber Answer**"). Flores initially defaulted the Turnover Complaint, but the Court granted her Motion to Vacate the Default on

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

June 12, 2026.  Flores then filed her answer on June 17, 2026 (the "**Flores Answer**").

        1.     <u>Temporary Restraining Order; Preliminary Injunction; and Consolidated Trial</u>

After the Seizure, SDHS was permitted daily access to  the Property, tending to various Animals that were not well enough for transport, making arrangements with prior owners desiring to re-acquire their animals, and coordinating temporary or permanent housing for the animals now in their care (the "**SDHS Operations**").  The SDHS Operations required daily dispatch of various volunteers and officers to the Property, tending to and arranging vet care and safe transport for those of the Animals that remained through and including July 15, 2026.

Multiple reports were provided to Trustee by SDHS alleging interference by Kerber and Flores with the SDHS Operations.  As a result of this interference, Trustee filed the *Emergency Application of Chapter 11 Trustee for Temporary Restraining Order and Issuance of Order to Show Cause Why Preliminary Injunction Should Not Issue Against Defendants to Prevent Dissipation or Destruction of Estate Assets, and Related Orders*, (the "**TRO Application**," Adv. ECF No. 13) which was served on May 8, 2026.  On May 11, 2026, the Court held an emergency hearing on the TRO Application, and it was granted in its entirety.  The order on the TRO Application (the "**TRO Order**") was personally delivered to Kerber and Flores and also served by electronic mail on May 13, 2026.

Thereafter, the Court held a hearing (after shortening time) on May 21, 2026, on Trustee's *Motion (1) To Compel Turnover of Property of the Estate; (2) for Writ of Execution to Compel Defendants to Vacate Property, with Assistance of U.S. Marshals; and (3) to Advance the Trial on the Merits and Consolidate with the Preliminary Injunction Hearing* (the "**Consolidation Motion**").  The

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

Court ordered consolidation of the preliminary injunction hearing with the trial and issued the preliminary injunction (the "**Preliminary Injunction Order**"). The Preliminary Injunction Order was served by the Court on Kerber and Flores on May 27, 2026.

### 2. Judgment and Writ of Possession

The matter came on for trial on July 1, 2026, at 9:00 a.m., in Department Two (2) of the above-entitled Court, the Honorable J. Barrett Marum presiding.

On July 13, 2026, the Court entered the *Order on Findings of Fact and Conclusions of Law after Trial* (the "**Findings & Conclusions**"), and the Judgment After Trial (the "**Judgment**"), declaring that all occupants are divested of possession rights for the Property and must vacate on or before July 15, 2026. [Adv. ECF Nos. 83; 84 and 88]. The Court also found that Trustee was entitled to a writ of possession of the Property, directing the U.S. Marshal and/or other applicable law enforcement to immediately assist Trustee to take possession of the Property by promptly removing the Villa Principals and any other occupants.

On July 15, 2026, the Court issued the Writ of Possession (the "**Writ**"). [Adv. ECF No. 91] On July 17, 2026, United States Marshals entered the Property with Wiemann's assistance and executed the Writ. The Villa Principals had vacated the Property, leaving it in a dilapidated and unsanitary state.

### 3. Status of the Main House and Property

On May 26, 2026, Trustee visited the Main House with Trustee's proposed broker and its contractors. Trustee's inspection of the Property was initially thwarted when Kerber and Flores served her with a document that appeared to be a temporary restraining order and then called the Sheriff, alleging that they had a temporary restraining order against Trustee. The Sheriff came to the Main House and questioned Trustee on her right to be there and whether she was in violation of this supposed order. A further look at the alleged document, however, revealed

that it was not a restraining order and in fact was not an order at all. As such, the Sheriff told Trustee that she could proceed.

Trustee found the Main House to again be in severe disrepair. Although it was apparent that Kerber and Flores had done a lot of tidying since her last visit to the Main House, the smell of animals remained pungent, and the Main House continued to be in a dilapidated state.

