**Michael R. Totaro 102229**
**Totaro & Shanahan, LLP**
**P.O. Box 789**
**Pacific Palisades, CA 90272 (v)**
**(310) 804-2157 (v)**
**Ocbkatty@aol.com**


**Attorneys for Debtor**


## UNITED STATES BANKRUPTCY COURT

## SOTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION


| | |
|---|---|
| **In re** | **CASE NO. 3:22-bk-02483-CL11** |
| | **Chapter 11** |
| **Villa Chardonnay Horses with Wings, Inc.** | **REPLY TO TRUSTEE'S OBJECTIONS  TO FINAL FEE APPLICATION BY TOTARO  & SHANAHAN, LLP, MICHAEL R. TOTARO AND MAUREEN J. SHANAHAN FOR ATTORNEYS FEES AND EXPENSES; DECLARATION OF MICHAEL R. TOTARO** |
| **Debtor.** | |
| | **Date:  August  11, 2026** |
| | **Time: 1:30 p.m.** |
| | **Ctrm:  2** |
| | **Hin, J. Barrett Marum** |

TO THE HONORABLE THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:

Totaro & Shanahan, LLP ("Applicant"), former general insolvency counsel to the Debtor, respectfully submits this Reply to the Trustee's Opposition to the First and Final

Application for Award of Compensation [ECF No. 250] (the "Opposition"), and states as follows.

## I. INTRODUCTION AND SUMMARY

The Opposition is, by the Trustee's own characterization, a "partial" opposition. It is useful at the outset to identify what is genuinely in dispute and what is not.

Of the $45,955.00 requested, the Trustee raises a categorical legal objection to exactly $12,220.00, that is the 18.80 hours billed on and after January 29, 2026, the date of her appointment. The remaining $33,735.00 (51.90 hours) is challenged only on discretionary grounds: that the entries are vague, that some work should have been done pre-petition, and that the record of Applicant's compensation across three related cases is unclear.

Applicant does not ask this Court to disregard *Lamie v. United States Trustee*, 540 U.S. 526 (2004). Applicant has re-examined every post-appointment entry and, in the exercise of billing judgment, hereby **withdraws $7,540.00** of the requested compensation as all time that can fairly be characterized as continued representation of the Debtor rather than assistance to the Trustee. Applicant respectfully asks the Court to allow the balance.

The revised request is therefore **$38,415.00** (59.10 hours), representing $33,735.00 in pre-appointment fees and $4,680.00 in post-appointment services rendered at the Trustee's request and for the Trustee's direct benefit. Most significantly this includes the five-hour on-site inspection of a 45-acre property housing hundreds of live animals, which Applicant attended *with* the Trustee, at her request, to enable her to take control of the Estate's principal asset.

Applicant further notes, and addresses below, three points that the Opposition raises as insinuation rather than fact: (a) that Applicant may have received undisclosed compensation; (b) that Applicant sought funding from the Debtor's principal's father "to fund Totaro's own finances"; and (c) that Applicant performed no pre-filing due diligence. Each is answered directly in the accompanying declaration. The short answer to all three

is that Applicant performed extensive pre-filing work in the prior chapter 11 case, billed $13,020.00 for it, and then wrote off every dollar of it by credit memo on October 13, 2025. This fact is disclosed on the face of Exhibit "1" to the Application and in paragraph 8 of the supporting declaration.

## II. APPLICANT'S VOLUNTARY REDUCTION UNDER LAMIE

### A. Applicant Withdraws $7,540.00 of Post-Appointment Time.

The Trustee was appointed January 29, 2026. *Lamie* holds that § 330(a)(1) does not authorize compensation from estate funds to a debtor's attorney who is not employed under § 327, and *In re Sunergy Cal. LLC*, 2023 Bankr. LEXIS 1634 (B.A.P. 9th Cir. June 26, 2023), applies that holding where a chapter 11 trustee is appointed. Applicant accepts that framework and withdraws the following entries:

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 01-29-26 | MRT | Email string with person identified as father | 0.90 | $585.00 |
| 02-03-26 | MRT | Further emails from person alleged to be father | 0.80 | $520.00 |
| 02-05-26 | MRT | RV Trustee ER Motion re stip | 0.40 | $260.00 |
| 02-19-26 | MJS | Prep Motion to Value | 4.00 | $2,600.00 |
| 02-21-26 | MJS | Prep exhibits to Motion to Value; PC appraiser | 3.50 | $2,275.00 |
| 03-06-26 | MRT | RV POC 12 SBA | 0.30 | $195.00 |
| 03-24-26 | MRT | RV and prep February MOR | 0.80 | $520.00 |

| 03-24-26 | MRT | Reviewed February MOR | 0.90 | $585.00 |
|---|---|---|---|---|
| | | **Withdrawn** | **11.60** | **$7,540.00** |

