Nissan Thomas, Esq. (SBN 250273)
Law Offices of Nissan Thomas
6230 Wilshire Blvd., Suite 2015
Los Angeles, CA 90048
Telephone: (424) 781-7653
Email: info@nissanthomaslaw.com
Attorney for Appellant Monika Kerber Perez

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

In re:
VILLA CHARDONNAY HORSES WITH WINGS, INC.,
Debtor


LESLIE T. GLADSTONE,
Chapter 11 Trustee,

CASE NO.: 25-04245-JBM11


DEBTOR'S REPLY IN SUPPORT OF MOTION TO REMOVE CHAPTER 11 TRUSTEE AND FOR RELATED RELIEF

Date: Aug 26, 2026
Time: 10:00 am
Dept:  Two (2)
Judge: Hon. J. Barrett Marum

DEBTOR'S REPLY IN SUPPORT OF MOTION TO REMOVE CHAPTER 11 TRUSTEE AND FOR RELATED RELIEF

I. INTRODUCTION

The Opposition attempts to characterize Debtor's Motion as disagreement with Trustee Leslie T. Gladstone's business judgment and an improper effort to revisit matters previously decided. That misses the issue presented under 11 U.S.C. § 324.

**DEBTOR'S REPLY IN SUPPORT OF MOTION**

The question is whether the complete record now available demonstrates cause to remove the Trustee or, at minimum, requires an evidentiary hearing concerning her continued fitness to administer this Estate.

Four matters require scrutiny: (1) whether prior rulings foreclose materially different evidence, allegedly omitted evidence, and subsequent fiduciary conduct; (2) whether the May 1 turnover occurred without meaningful due process and upon a materially incomplete veterinary record; (3) whether the Trustee exercised informed business judgment when substantial financing and other funds existed while Villa's requests for animal-care funding went unmet; and (4) whether subsequent SDHS fundraising, continued use of Estate property, and related conduct undermine the Trustee's claimed justification for dismantling Villa's charitable operation.

These issues concern fiduciary duty, candor, due process, preservation of Estate value, and disinterested administration—not merely disagreement with business judgment.

## II. PRIOR RULINGS DO NOT FORECLOSE THE PRESENT § 324 INQUIRY

The Opposition repeatedly argues that matters raised by Debtor were previously "ruled upon." Debtor does not seek to disregard prior orders or simply relitigate identical issues on an identical record. The present inquiry is different.

An earlier order establishes what the Court decided on the record then before it. It does not establish that every underlying factual representation was complete or accurate, adjudicate evidence not then presented, retroactively authorize earlier conduct, adjudicate later conduct, or permanently immunize a court-appointed fiduciary from review under § 324.

The present record includes evidence concerning veterinary examinations completed before the May 1 hearing; information allegedly possessed by Gladstone but not fairly presented; the circumstances impairing Kerber's and Flores's participation; subsequent evidence concerning

**DEBTOR'S REPLY IN SUPPORT OF MOTION**

financing and Estate funds; later SDHS fundraising and property use; mail interference; and other subsequent fiduciary conduct.

Those matters cannot have been finally adjudicated before the evidence existed or before the conduct occurred.

Nor does it matter that some underlying facts also appear in counterclaims. The same conduct may support a separate claim while independently demonstrating lack of fiduciary judgment, candor, disinterestedness, or fitness under § 324.

Bankruptcy Rule 9024 and Civil Rule 60 themselves recognize that qualifying circumstances—including newly discovered evidence, mistake, fraud, misrepresentation, or misconduct—may justify relief from an order. Debtor does not contend that such relief is automatic. The point is that **"already ruled upon"** is not a substitute for examining what evidence the Court actually had and whether the Trustee remains fit to serve now.

A court does not undermine its authority by considering materially different evidence or correcting material error. It protects the integrity of the judicial process.

III. THE MAY 1 PROCESS AND VETERINARY RECORD REQUIRE EVIDENTIARY REVIEW

The May 1 turnover presents intertwined questions of due process and fiduciary candor.

The Fifth Amendment requires meaningful due process before federal deprivation of property. California Constitution Article I, section 7 provides additional due-process protection. The relevant question is not merely whether papers were served or a hearing appeared on the docket, but whether the affected parties had a meaningful opportunity to be heard before extraordinary and effectively irreversible relief occurred.

**DEBTOR'S REPLY IN SUPPORT OF MOTION**

During the May 1 seizure, phones and electronic devices were taken, access to records and evidence was impaired, and communication with counsel was disrupted. Kerber's phone was reportedly returned only minutes before the approximately 3:00 p.m. emergency hearing.

At the same time, material veterinary evidence allegedly was not fairly presented.

