TENTATIVE RULING

ISSUED BY JUDGE J. BARRETT MARUM

| | |
|---|---|
| Case Name: | Villa Chardonnay Horses With Wings, Inc. |
| Case Number: | 25-04245-JBM11 |
| Hearing: | 8/26/2026 10:00 AM |
| Motion: | NOTICE OF MOTION AND MOTION TO REMOVE CHAPTER 11 TRUSTEE; TO STAY, VACATE, OR MODIFY TURNOVER ORDERS; FOR PRESERVATION ORDER; AND FOR EMERGENCY EVIDENTIARY HEARING ON BEHALF OF VILLA CHARDONNAY HORSES WITH WINGS, INC. |

The Court has reviewed the Motion to Remove Chapter 11 Trustee (ECF No. 207, the "Motion"), the Trustee's Opposition to Debtor's Motion to Remove Trustee; to Stay, Vacate, or Modify Turnover Orders; for Preservation Order; and for Emergency Evidentiary Hearing (ECF No. 255), River Falls, LLC's Joinder to Trustee's Opposition and Further Opposition to Debtor's Motion to Remove Trustee (ECF No. 257), and the Debtor's Reply to Opposition to Remove Trustee (ECF No. 268). The Debtor lacks standing to bring the Motion. The Motion is also substantively without merit and so the Court intends to **DENY** it as discussed more fully below.

The Motion largely seeks to relitigate issues decided either during the emergency hearing on the Motion for Approval of Stipulation Regarding Immediate Turnover of Animals to San Diego Humane Society or the trial in this case, yet it is not framed as a reconsideration motion of either order under federal Rule of Civil Procedure Rule ("Rule") 60(b). Despite the framing, the Debtor also does not meet the standard under that Rule. To be entitled to relief under Rule 60(b), a litigant must show mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; the judgment is void; the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or any other reason that justifies relief. The Debtor does not present any of these reasons.

Accordingly, the Court will not take up the following requests the Debtor presented: issues related to mail service, the record supporting the turnover order, payoff (which the Debtor is not entitled to and reflects a fundamental misunderstanding of the bankruptcy process), and possession

of the premises. The Court addressed all those matters during the trial on a complete record, albeit after the Debtor filed the present Motion, and ultimately ruled in the Trustee's favor.

With respect to the record supporting the turnover order specifically, the Court entered that order after examining a Search Warrant issued by the San Diego Superior Court based on probable cause. Although the Debtor suggests the Court entered the turnover order following a hearing based "on an incomplete or materially misleading record, or without animal-by-animal ownership review," the Debtor does not present newly discovered evidence *that could not have been discovered in time to move for a new trial*—all the evidence the Debtor submits existed at the time of the hearing and the trial and the Debtor failed to even appear at the hearing prior to the Court entering the turnover order. ECF No. 207 at 20. The Debtor also failed to present that evidence at the time of trial. This does not present grounds for relief.

On July 13, 2026, the Court entered the Order on Findings of Fact and Conclusions of Law After Trial addressing all the issues listed in the preceding paragraph. Case. No. 26-90029-JBM at ECF No. 83. The Debtor had an opportunity to seek reconsideration of that order and/or to appeal (and indeed, the Debtor did appeal (*see id.* at ECF No. 95), so the issues raised in this Motion are now before the appellate court. And while the Debtor argues that the Court should address these issues again in the context of potential removal of the Trustee, the Court sees no reason to revisit its prior rulings on these issues, which were in the Trustee's favor and which therefore do not serve as a basis to remove her under 11 U.S.C. § ("Section") 324(a). Nothing related to the mail service, the record before the turnover order, payoff, or possession of the premises pointed to trustee incompetence, a violation of fiduciary duties, misconduct, or a lack of disinterestedness in the case.

**Legal Standard**

"Removal of a trustee under § 324 is left to the sound discretion of the bankruptcy court." *In re AFI Holding, Inc.*, 530 F.3d 832, 844 (9th Cir. 2008). Bankruptcy courts may remove trustees after notice and a hearing for "cause." 11 U.S.C. § 324(a). "It is well established that 'cause' may include trustee incompetence, violation of the trustee's fiduciary duties, misconduct or failure to perform the trustee's duties, or lack of disinterestedness or holding an interest adverse to the estate." *In re AFI Holding, Inc.*, 530 F.3d at 845. "Most case law concerning the removal of a trustee involves intentional misconduct or negligence on the part of the trustee in the administration of the estate" and "a trustee is not responsible, and therefore should not be removed, for mistakes in judgment where the judgment is both reasonable and discretionary." *In re Reed*, 178 B.R. 817, 821 (Bankr. D. Ariz. 1995).