Trustee also continued to receive complaints from SDHS as to interference by Kerber and Flores. Trustee was informed by SDHS that several vets and volunteers had declined to return to service at the Property, given the curses and other actions performed by Flores. Also, on several occasions, Trustee received reports that there were shut offs to the water system in certain areas of the Property that were not caused by SDHS. These water shut offs jeopardized the Animals in that region of the Property. On another occasion, Trustee received a report that a person dressed in black was observed near a water shut off valve at the Property.

### E.    The Motion to Remove Trustee

On June 25, 2026, Debtor filed an *Emergency Motion to Remove Trustee; to Stay, Vacate, or Modify Turnover Orders; for Preservation Order; and for Emergency Evidentiary Hearing*. [ECF No. 201] On that same day, the Court denied this initial attempt without prejudice, as it determined that its consideration on an emergency basis was not warranted and permitted re-filing on regular notice. [ECF No. 203]

On June 28, 2026, Debtor re-filed the document as the instant Motion. [ECF No. 207] On June 29, 2026, the Court issued a *Notice to Filer of Error and/or Deficiencies in Documents*, indicating that movant needed to file a Notice of Hearing with the document. [ECF No. 212] Debtor did not correct this error until July 22, 2026. [ECF No. 239]

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

### III.   MEMORANDUM OF POINTS AND AUTHORITIES

### A.   Debtor Has No Standing to Bring the Motion.

The Court has repeatedly questioned the standing of the Villa Principals acting as Debtor's representatives in their various requests for relief, and recognized in its Orders that the Villa Principals have not understood, or will not accept, that they are not empowered to act on behalf of Debtor. *See, e.g., Order Denying Emergency Motion for Temporary Restraining Order*, ECF No. 175; *Order Granting Financial Law Group's First Interim Application for Award of Compensation and Reimbursement of Expenses*, ECF No. 192. This Motion is proof that even the Court's own admonishments have not slowed the pace of the Villa Principals' attempts to wrest control of Debtor from Trustee.

In the bankruptcy context, "the prudential standing doctrine" or the "person aggrieved test" provides that "[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court ... have standing to appeal that order." *In re Baroni*, 643 B.R. 253, 285 (Bankr. C.D. Cal. 2022), *quoting In re Palmdale Hills Property, LLC*, 654 F. 3d 868 (9th Cir. 2011); *see also Matter of Fondiller*, 707 F. 2d 441 (9th Cir. 1983).

The Ninth Circuit Court of Appeals determined that the debtor carries the burden of demonstrating that the debtor satisfies the "person aggrieved" test; this requires a showing that the debtor "was directly and adversely affected pecuniarily by the order of the bankruptcy court." *Fondiller*, 707 F.2d at 443. The Ninth Circuit concluded that "a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate" because such orders do not "diminish the [debtor]'s property, increase his burdens, or detrimentally affect his rights." *Id*. The bankruptcy court in *Baroni* noted that, where there is a trustee, "debtors rarely have a pecuniary interest ... because how the estate's assets are disbursed by the trustee has no pecuniary effect on the debtor." *Baroni*, 643 B.R.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

at 285, *citing In re Eisen,* 2006 Bankr. LEXIS 4790 at *4 (B.A.P. 9th Cir., Dec. 28, 2006).

In this Case, the only property of the Estate with any value is the Property, which has a value of between $2.5 million and $3.6 million. A review of the Schedules shows that Debtor acknowledges secured claims totaling at least $6,627,811.66. [ECF No. 1, p. 8] It is clear that Debtor is hopelessly insolvent and there will be no surplus in this Estate. Indeed, there would be no value at all for the creditors of the Estate but for Trustee's work negotiating carve outs with secured creditors to maximize the likelihood of a meaningful distribution to undersecured and unsecured creditors. Debtor is not adversely affected by the Villa Orders and thus does not have standing to seek removal of Trustee or standing to request any of the other relief related to staying the Villa Orders, or requests for additional accounting not required under 11 U.S.C. Section 704(a)(8), made applicable to this Case under 11 U.S.C. Section 1106(a)(1). *See also* Fed. R. Bankr. P. 2015(a)(3).