This withdrawal includes the entire 7.50 hours and $4,875.00 associated with the Motion to Value real property and avoid junior liens. Applicant continues to believe that motion was sound and was abandoned only because the Trustee elected a different course. But Applicant recognizes that the work postdates the appointment, that the Trustee did not request it, and that no benefit was in fact realized. Rather than burden the Court with a contested fight over it, Applicant withdraws the request.

**B. The Remaining $4,680.00 Was Rendered at the Trustee's Request and Benefited the Estate.**

The balance of the post-appointment time is different in kind. It was not representation of the Debtor against the Trustee; it was assistance *to* the Trustee, largely at her express request:

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 01-31-26 | MRT | Review Trustee's need list; call with client re same | 0.80 | $520.00 |
| 02-02-26 | MRT | Review email from Debtor to Trustee | 0.10 | $65.00 |
| 02-02-26 | MRT | Review misc. documents from client, waivers, insurance policies, receipts (for Trustee) | 1.10 | $715.00 |

| 02-10-26 | MRT | Email from Trustee re removal of animals and sale; call to client re same | 0.20 | $130.00 |
|---|---|---|---|---|
| 02-10-26 | MRT | On-site inspection of Property with Trustee, and travel | 5.00 | $3,250.00 |
| | | **Requested Allowance** | **7.20** | **$4,680.00** |

These services were "necessary to the administration of" the case within the meaning of § 330(a)(3)(C) and constitute actual, necessary costs of preserving the estate under § 503(b)(1)(A). The Trustee inherited a 45-acre property in Julian, California, housing hundreds of elderly and sick animals, from a principal with whom she was — as the Opposition itself acknowledges — in "protracted litigation ... in two forums, merely to obtain possession of undisputed property of the Estate." Applicant was the only party positioned to accompany her onto the Property, to transmit the Debtor's insurance policies, waivers and receipts, and to respond to her document requests. Had Applicant declined to do so, the Trustee's task would have been materially harder and more expensive to the Estate.

To the extent the Court concludes that § 330(a)(1) does not reach these services under *Lamie*, Applicant respectfully requests in the alternative that they be allowed as an administrative expense under 11 U.S.C. § 503(b)(1)(A) as actual, necessary costs of preserving the estate.

### C. Applicant Could Not Simply Stop Working on January 29, 2026.

The Opposition suggests that Applicant should have ceased all activity upon the Trustee's appointment. That is not what the Rules of Professional Conduct permit. Applicant remained counsel of record for the Debtor until the order granting withdrawal was entered on June 15, 2026 [ECF No. 186]. California Rule of Professional Conduct 1.16(d) prohibits withdrawal until counsel has taken reasonable steps to avoid reasonably

foreseeable prejudice to the client, and this Court's own leave was required. Applicant moved to be relieved on March 16, 2026 [ECF Nos. 143, 145] — approximately six weeks after the appointment — and wrote off the entire 3.00 hours and $1,950.00 associated with preparing for and attending the April 16, 2026 hearing on that motion. Applicant seeks nothing for the process of getting out.

### III. THE PRE-APPOINTMENT FEES OF $33,735.00 SHOULD BE ALLOWED IN FULL

**A. The Employment Application Was Filed November 9, 2025 and Approved; the Delay in Lodging the Order Was Ministerial.**

The Trustee correctly notes that the order approving employment was not entered until July 24, 2026 [ECF No. 245]. But the application was filed November 9, 2025 [ECF No. 22], was served, and drew no objection from any party, including the Office of the United States Trustee. The failure was in lodging the proposed order, a ministerial oversight that Applicant corrected as soon as the Trustee's counsel brought it to Applicant's attention. The Ninth Circuit permits retroactive approval of employment in precisely these circumstances. *See In re Atkins*, 69 F.3d 970, 973-74 (9th Cir. 1995) (retroactive approval available where the delay is the product of excusable neglect and the professional's services benefited the estate); *In re THC Fin. Corp.*, 837 F.2d 389, 392 (9th Cir. 1988). No party was prejudiced by the timing of the order's entry, and no party contends otherwise.