The identified horses had been examined by Dr. Max Wilcox on April 29. The identified cats were examined and treated on April 30. Veterinary information concerning the cats was transmitted to Gladstone at approximately 11:22 p.m. on April 30, and Gladstone had additional direct access to veterinary information before the May 1 hearing.

Yet the emergency presentation indicated that veterinary results were still being awaited.

The distinction between **"the animals have not been examined"** and "the examinations occurred but final paperwork remains outstanding" was material when turnover of hundreds of animals was sought.

Debtor does not ask the Court to determine intent from briefing. Debtor asks the Court to hear testimony concerning what Gladstone knew, when she knew it, what veterinary information she possessed, and what was presented to the Court.

The state warrant does not eliminate that inquiry. This Court need not invalidate the warrant to examine its own Trustee's conduct, including what information Gladstone or Jeff Wiemann supplied, what contrary information they possessed, what pre-warrant access occurred, and whether material information was fairly disclosed when federal bankruptcy relief was requested.

IV. THE TRUSTEE'S OWN FINANCIAL RECORD UNDERMINES HER BUSINESS-JUDGMENT DEFENSE

Gladstone's own financial record raises perhaps the clearest question concerning informed business judgment.

**DEBTOR'S REPLY IN SUPPORT OF MOTION**

This is a Chapter 11 case. A Chapter 11 trustee must investigate the debtor's operations and the desirability of continuing the business, together with matters relevant to formulation of a plan. Gladstone represented when seeking post-petition financing that financing was necessary because animal care was in jeopardy and to maintain the Property until it could be sold or the business reorganized.

She thereafter testified that she obtained up to $400,000 in post-petition financing and had approximately $220,000 in additional funds received or expected from donations, estate distributions, or personal-property sales.

Thus, Gladstone herself identified approximately $620,000 in financing and other funds, apart from subsequent SDHS fundraising.

Meanwhile, Kerber repeatedly informed Gladstone that Villa continued providing daily animal care and required resources for feed, veterinarians, farriers, and ordinary sanctuary operations. That creates a straightforward fiduciary question:

Why were substantial preservation resources not meaningfully directed toward the very veterinary, farrier, feed, and operational needs later relied upon to justify dismantling Villa? The question is especially significant because Gladstone herself represented that financing was necessary for animal care while sale or reorganization remained possible.

The Court should require an accounting showing the amounts actually advanced under the $400,000 financing and expenditures for professional fees, Wiemann, security, litigation, sale efforts, property control, feed, veterinary services, farrier services, maintenance, and reorganization.

**DEBTOR'S REPLY IN SUPPORT OF MOTION**

The approximately $220,000 requires similar accounting. Villa was a beneficiary of the Martha C. Nemeth 1997 Trust, and the Trust administrator advised Kerber that she was working directly with Gladstone regarding a distribution.

The relevant issue is not whether every expenditure was technically authorized. It is whether the Trustee made an informed comparison between funding preservation and reorganization and funding liquidation, litigation, possession, and removal before choosing the latter.

V. SDHS FUNDRAISING AND CONTINUING PROPERTY USE FURTHER UNDERMINE THE "NO VIABLE ALTERNATIVE" NARRATIVE

Events following turnover make that question more significant.

SDHS publicly solicited substantial donations under the "Julian Rescue" narrative using the animals' medical needs, food, rehabilitation, transportation, and continuing care. Debtor's evidence includes a fundraising solicitation referring to a matching opportunity of up to $500,000.

Debtor does not presently contend that the full amount was received or matched, or that every SDHS donation automatically belongs to the Estate. Those issues require discovery and accounting.

The immediate fiduciary question is simpler:

If substantial public fundraising could be generated from these same animals immediately after turnover, what comparable effort did the Trustee undertake to preserve Villa's existing donor goodwill, fundraising capacity, grants, sponsorships, and charitable operation before concluding that dismantling was necessary?

The animals did not acquire charitable value only after SDHS obtained them.

**DEBTOR'S REPLY IN SUPPORT OF MOTION**

SDHS's continued use of Estate property also requires accounting. The Opposition acknowledges that animals remained at Villa because some were too ill or fragile to be immediately moved. SDHS consequently continued using the Property for animal care after turnover.

That creates another direct question: what economic consideration did the Estate receive for that continuing use?

Whether SDHS is characterized as a tenant, licensee, custodian, contractor, or invitee is secondary. The Estate should account for the real property, barns, utilities, water, equipment, storage, and other resources used by a third party and determine whether appropriate value was received.

The fact that animals allegedly remained because they were too fragile or lame to move further reinforces the funding issue. If those animals required continuing veterinary, nutritional, farrier, or rehabilitative care after turnover, the Trustee should explain why available Estate resources were not first meaningfully directed toward those same needs while Villa remained operational. Debtor preserves any properly supported property, taking, inverse-condemnation, contractual, reimbursement, or related claims. Those claims need not be finally adjudicated to determine whether the Trustee's administration preserved Estate value.