The party seeking removal of the trustee bears the burden of showing cause exists for such removal and must present "specific facts" to support the showing. *In re AFI Holding, Inc.*, 530 F.3d at 845 (citing *Alexander v. Jensen–Carter (In re Alexander)*, 289 B.R. 711, 714 (8th Cir. BAP 2003), *aff'd,* 80 Fed.Appx. 540 (8th Cir. 2003)). The burden is a high one, demanding "'reasons for which the law and sound public policy recognize as sufficient [to] warrant ... removal.'" *In re*

*Reed*, 178 B.R at 821 (quoting *Baker v. Seeber (In re Baker)*, 38 B.R. 705, 707 (D. Md. 1983)). Reasons the moving party presents must "relate to and affect the administration of the office [of the trustee]" and removal is only appropriate when related to '"something of a substantial nature directly affecting the rights and interests of the public.'" *Id.* In sum, the moving party bears the heavy burden of showing specific facts that point to a strong public policy interest impacted by the trustee's alleged misconduct.

Finally, the moving party must possess standing to bring a motion to remove the trustee. Although an entity debtor has standing under Section 1109 such that it may raise and appear "on any issue in a case under this chapter," parties in interest in a bankruptcy case must also possess constitutional standing. "Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order." *Matter of Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983). The seminal cases in the Ninth Circuit regarding constitutional standing in the bankruptcy context focus on a party's "pecuniary interest" and largely arise in the Chapter 7 context. There, when a bankruptcy case contemplates liquidation of the estate, the "hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate" because such orders do not "diminish the debtor's property, increase his burdens, or detrimentally affect his rights." *Fondiller*, 707 F.2d at 443. Ninth Circuit bankruptcy courts have since applied "the principles established in Fondiller" (specifically that "unless they demonstrate a pecuniary interest in the bankruptcy estate or in the asset or debt at issue, chapter 7 debtors lack standing") to many other proceedings before the bankruptcy court, including motions to remove a trustee. *In re Baroni*, 643 B.R. 253, 285-286 (Bankr. C.D. Cal. 2022).

**Discussion**

**a. Standing**

To possess standing to bring the Motion, the Debtor must somehow be adversely affected by the Trustee's conduct. The posture of the case and the Debtor's non-profit status illustrate that they are not so affected. A non-profit that has ceased operations with no hope of resuming them cannot be adversely affected by the Trustee's efforts to wind down the business where the non-profit by definition lacks a pecuniary interest in the estate. And although this case arose under Chapter 11, the case has clearly become a liquidating Chapter 11 and that convinces the Court that the Debtor has not demonstrated constitutional standing to bring the Motion.

In this case, the Trustee explained she intends to sell the Debtor's primary asset, the real property, following her success on the Complaint for Turnover. ECF No. 217 at 3. After the Court entered the Order on Emergency Motion for Approval of Stipulation Regarding Immediate Turnover of Animals to San Diego Humane Society (the "Order"), the non-profit entity no longer operates for the charitable purpose for which it was created: namely, as a sanctuary for elderly and disabled animals. ECF No. 159; 26 U.S.C. § 501(c)(3). In accord with the Order, "all animals in the Debtor's possession at the time of execution of the warrant which the Debtor non-profit exercised control over and took possession of prior to or during the pendency of this bankruptcy

case" were turned over to SDHS. ECF No. 159; *see also* ECFD No. 217 at 3 ("SD Humane continues to tend to approximately 80 horses that remain on the Property and cooperate with requests by previous owners for return of their animals. Trustee has been informed that SD Humane expects to wrap up its operations at the Property on or about July 15, 2026."). Without any operations to sustain and the anticipated liquidation of the Debtor's largest asset, this case is in a liquidation posture.

Moreover, the Debtor's liabilities clearly exceed its assets. ECF No. 266 at 2. The Debtor's total assets amount to $3,676,464, while its total liabilities amount to $7,758,980, leaving ending equity of - $4,082,516. *Id.* The Debtor has no pecuniary interest in the management of the Estate; as detailed above, the Debtor ceased operations as a non-profit and "the bankruptcy estate is likely insolvent." *In re Baroni*, 643 B.R. 253, 287 (Bankr. C.D. Cal. 2022) quoting *In re Baroni*, 2021 WL 3011907, at *6 (9th Cir. B.A.P. 2021). In *Baroni*, the court concluded the debtor lacked standing to seek removal of the trustee because the "[m]otion fail[ed] to offer even a scintilla of evidence that this is a surplus estate or that the Debtor ha[d] any pecuniary interest in the Trustee's administration of the estate." *Id.* Here, even if there were a surplus estate it is unclear how the Debtor's non-profit status would impact the standing analysis following the cessation of operations, however, the Court need not reach that question because it is quite clear that the Debtor cannot resume operations and that this is not a surplus estate. Thus, the Debtor can neither claim a pecuniary interest nor that it is adversely affected by the Trustee's conduct.

Accordingly, the Debtor lacks standing to bring the Motion.