**B.    The Motion Is a Frivolous Attempt to Relitigate Issues Already Decided.**

Trustee refers the Court to her exhaustive description of the litany of attempts by the Villa Principals to seek emergency and/or injunctive relief, seeking to prevent Trustee's administration of the Case. *See Trustee's Opposition to Noah's Ark's Emergency Motion to Intervene as an Interested Party*, ECF No. 236, 6:7-8:15. The Villa Principals, through Debtor, are now (again) seeking reconsideration of the Villa Orders and to remove Trustee because they disagree with her business judgment, without recognizing the irony that their own lack of business judgment was the reason Trustee was appointed in the first place. *See Emergency Motion to Appoint Chapter 11 Trustee*, ECF No. 63; C*ourt Minutes for January 27, 2026*, ECF No. 82; the Appointment Order, ECF No. 84; and the Order Confirming Appointment, ECF No. 89. In doing so, Debtor blatantly

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

ignores that the issues complained of in the Motion have already been decided and, in some instances, already reconsidered by the Court.

1. *Debtor Has Not Demonstrated Grounds for Reconsideration under Federal Rule of Civil Procedure 60(b).*

Debtor has not demonstrated that any of the Villa Orders were procured by mistake or excusable neglect, fraud, or that there is newly discovered evidence that could not have been discovered in time to change the result. In the Motion, Debtor seeks reconsideration of the Seizure Stipulation Order (and assumedly also seeks for this Court to undo the Warrant) because it argues that no meaningful notice was given to the Villa Principals before the Court heard the Motion on an emergency basis, and that there was no "animal by animal" determination of ownership before Trustee complied with the Warrant and cooperated with the Seizure by SDHS.

On May 1, 2026, Trustee caused a copy of the SDHS Stipulation and her request for an emergency hearing on the SDHS Stipulation to be personally served on Kerber by Wiemann. [ECF No. 169] Wiemann also effectuated service on Flores pursuant to Federal Rule of Civil Procedure 4(e) by leaving a copy of the same documents for Flores with Kerber. Trustee made sure that the Villa Principals were served personally to provide as much notice of her request for an emergency hearing on the SDHS Stipulation as was reasonably possible under the extreme circumstances presented by the Seizure.

The Court has noted previously that Flores may not wholly understand the approved methods of service provided for under Federal Rule 4:

> Flores appears to have made the conscious choice not to answer the Complaint on her mistaken but apparently genuine belief that the Trustee failed to properly serve her. Flores continues to dispute whether service was proper, indicating her intent may not have been to manipulate the legal process but instead reflects a fundamental misunderstanding of the Federal Rule governing service of process.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

*Order Granting Flores Motion to Set Aside Entry of Default,* Adv. ECF No. 47. Such misapprehension by Flores, however, does not mean that service was improper or that Flores did not receive meaningful notice.

Further, any complaint that there was no "animal by animal" determination of ownership before Trustee complied with the Warrant and cooperated with the Seizure by SDHS or her allowing SDHS to remain on the Property until all the Animals were safely relocated goes to the exercise of her business judgment and must fail for the reasons explained below. *See infra*, Section III.C. There are simply no grounds for reconsideration of any of the Villa Orders, including the Seizure Stipulation Order, and so Debtor's requests to stay, vacate, modify, or clarify the Seizure Stipulation Order under Rule 60(b) must be denied.

2. <u>*The Villa Orders and the Findings Therein Are Law of the Case.*</u>

The law of the case doctrine, a judicial invention, aims to promote the efficient operation of the courts. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (*citing Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). The law of the case rule ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case." *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1096-97 (9th Cir. 1994). The law of the case doctrine is a discretionary one created to maintain consistency and avoid reconsideration, during the course of a single continuing lawsuit, of those decisions that are intended to put a matter to rest. *Id*. at 1097.

A decision on a factual or legal issue "must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Id.* at 1097. The issue in question must have been decided explicitly or

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

by necessary implication in the previous disposition. *Hall v. City of Los Angeles*, 697 F.3d at 1067.