**B. Benefit Is Measured at the Time the Services Were Rendered, Not in Hindsight.**

Section 330(a)(3)(C) asks whether services were "necessary to the administration of, or beneficial *at the time at which the service was rendered*." The inquiry is prospective. *See In re Mednet*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000). The Trustee's argument repeatedly slides from "this did not ultimately produce a recovery" to "this was not

reasonably likely to benefit the Estate." Those are different questions, and only the second one matters.

Measured correctly, the pre-appointment work was plainly beneficial. Applicant reviewed title reports for six separate assessor's parcel numbers; completed the compliance requirements whose absence had caused the dismissal of the first chapter 11; prepared and filed the Debtor's monthly operating reports; reviewed and analyzed twelve proofs of claim; negotiated toward a cash-collateral stipulation with the holder of the first deed of trust; and addressed insurance coverage for the Debtor's volunteers on a property housing hundreds of animals. Every one of these tasks was necessary to keep the case alive and the Estate's principal asset intact during the period before a trustee existed.

### C. The Time Entries Are Adequate, and the Alleged Duplication Is Explained.

The Opposition asserts that the entries are "cryptic" and cites *In re Coastal Equities, Inc.*, 39 B.R. 304, 311 (Bankr. S.D. Cal. 1984), for the proposition that entries such as "strategy conference" and "review document re bankruptcy" are inadequate. Notably, none of the examples the Trustee quotes appears anywhere in Exhibit "1." Applicant's actual entries identify the specific document, the specific claim number, the specific counterparty, or the specific hearing: "RV POC 3 Jeff Cap," "RV POC 9 San Diego Gas & Ele," "Email from King to Tandy re insurance," "Travel to SD and attend 341." These are not conclusory. They permit meaningful review.

The single instance of claimed duplication — two 1.50-hour entries for "RV Loan docs" on December 9, 2025 and January 17, 2026 — is explained in the accompanying declaration. The two reviews covered different documents, six months apart, and the second was occasioned by loan documentation that surfaced only after creditors began filing proofs of claim in late December 2025 (including POC 7, expressly relating to the first loan, reviewed December 24, 2025). As set forth in the declaration, Applicant

consistently learned more about this Debtor's affairs from its creditors than from its own management.

Applicant's frank acknowledgment in the Application that certain categories "overlap" is offered against it as an admission. It was intended as candor. Overlap between the OUST's B100, B110 and B150 categories is inherent in their definitions; disclosing it is what a fee applicant is supposed to do. It is not evidence of double-billing, and the Trustee identifies no entry that appears twice.

### D. Applicant Exercised Substantial Billing Judgment.

The great majority of Applicant's entries are recorded at 0.10 or 0.20 of an hour. Applicant did not bill in quarter-hour or half-hour minimums. Beyond the 3.00 hours and $1,950.00 written off for the withdrawal hearing, Applicant estimates that it declined to bill approximately $5,000.00 in additional time  which was principally the numerous telephone calls and emails generated by the Debtor's principal — precisely in order to keep the Estate's cost down. Over roughly six months of a chapter 11 case involving six parcels, twelve claims, a contested cash-collateral posture, hundreds of live animals, and an uncooperative principal, 51.90 pre-appointment hours is a modest figure.

### IV. THE COMPENSATION RECORD IS FULLY ACCOUNTED FOR

The Opposition devotes several pages to the suggestion that Applicant may have received compensation that is "less than clear" across three cases, and that the absence of time entries before October 15, 2025, means Applicant either performed no pre-filing due diligence or was paid off the books. Neither is true, and the answer is on the face of the Application.

Applicant performed its pre-filing due diligence in the first chapter 11 case, 25-03692-JBM11, filed September 1, 2025. That work was billed on Invoice No. 129 in the amount of $13,020.00. Applicant never collected a dollar of it. On October 13, 2025, one day before the present petition, Applicant issued a credit memo in the full amount of $13,020.00, writing the entire balance off. That credit memo appears on the Client

FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF TOTARO & SHANAHAN;
DECLARATION OF MICHAEL R. TOTARO IN SUPPORT

Statement of Account included in Exhibit "1" to the Application, and was expressly disclosed in paragraph 8 of the declaration filed with the Application. The reason there are no time entries before October 15, 2025 is not that no work was done; it is that Applicant absorbed the cost of that work rather than pass it to this Estate.

The specific retainer and payment figures across the first chapter 11, the Kerber chapter 7, and the present case are set out with dates and amounts in the accompanying declaration. Applicant welcomes the inquiry. The record shows no undisclosed payment from the Debtor and no payment applied to this case that has not been credited.