## VI. THE REMAINING CONDUCT SUPPORTS, RATHER THAN REPLACES, THE CORE § 324 ISSUES

Three additional matters reinforce the need for fiduciary review.

First, Gladstone initiated forwarding involving P.O. Box 1000 despite knowing Kerber and Flores personally received mail there. The Court should require disclosure of personal, IRS,

**DEBTOR'S REPLY IN SUPPORT OF MOTION**

legal, donor, funding, or financial correspondence received, opened, scanned, retained, or redirected. This bears directly upon privacy, notice, and fiduciary judgment.

Second, the chronology reflects lock changes, property-control activity, and sale planning involving Wiemann and Paul Buie before the later possession orders now relied upon by the Trustee. Each challenged act must be measured against the authority existing **when it occurred**; later orders do not automatically provide retroactive authorization.

Third, the Opposition acknowledges Gladstone's prior professional relationship with Buie and their mutual involvement in the Turnaround Management Association. Debtor does not contend that professional association alone establishes a conflict. The issue is whether all material connections were disclosed and whether Buie performed material sale-related or Estate services before appropriate disclosure or authorization.

These matters should be evaluated cumulatively with the principal due-process, candor, funding, and business-judgment issues.

## VII. PRIOR ORDERS SHOULD NOT BE CONSTRUED AS BLANKET IMMUNITY FOR GLADSTONE OR WIEMANN

Debtor does not presently ask the Court to adjudicate final personal liability against Gladstone or Wiemann.

Debtor asks the Court to clarify that no May 1 stipulation or related order constitutes blanket prospective immunity, release, indemnity, waiver, or preapproval for conduct outside lawful fiduciary authority.

Authorization for specified conduct should not immunize acts occurring before authorization, outside an order's scope, involving non-Estate property, violating constitutional rights,

**DEBTOR'S REPLY IN SUPPORT OF MOTION**

destroying evidence, interfering with personal mail, or otherwise exceeding protected fiduciary activity.

The parties' claims and defenses should be preserved rather than prematurely resolved through an expansive interpretation of an emergency order.

VIII. CONCLUSION

The Opposition's two principal defenses—"business judgment" and "already ruled upon"—do not answer the present § 324 inquiry.

Prior rulings do not transform an allegedly incomplete factual record into an indisputable one, adjudicate subsequent conduct, or permanently immunize a Trustee from fiduciary review.

And business judgment does not answer why Gladstone obtained substantial financing expressly while reorganization remained contemplated, knew that Villa needed resources for animal care, yet did not meaningfully fund those needs before alleged deficiencies in those same areas became part of the justification for dismantling the sanctuary.

The subsequent record makes that question more compelling: substantial fundraising occurred around the same animals, while SDHS continued using Estate property because animals allegedly required continuing on-site care.

These circumstances warrant testimony and accounting.

**WHEREFORE, Debtor respectfully requests that the Court:**

1.  Remove Leslie T. Gladstone as Chapter 11 Trustee for cause under 11 U.S.C. § 324(a), or alternatively restrict her authority pending an evidentiary hearing;

2.  Conduct an evidentiary hearing permitting testimony and cross-examination concerning the May 1 veterinary record and due process, financing and other Estate funds,

**DEBTOR'S REPLY IN SUPPORT OF MOTION**

reorganization analysis, SDHS property use and fundraising, mail, professional relationships, and related fiduciary issues;

3. Require a complete accounting of the $400,000 postpetition financing and approximately $220,000 in other funds received or expected, including the Martha C. Nemeth Trust distribution;

4. Permit appropriate accounting and discovery concerning fundraising associated with the Villa Chardonnay/"Julian Rescue" animals and SDHS's continuing use of Estate property;

5. Require preservation of material veterinary, financial, fundraising, electronic, mail, property-access, animal-disposition, and communications evidence;

6. Clarify that no prior emergency order constitutes blanket prospective immunity, release, indemnity, or waiver protecting Gladstone, Wiemann, or others from liability for conduct ultimately established to fall outside lawful authority;

7. Preserve Debtor's constitutional, fiduciary, property, privacy, contractual, taking/inverse-condemnation, accounting, surcharge, disgorgement, and other properly asserted claims; and

8. Grant such other and further relief as the Court deems just and proper.

Dated Aug 12, 2026

Respectfully submitted,

By: _____
Nissan Thomas, Esq.
Attorney for Debtor
VILLA CHARDONNAY HORSES WITH WINGS, INC.

**DEBTOR'S REPLY IN SUPPORT OF MOTION**