Relatedly, the Court also observes, as it earlier did in this case, that "[w]hen the Court first conditionally and then on a final basis appointed the Trustee, the Court vested the Trustee with the authority to operate the Debtor's business, including making the decisions at issue in the Motion. *See* 11 U.S.C. § 1108" with respect to an emergency motion the Debtor filed seeking a temporary restraining order. ECF No. 175 at 2. Once a trustee is appointed, "the debtor is no longer a debtor in possession and can not act as a representative of the estate. When a chapter 11 trustee is appointed, the appointment short-circuits the prebankruptcy chain of command and transfers management functions to the trustee." *In re Nilhan Devs., LLC*, 631 B.R. 507, 536 (Bankr. N.D. Ga. 2021). Those management functions include bringing motions such as this one, which may seem counterintuitive in the context of a case where a Chapter 11 trustee has been appointed.

However, the appointment of a Chapter 11 trustee itself may only be made for "cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause." 11 U.S.C. § 1104(a)(1). As such, it makes sense that an entity debtor against whom the Court has found cause exists would no longer possess the authority to seek removal of the trustee that effectively replaced them. This is especially true in light of the circumstances in this case, where indicia of dishonesty and mismanagement abound. Moreover, this would not lead to unchecked

and unfettered authority by the trustee where numerous other parties, including creditors and the United States Trustee, could bring such a motion.

**b. Trustee Competence and Conduct**

In the Motion, the Debtor alleges the Trustee committed post-turnover harms that warrant an accounting. Specifically, the Debtor seeks "a complete animal-by-animal accounting showing each animal's current location, condition, medication, transfer history, illness status, death status, euthanasia status, ownership status, or custodian." ECF No. 207 at 10. The Debtor does not submit any legal basis for making such a demand. The care for the animals, property of the Estate, falls within the purview of the Trustee's duties. The Debtor seems to suggest cause exists to remove the Trustee on the basis that some of the animals tested positive for strangles after their removal and because "[t]ransfer, commingling, quarantine exposure, unfamiliar handling, separation, stress, medication changes, illness, adoption, or euthanasia can cause irreversible harm." *Id.* Care for the animals has always been of paramount importance in this case, leading the Court to initially enter the Order based on the Search Warrant that authorized peace officers to seize property, including "any animal exhibiting signs of neglect, malnutrition, dehydration, illness, injury, or lack of veterinary care." ECF No. 159. The Court thus contemplates that many of these unfortunate conditions could likely be a direct result of the Debtor's own acts and so does not conclude cause exists to remove the Trustee, who has stepped into a challenging situation and has demonstrated diligent efforts to provide care for the animals. Indeed, the Motion does not present direct evidence of the Trustee's role in causing any of those conditions. The Motion thus fails to support allegations of incompetence or violations of fiduciary duties.

The Debtor goes on to allege "the funding record supports removal or restriction of the Trustee." ECF No. 207 at 14. The Court notes that none of the citations in that portion of the Motion include reference to any evidence. Moreover, the bases for such allegations lack any weight. For example, the Debtor contends "that the operators received no money for daily feed, veterinary care, farrier care, medication, or animal needs despite repeated requests." *Id.* at 15. The Trustee has no obligation to provide such funds to "the operators" of the Debtor as the Trustee now operates the business. The subsequent contentions, that the Trustee somehow allowed "conditions to worsen or appear worse, and then rely on those conditions to justify animal removal, possession control, and sale-clearing relief" certainly would be extremely concerning, but the Debtor presents no credible evidence to that effect and it is contradicted by the other evidence that has been presented to the Court throughout these proceedings.

Finally, the Debtor complains of "de facto constructive displacement and possession-control pressure," which is nonsensical. The Court entered the Order on Findings of Fact and Conclusions of Law after Trial in the related adversary case, concluding, among other things, that the Property is property of the Estate and that the "Trustee is entitled to an order compelling Defendants to vacate and orderly turn over the Property to the Trustee on or before July 15, 2026." Case. No. 26-90029-JBM at ECF No. 83 at 9. On July 15, 2026, the Court issued a Writ of

Possession for the property against all occupants at the premises, including the Debtor's principals. *Id.* at ECF No. 91 at 2. None of the Trustee's actions prior to entry of that Order were improper. Instead, the record before the Court shows that the Trustee took care to appropriately execute her duties under the Bankruptcy Code and that she did her best to balance those duties while taking into account Kerber's and Flores' presence on the Property.

**Conclusion**

Under Section 324(a) the Court can only remove a trustee for cause, and nothing the Debtor presented comes anywhere close to cause. As the Court detailed above, public policy concerns impose a high burden on motions to remove trustees and the authority to remove a trustee lies within the Court's discretion. The Debtor failed to carry this burden in its Motion, and many of its concerns are moot. As such, the Court intends to **DENY** the Motion.