(a)    Issues Raised as to Service of Process Have Been Decided.

In the Motion, Debtor argues that service of process was improper because when Trustee forwarded Debtor's mail from the PO Box that served as Debtor's business address, the Villa Principals' personal mail was also forwarded. Trustee was diligent in repeatedly informing the Villa Principals that they needed to establish their own personal mailing address but, as is characteristic of them, the Villa Principals refused to acknowledge that Debtor and the Villa Principals are not one in the same. Instead, the Villa Principals violated the automatic stay by redirecting the forwarding of Debtor's mail to themselves. *See Motion*, 4:15-18 ("… until approximately June 2026, when Monika Kerber and Mercedes Flores were able to address the issue and re-establish control over the mailbox and mail delivery.") The Villa Principals cannot complain that they did not receive notice via their personal mail when it was their own inaction that caused the issue in the first place.

Astonishingly, Debtor even complains that Trustee sent filed pleadings and documents to the Villa Principals via their personal email. Even though Trustee repeatedly entreated the Villa Principals to establish a separate mailing address, once Trustee had knowledge that service by U.S. Mail to the Villa Principals may be ineffective, she took additional reasonable steps by sending copies of all pertinent pleadings to the Villa Principals via their personal email to provide meaningful notice that would satisfy the requirements of due process. Trustee's actions in sending a courtesy copy of documents to the Villa Principals via email were reasonably calculated to ensure that the Villa Principals were given adequate notice of the relief Trustee sought, even though they refused to obtain their own mailing address. The authority cited by Debtor supports Trustee's position. *Jones v. Flowers*, 547 U.S. 220, 234 (2006) (holding that the state must take additional

reasonable steps to attempt to provide notice before depriving someone of their property when it has knowledge that its mailed notice was returned).

The Court has already considered and rejected the previous, nearly identical due process arguments raised by the Villa Principals in an *Emergency Motion to Strike* filed by Flores:

> On May 11, 2026 the Court held a hearing on the Trustee's Emergency Application for Temporary Restraining Order (the "TRO hearing") and the Defendant appeared on video at that hearing. ECF No. 18. The relief the Court granted in the Preliminary Injunction expressly "includes the terms set forth in the Temporary Restraining Order the Court previously entered," which the Defendant already had an opportunity to address during the TRO hearing. ECF No. 29 at 3. Following the TRO hearing, the Defendant also filed a written response to the Trustee's application for the preliminary injunction within the time the Court allowed. ECF No. 26. Her opposition included the hearing date and time in the caption for the subsequent hearing. ECF No. 26. The opposition thus shows that the Defendant did in fact receive notice of the hearing on the preliminary injunction itself. This, among other responses, does not comport with the Defendant's claim in the Declaration that "the service and notice defects have affected [her] ability to defend [herself], object, respond before deadlines, participate meaningfully, protect [her] personal rights, and challenge relief being enforced against [her] personally." ECF No. 54 at 6.

> Instead, the Defendant's own conduct illustrates just the opposite. In addition to having multiple opportunities to raise her concerns, the Defendant also filed the Motion 37 days after the Court granted the TRO and 27 days after the Court granted the preliminary injunction, further illustrating the circumstances do not present an emergency. Moreover, as the Trustee correctly pointed out, the Court will hold a trial in 8 days and that will provide a means to address the Defendant's concerns. ECF No. 56 at 3.

*Order Denying Emergency Motion to Strike, Vacate, Stay, or Limit Relief Based on Defective Proofs of Service, Inaccurate Filing Address Filings, Mail*

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

*Interference and Lack of Meaningful Notice*, June 23, 2026, ECF No. 157. *See also Findings & Conclusions*, Adv. ECF No. 83, p. 7, ¶ 7.

The issues raised by Debtor as to service of process are law of the case, and the Court should not countenance another of Debtor's requests to undo the Villa Orders.

(b)    <u>Issues Raised as to the Postpetition Finance Order Have Been Decided</u>.