## V.  **THERE WAS NO CONFLICT OF INTEREST**

The Opposition states that Applicant was "attempting to obtain a substantial post-petition loan or funding from Kerber's father to fund Totaro's own finances," and suggests this created an undisclosed conflict.

That characterization is mistaken, and the billing records the Trustee relies upon refute it. The entries in question read "Various emails re family contribution" and "Further emails re family contribution." The contemplated funding was a contribution to fund the case and a proposed acquisition of the Property, i.e. a plan-funding source, discussed openly, and disclosed to the Trustee by Applicant itself. It was not a personal loan to Applicant. No funds were ever received, from the father or from anyone else, and Applicant has not been paid one dollar in this case.

A third-party source of funding for administrative expenses is a commonplace feature of chapter 11 practice and does not create an interest adverse to the estate. Had the funding materialized and been directed to Applicant's fees, it would have required disclosure under Fed. R. Bankr. P. 2016(b) at that time. It did not materialize, and there was nothing to disclose.

Applicant would add, as set forth in the declaration, that it was itself repeatedly misled by the Debtor's principal about the status of the proposed purchase, and cannot to this day confirm that the individual identified as the father was in fact the person who

appeared on the one video conference in which he purportedly participated. Applicant's difficulty obtaining accurate information from its own client is the reason it moved to withdraw.

## VI.  <u>CONCLUSION</u>

Applicant respectfully requests that the Court enter an order (1) allowing Applicant compensation in the reduced amount of **$38,415.00** for 59.10 hours of services; (2) approving Applicant's voluntary withdrawal of $7,540.00 in post-appointment fees; and (3) granting such other relief as is just and proper.

Dated: August 4, 2026                    Totaro & Shanahan, LLP

By: /s/ Michael R. Totaro

Michael R. Totaro

Former Attorneys for Debtor

## SUPPLEMENTAL DECLARATION OF MICHAEL R. TOTARO

I, Michael R. Totaro, declare as follows:

1.      I am an attorney licensed to practice in the State of California and before this Court. I am a partner in Totaro & Shanahan, LLP, former general insolvency counsel to the Debtor. I have personal knowledge of the facts stated below and, if called as a witness, could and would competently testify to them.

2.      I submit this declaration in reply to the Trustee's Opposition [ECF No. 250].

### Voluntary Reduction

3.      I have reviewed each time entry recorded on or after January 29, 2026, the date of the Trustee's appointment. Those entries total 18.80 hours and $12,220.00. In the exercise of billing judgment, and in recognition of Lamie v. United States Trustee, Applicant withdraws 11.60 hours and $7,540.00 of that time, including the entire 7.50 hours and $4,875.00 associated with the Motion to Value. The revised request is $38,415.00 for 59.10 hours.

4.      The 7.20 hours and $4,680.00 that Applicant continues to request for the post-appointment period were incurred in assisting the Trustee, not in opposing her. On February 10, 2026, at the Trustee's request, I traveled to Julian, California and accompanied the Trustee on an on-site inspection of the 45-acre Property. That inspection consumed 5.00 hours including travel. I also reviewed and responded to the Trustee's document need list, transmitted the Debtor's insurance policies, waivers and receipts to her, and responded to her inquiries concerning the removal of the animals and the sale of the Property. Each of these tasks assisted the Trustee in taking control of the Estate's principal asset.

### I Could Not Abandon the Client

5.      I remained counsel of record for the Debtor after the Trustee's appointment. I could not simply cease work. I moved to be relieved as counsel on March 16, 2026, this Court heard that motion on April 16, 2026, and the order granting it was entered June 15,

2026. Even in a chapter 7 case I would not have been free to abandon the client without leave. I wrote off in full the 3.00 hours and $1,950.00 associated with preparing for and attending the withdrawal hearing, and seek nothing for it. I note that the Application at page 8 contains a typographical error stating the write-off as "(650.00)"; the correct figure is $1,950.00 (3.00 hours at $650.00).

### The Nature of the Representation

6. The Debtor is an entity, and I took my instructions from its manager and principal, Monika Kerber Perez. Every fee reflected in the Application was incurred at the request of the Debtor, through its manager. I did the work I was asked to do.

7. Throughout the representation I learned more about the Debtor's affairs from its creditors than I did from its manager. Information provided to me at the outset repeatedly proved not to be as represented.