On May 26, 2026, Debtor filed an *Emergency Motion for (1) Temporary Restraining Order; (2) Temporary Restraining and Protective Relief; (3) Preservation of Disputed Non-Estate Property, Rescue Animals and Evidence; (4) Accounting and Disclosure Relief; (5) Order Shortening Time & (6) Request to Terminate Financial Orders*, seeking identical relief regarding the Postpetition Finance Order as is sought in the instant Motion. [ECF No. 171]  In its Order denying this emergency motion, the Court recognized that Debtor was seeking reconsideration of the Postpetition Finance Order and found that Debtor failed to demonstrate adequate grounds under Federal Rule of Civil Procedure 60(b) and that the actions of Trustee fall within Trustee's authorized business judgment. [ECF No. 175]

The complaints and requests for relief in the Motion as to the Postpetition Finance Order suffer the same fatal flaw.  The Court granted Trustee's Postpetition Finance Motion (ECF Nos. 110; 113; 125; and 176) and also denied reconsideration thereof (ECF No. 175).  These Orders are law of the case and nothing offered by Debtor changes the Court's previous analysis.

## C.    <u>Debtor Has Completely Failed to Demonstrate Cause to Remove Trustee.</u>

Section 324(a) of the Bankruptcy Code provides that the Court, after notice and a hearing, may remove a trustee for cause.  11 U.S.C. Section 324(a). The Bankruptcy Code does not define "cause" and "it is left for the courts to determine on a case by case basis." *In re AFI Holding, Inc.*, 530 F.3d 832, 845 (9th Cir.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

2008).  "Cause" under Section 324(a) requires evidence of trustee incompetence, violation of the trustee's fiduciary duties, misconduct or failure to perform the trustee's duties, or lack of disinterestedness or holding an interest adverse to the estate." *In re Baroni*, 643 B.R. 253, 283-84 (Bankr. C.D. Cal. 2022) (*citing In re AFI Holdings*, 530 F.3d at 845).   The "party seeking removal" bears the burden of proof and meets this burden by providing evidence of "specific facts" warranting removal. *Id.*

      1.    *Warrant Is Not Reviewable by the Bankruptcy Court*.

It was the State Court that ordered the Warrant.  The Bankruptcy Court approved Trustee's cooperation with SDHS in its exercise of the Warrant and conducting the Seizure.

In the Motion, Debtor argues that this Court approved the Seizure Stipulation on a record that was "incomplete or materially misleading." *Motion*, ¶ 85.  Debtor disputes the facts that were presumably found by the State Court when it ordered the Warrant, arguing that "the prior animal-control review did not support neglect." *Id*. at ¶¶ 5; 30-338; 85.

Federal district and bankruptcy courts have limited jurisdiction and may not act as appellate tribunals to review or overturn state-court judgments.  *In re Albert-Sheridan*, 676 B.R. 214, 220 (Bankr. C.D. Cal. 2025) (*citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  The *Rooker-Feldman* doctrine bars a federal plaintiff from bringing a "de facto appeal" of a state-court judgment, meaning the claim would effectively "reverse or modify" the state judgment.  *Id. citing Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003).

The Seizure was effectuated pursuant to the Warrant issued by the State Court, on the request of SDHS, not Trustee.  A plain reading of the Warrant shows that the State Court intended that "all animals" be seized.  After Trustee was presented with the Warrant, she was duty-bound to comply.  Similarly, the *Rooker-Feldman* doctrine prohibits this Court from granting Debtor' request to

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

revisit the facts on which the State Court based its decision to order the Warrant because doing so would effectively "reverse or modify" the State Court's order.

### 2. *SDHS Is Not a Tenant on the Property*.

Debtor repeatedly avers in the Motion that SDHS was a tenant on the Property, "[T]rustee cannot simultaneously allow another tenant or third-party user to occupy, use, or benefit from the property without Court approval and transparent estate-benefit findings." *Motion* ¶ 82; *see also id.* ¶¶ 7; 27-29; 54. This is a gross misstatement of the facts. Trustee permitted SDHS to access the Property to care for the Animals that were subject to the Warrant and Seizure but deemed too ill or fragile to be immediately moved from the Property. The SDHS Operations continued on the Property only until July 15, 2026, when safe transport for those of the Animals that remained on the Property was completed. Neither SDHS nor Trustee has ever asserted that SDHS was a tenant on the Property, and Debtor has not produced any evidence to contradict these facts.