8. Had I known at the time of engagement that the Debtor's principal was associated with a tax protester group, I would not have accepted the representation. When tax filings were presented to me I questioned why some appeared to bear a filing stamp and others did not. I also observed that the amounts reported for donations were consistently in a narrow band of approximately 1.7 to 1.9; I did not appreciate the significance of that pattern until after I had been substituted out of the case.

9. I was repeatedly misled by the manager as to the status of a proposed purchase of the Property. Although I participated in a video conference at which an individual was identified as her father, that individual was not on camera, and in retrospect I cannot state with certainty that he was the person on the call.

10. To be clear as to the Trustee's suggestion at page 11 of the Opposition: at no time did I seek a loan or funding from any member of the Debtor's principal's family for my own personal or firm finances. The "family contribution" reflected in my time entries refers to a contemplated contribution to fund this case and a possible acquisition of the Property. I disclosed the existence of those discussions to the Trustee. No funds were ever

received by me or by my firm from any family member, and I have received no compensation whatsoever in this case.

### Pre-Filing Work and the Compensation Record

11.     The Trustee observes that no time is billed before October 15, 2025 and infers that either no pre-filing due diligence was performed or that I was compensated off the record. Neither is correct. The pre-filing due diligence for this Debtor was performed in the first chapter 11 case, Case No. 25-03692-JBM11, filed September 1, 2025 and dismissed October 1, 2025. That work was billed on Invoice No. 129 in the amount of $13,020.00.

12.     I never collected any portion of Invoice No. 129. On October 13, 2025, I issued a credit memo in the full amount of $13,020.00, writing off the entire balance. That credit memo is reflected on the Client Statement of Account within Exhibit "1" to the Application, and I disclosed it in paragraph 8 of my declaration filed with the Application. I did not carry that work forward into this case, and no part of it is included in the $45,955.00 originally requested or the $38,415.00 now requested.

13.     With respect to the retainer in the first chapter 11 case: I received $7,500 from the Debtor's principal.. The discrepancy between the $5,000.00 figure stated in the First Employment Application and the $7,500.00 figure appearing in the retainer agreement and the Statement of Financial Affairs is explained as follows:  No fee application was filed in that case and no portion of that sum was ever approved or applied to fee.

14.     With respect to the Kerber chapter 7 case, Case No. 25-04318-JBM7: I received a flat fee of $838.00 for services rendered to Ms. Kerber individually. That fee was disclosed in the Disclosure of Compensation filed with that petition. It was paid by Ms. Kerber and was not paid by the Debtor. No portion of it relates to services rendered in this case, and no portion of it is sought here.

FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF TOTARO & SHANAHAN; DECLARATION OF MICHAEL R. TOTARO IN SUPPORT

15.     With respect to this case: I received $2,000.00 from the Debtor to cover the filing fee and miscellaneous costs. The filing fee was $1,738.00. The remaining $262.00  I received no retainer for fees in this case and have been paid nothing on account of fees.

**Response to the Documentation Objections**

16.     The Trustee identifies two entries reading "RV Loan docs," one on December 9, 2025 (1.50 hours) and one on January 17, 2026 (1.50 hours), and suggests they are duplicative. They are not. The December 9, 2025 review concerned [the loan documents originally produced by the Debtor for the parcels encumbered by the first deed of trust]. The January 17, 2026 review concerned [additional loan documentation that came to my attention only after creditors began filing proofs of claim in late December 2025, including the claim designated POC 7 relating to the first loan]. The two reviews were six weeks apart and covered different documents. As stated above, the reason I was reviewing loan documents in January that I had not seen in December is that this Debtor's own management did not produce them to me.

17.     The Application's disclosure that certain OUST categories overlap was intended as candor, not as an admission of duplicate billing. The categories B100, B110 and B150 overlap by their own definitions. I have not billed the same task twice.

18.     Substantially all of my time in this case was recorded in increments of 0.10 or 0.20 of an hour. I did not use quarter-hour or half-hour billing minimums. Separate and apart from the 3.00 hours written off for the withdrawal hearing, I estimate that I declined to record approximately $5,000.00 in additional time, principally arising from the very large number of telephone calls and emails initiated by the Debtor's manager, in order to keep the bill down.

19.     I undertook this representation in substantial part because of the nature of the Debtor's work in caring for elderly and sick rescue animals. I did the work I was asked to do, I was not paid for any of it, and I wrote off $13,020.00 of prior work in addition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 4, 2026, at Pacific Palisades, California.

/s/ Michael R. Totaro

Michael R. Totaro