### 3. *Trustee's Actions Were an Appropriate Exercise of Her Business Judgment*.

Disagreements with a trustee's business decisions are not grounds to remove a trustee under Section 324(a). *In re Baroni*, 643 B.R.at 291, *citing In re Consol. Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) ("cause to remove a trustee cannot be found in actions that fall within the proper scope of the trustee's discretion and which do not represent some type of misconduct. If the trustee's actions are appropriate when measured by the proper standard, there is no cause to remove the trustee"); *see also In re Carvalho*, 578 B.R. 1, 12 (Bankr. D.D.C. 2017) ("no removal is warranted if [the trustee's] exercise of business judgment was discretionary and reasonable under the circumstances").

When it approved the Seizure Stipulation, the Court necessarily approved of Trustee's business judgment in her decision to cooperate with SDHS by stipulating to relief from the automatic stay so the Seizure could be effectuated.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

Similarly, Trustee's decision to allow SDHS to access the Property to care for the Animals that were seized but too ill or fragile to be moved right away was also an appropriate exercise of her business judgment. *See FLG Fee Application Order*, ECF No. 192 ( "It is clear to the Court that the Trustee reasonably cooperated with SDHS when it served the warrant and to coordinate SDHS's next steps.  And so long as animals remain on the estate's real property, SDHS's continued presence on the property is logical.")

Decisions related to when, how and to whom to sell the Property, the conditions of access to the Property, and decisions related to use of Estate funds fall completely within the Trustee's discretion and exercise of her business judgment, with the appropriate oversight and approval of the Court.  It was an entirely appropriate exercise of Trustee's business judgment when she determined that the interests of the Animals and the Estate were best served by allowing SDHS, a reliable, licensed and self-insured party, to care for the fragile Animals on site, rather than removing the Animals before they were physically well.  *See id.*, ECF No. 192 ( "The Court could not disagree more with [the Debtor's] implication that FLG's fees with respect to the animals' turnover to SDHS did not benefit the estate on the record before the Court.")

It is clear that the Villa Principals (who have no legal basis for acting on behalf of Debtor) are critical of Trustee's decision to cooperate with SDHS and her decision to move forward with a market sale of the Property, rather than let the value of the Property dissipate while waiting for non-existent funding that will never arrive from the Villa Principals and/or entities they control.

Such disagreement is not evidence of incompetence, of violation of Trustee's fiduciary duties, of misconduct, or lack of disinterestedness.  *See*, *e.g.*, *In re Baroni*, 643 B.R. at 291 ("[i]t is evident that the Debtor and [her counsel] disagree with the Trustee's business management, but they do not cite any cases under the Bankruptcy Code in which a court removed a trustee based on a court

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

second guessing his business decisions.") Instead, such disagreement reflects the Villa Principals' long-running refusal to recognize that, after entry of the Appointment Order, they are no longer in control of Debtor, and that Trustee's discretion and business judgment determine what is in the best interests of the Estate. *Appointment Order*, ECF No. 84, p. 2.

## IV.    CONCLUSION

Debtor has completely failed to demonstrate cause to remove Trustee. Debtor's attempt to remove Trustee merely because the Villa Principals do not agree with Trustee's business judgment is the latest in a series of meritless entreaties to the Court aimed at preventing Trustee from selling the Property to pay creditors of the Estate. Moreover, Debtor and the Villa Principals have already sought and been denied reconsideration of many of the Villa Orders based on the same arguments raised in the Motion. For the reasons explained above, the Motion must be denied in its entirety.

Trustee also requests such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  August 5, 2026                FINANCIAL LAW GROUP


By:   /s/ Hilda M. Montes de Oca
      Hilda M. Montes de Oca, Esq.
      Attorneys for Leslie T. Gladstone,
      Trustee

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037