MATTHEW SIROLLY, SBN 239984
JAY SHIN, SBN 256082
STATE OF CALIFORNIA
LABOR COMMISSIONER'S OFFICE
320 w. 4th Street, Suite 600
Los Angeles, CA 90013
Telephone No. (213) 897-1511
Facsimile No. (213) 897-2877
E-mail: msirolly@dir.ca.gov

Attorney for Creditor,
Labor Commissioner of the State of California

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO DIVISION**

| | |
|---|---|
| In re<br><br>VILLA CHARDONNAY HORSES WITH WINGS, INC.,<br><br>Debtor. | CASE NO. 25-04245-JBM11<br><br>CHAPTER: 11<br><br>**CREDITOR LABOR COMMISSIONER'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES;**<br><br>**DECLARATION OF DEPUTY LABOR COMMISSIONER CINDY LAGMAN AND EXHIBITS A-F.**<br><br>**Hearing Date and Time:** TBD<br>**Dep't: 2**<br>**Hon. J. Barrett Marum** |

California State Labor Commissioner ("Labor Commissioner") moves for the allowance and payment of post-petition wages and related claims of three employees as administrative expenses. The Motion is brought pursuant to 11 USC §§ 503(b)(1)(A)(i) and 507(a)(2); 28 U.S.C. § 959; and California Labor Code §§ 61, 96.7, 98.3, 203, 510, and 1197. The Motion is brought on the grounds that each of the three employees provided labor to the Debtor's Horse

Sanctuary for at least 23 to 27 weeks post-petition, by caring for the animals and maintaining the property; however, they were not paid the wages that they were due under California law, and were not paid any wages at all for significant periods during this time. As the three employees were hired by the Debtor's principal pre-petition and continued to work post-petition and their services were a vital part of the Debtor's operations, their wages are allowed as administrative expenses. This Motion is based on the attached Memorandum of Points and Authorities; the Declaration of Deputy Labor Commissioner Cindy Lagman and Exhibits filed concurrently in support of the Motion.

Based on the facts and legal arguments stated in this motion, the Labor Commissioner requests the allowance and payment of the administrative expenses of $284,008.43, which are summarized as follows:

| Employee | Wages | Statutory Damages and Penalties | Combined Wages, Damages, and Penalties |
|---|---|---|---|
| Sandra Reyes | $55,260.44 | $54,524.02 | $109,784.46 |
| Pedro Cano | $37,196.24 | $49,878.48 | $87,074.72 |
| Jorge Reyes Lopez | $36,877.50 | $50,271.75 | $87,149.25 |
| **Total** | **$129,334.18** | **$154,674.25** | **$284,008.43** |

STATE OF CALIFORNIA
LABOR COMMISSIONER'S OFFICE

DATED: August 31, 2026

By: Matthew Sirolly
Attorney for Creditor
Labor Commissioner of the State of California

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Labor Commissioner requests payment of wages owed to laborers who performed the lion's share of the hard, dirty work required to prevent Debtor's large animal ranch from falling into catastrophe. They fed and cared for animals, cleaned stables, performed landscaping, repaired buildings, maintained Debtor's property, and cleaned Debtor's house. *See* Lagman Decl. ¶¶ 7-9. Without their hard labor, Debtor's grounds almost certainly would have been full of dead animals, collapsing structures, and overwhelming amounts of animal waste.

While these three employees—despite their long hours—may not have been sufficient in number to maintain such a large animal ranch, without them the Debtor's animal ranch would have been utterly uninhabitable, and the costs of remediation would have overwhelmed the estate's resources. The estate's primary asset is the property that these laborers maintained. Thus, the wages owed to them can only be described as the type "actual, necessary costs and expenses of preserving the estate" that must be paid as administrative expenses under section 503 of the Bankruptcy Code.

All three of these individuals were employed by Debtor and are owed significant amounts of unpaid wages for the period after the bankruptcy commenced. *See* Lagman Decl. ¶¶ 12-33. Debtor hired them in 2024, well before the bankruptcy case commenced. *Id.* ¶¶ 7-9. Debtor always paid them at illegally low rates that fell below California's minimum labor standards.[1] *See* Exhs. B, D, F. However, after the bankruptcy commenced, Debtor frequently failed to pay them at all—stringing them along by sporadically paying them small amounts. *See* Lagman Decl. ¶¶ 15, 16, 17, 23, 24, 30, 31. They continued to work for Debtor for several months after the trustee was appointed, until the trustee fully asserted control over Debtor's operations in April of 2026. *Id.* ¶¶ 12, 17, 20, 24, 27, 31. Because the trustee allowed Debtor to maintain control over daily operations

[1] Debtor has a history of failing to comply with minimum labor standards that resulted in several Labor Commissioner judgments against Debtor, in favor of other workers, prior to this bankruptcy. (*See* Labor Commissioner Proof of Claim, Claim #2.)

of the animal ranch during this period, the trustee "suffered or permitted" these laborers to continue working on behalf of the estate, accruing wage liability under California law. *See, e.g.*, Cal. Code Regs. tit. 8, §§ 11150(2)(H), 11140(2)(G). Thus, under Bankruptcy Code section 503, they must be paid all the wages due to them under California law from the date the bankruptcy commenced to when they stopped working for Debtor in March and April of 2026.

## II. FACTUAL BACKGROUND

### a. Debtor Villa Chardonnay's Operations and Bankruptcy Filing

On October 14, 2025, Debtor, Villa Chardonnay Horses with Wings, Inc., filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. *See* Petition, Doc 1. Debtor operated a Horse Sanctuary, which comprised sick and elderly animals, including 300 horses and 300 cats, as well as other animals. Amended Sch. A/B, Doc 37, PDF pgs. 10 and 12.

At the time of the petition, Monika Kerber Perez was President of Debtor and had complete control over it. *See* Statement of Financial Affairs, Doc 10, pp. 12-13. Ms. Kerber remained in control of the Debtor until January 29, 2026, when this Court appointed a Chapter 11 Trustee. *See* Order Approving the Appointment of Chapter 11 Trustee, Doc. 89.

After appointment of the Chapter 11 Trustee, Ms. Kerber remained in effective control of the day-to-day operations of the animal sanctuary through April 2026. *See* August 5, 2026 Declaration of Leslie T. Gladstone in Support of Opposition to Motion to Remove Trustee, Doc 255-1 ¶¶ 39-60 (describing interactions between Ms. Kerber and the trustee from the date of the trustee's appointment until seizure of the animals and effective closure of the sanctuary's operations on May 1, 2026).

### b. Villa Chardonnay Laborers' Wage Claims

On April 23, 2026, Sandra Reyes, Pedro Cano, and Jorge Reyes Lopez filed claims with the California Labor Commissioner, alleging that Debtor regularly failed to pay them earned wages. Lagman Decl.[2] ¶ 3. In addition to the Debtor frequently missing wage payments after this bankruptcy case commenced, the rates that Debtor promised these workers fell below the legal

[2] "Lagman Decl." refers to the concurrently filed Declaration of Cindy Lagman in Support of Creditor Labor Commissioner's Motion for Allowance and Payment of Administrative Expenses.

minimum amounts required to be paid to California employees. *See id.* ¶¶ 11-33. Under Monika Kerber's direction, these laborers provided the basic services required to maintain Debtor's operations, including caring for, feeding, and cleaning up after animals, landscaping, housekeeping, and maintaining and repairing Debtor's property. *Id.* ¶¶ 7-9.

The Labor Commissioner stayed these wage claims due to the pending bankruptcy. However, the Labor Commissioner continued to investigate the matter for the purpose of potentially assisting the workers in seeking payment through these bankruptcy proceedings; and a Labor Commissioner deputy interviewed the workers, collected information and complaints from them, and determined the wages and statutory damages owed to them under California law. *See* Lagman Decl. ¶ 4.

For each of these three laborers identified below, "Regular Hours" reflect the work they performed for the first eight (8) hours of a workday or 40 hours of a work week; "Overtime Hours" reflect work more than 40 hours a week or between eight (8) and 12 hours a workday; and "Double Time Hours" reflect work more than 12 hours a workday. The employees' description of hours worked and amounts paid below are followed by a demonstrative table.

### c. Labor Performed by Sandra Reyes

Sandra Reyes worked for the Debtor from January 17, 2024 through March 23, 2026. Lagman Decl. ¶ 12. Hence, after the petition date of October 14, 2025, she worked for 23 weeks, of which just over 10 weeks occurred in 2025 and the balance in 2026. Ms. Reyes was hired and supervised by Monika Kerber. *Id.* ¶ 6. Her job title was "Animal Caretaker and Housekeeper" and her job duties, which she performed throughout her post-petition tenure with the Debtor, included feeding the cats, cleaning their living areas, maintaining the building where the cats were housed, and other housekeeping duties. *Id.* ¶ 7. At the time of the bankruptcy filing, Ms. Reyes was paid under her existing oral contract with Monika Kerber and Villa Chardonnay at a rate of $300.00 per day. *Id.* ¶ 13.

During her post-petition work for the Debtor, Ms. Reyes typically worked 70 hours per week, seven days a week. *Id.* ¶ 12. The following table reflects the hours she worked and amounts paid to her post-petition (*see id.* ¶¶ 14-18):

//

| Sandra Reyes | | | |
|---|---|---|---|
| **Category** | **10/14/25 to 10/20/25** | **10/21/25 to 12/31/25** | **1/1/26 to 3/23/26** |
| Regular Hours | 40 | 424 | 490 |
| Overtime Hours | 21 | 256 | 286 |
| Double Time Hours | 2 | 40 | 44 |
| **Total Hours Worked** | **63** | **720** | **820** |
| **Actual Payment** | **$333.33** | **$552.00** | **$1,949.98** |

**d. Labor Performed by Pedro Cano**

Pedro Cano worked for the Debtor from January 17, 2024 through April 22, 2026. Lagman Decl. ¶ 8. Hence, after the petition date of October 14, 2025, he worked for at least 27 weeks, of which just over 10 weeks occurred in 2025 and the balance in 2026. Mr. Cano was hired and supervised by Monika Kerber. *Id.* ¶ 6. His job title was "Animal Caretaker" and his job duties, which he performed throughout his post-petition tenure with the Debtor, included caring for the horses by feeding them, cleaning their stalls, and attending to them when they were sick, as well as maintaining the property, including repairing damaged buildings and fences. *Id.* ¶ 8. Throughout this period, Mr. Cano was under an oral contract with Ms. Kerber and Villa Chardonnay to be paid a daily rate of $150.00, which amounts to an hourly rate below the California minimum wage of $16.50 in 2025 and $16.90 starting January 1, 2026. *Id.* ¶ 21.

During his post-petition work for the Debtor, Mr. Cano typically worked 70 hours per week, seven days a week. *Id.* ¶ 20. The following table reflects the hours he worked and amounts paid to him post-petition (*see id.* ¶¶ 22-25):

| Pedro Cano | | |
|---|---|---|
| **Category** | **10/14/2025 to 12/31/2025** | **1/1/2026 to 4/22/2026** |
| Regular Hours | 480 | 670 |
| Overtime Hours | 308 | 390 |
| Double Time Hours | 48 | 60 |
| **Total Hours Worked** | **836** | **1,120** |
| **Actual Payment** | **$1,218.46** | **$1,949.98** |

//

//

**e. Labor Performed by Jorge Reyes Lopez**

Jorge Reyes Lopez worked for the Debtor from February 7, 2024 through April 22, 2026. Lagman Decl. ¶ 9. Hence, after the petition date of October 14, 2025, he worked for at least 27 weeks, of which just over 10 weeks occurred in 2025 and the balance in 2026. Mr. Reyes Lopez was hired and supervised by Monika Kerber. *Id.* ¶ 6. His job title was "Animal Caretaker" and his job duties, which he performed throughout his post-petition tenure with the Debtor, included caring for the horses by feeding them, cleaning their stalls, and attending to them when they were sick, as well as maintaining the property, including repairing damaged buildings and fences. *Id.* ¶ 9. Throughout this period, Mr. Reyes Lopez was under an oral contract with Ms. Kerber and the Villa Chardonnay to be paid a daily rate of $150.00, which amounts to less than the California state minimum wage of $16.50 for 2025 and $16.90 starting January 1, 2026. *Id.* ¶ 28.

During his post-petition work for the Debtor, Mr. Reyes Lopez regularly worked 70 hours per week, seven days a week. (*Id.* ¶ 27.) The following table reflects the hours he worked and amounts paid to him post-petition:

| Jorge Reyes Lopez | | |
|---|---|---|
| **Category** | **10/14/2025 to 12/31/2025** | **1/1/2026 to 4/22/2026** |
| Regular Hours | 464 | 670 |
| Overtime Hours | 252 | 390 |
| Double Time Hours | 32 | 60 |
| **Total Hours Worked** | **748** | **1,120** |
| **Actual Payment** | **$826.00** | **$483.00** |

## III. ANALYSIS

### a. Legal Standards

Section 503(b)(1)(A)(i) of the Bankruptcy Code authorizes administrative expenses for "wages, salaries, and commissions for services rendered after the commencement of the case". 11 USC § 503(b)(1)(A)(i). These amounts are deemed priority under section 507(a)(2) of the Bankruptcy Code. 11 USC § 507(a)(2). A claimant for administrative expense must establish that the debt: 1) arose from a transaction with the debtor-in-possession; and 2) directly and

substantially benefited the estate. *In re DAK Industries, Inc*., 66 F.3d 1091, 1094 (9th Cir. 1995) (citations omitted).

Debtors-in-possession and the trustee must manage the estate property "according to the requirements of the valid laws of the State in which such property is situated." 28 USC § 959(b). Moreover, the validity of a creditor's claim in bankruptcy is determined by state law subject to qualifying or contrary bankruptcy law. *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 21 (2000) ("[t]he basic federal rule in bankruptcy is that state law governs the substance of claims") (citations and internal quotations omitted).

The California Labor Commissioner is authorized to enforce the California Labor Code, including collecting unpaid wages on behalf of any worker in California *without* an assignment of wages. Cal. Lab Code §§ 96.7, 61. Similarly, "the Labor Commissioner may prosecute all actions for the collection of wages, penalties, and demands of persons who in the judgment of the Labor Commissioner are financially unable to employ counsel and the Labor Commissioner believes have claims which are valid and enforceable." Cal. Lab. Code §98.3.

Under these provisions, the Labor Commissioner has standing to collect the wages owed to Sandra Reyes, Pedro Cano, and Jorge Reyes Lopez.

**b. Sandra Reyes, Pedro Cano and Jorge Reyes Lopez Are Entitled to Administrative Expenses for Unpaid Wages Earned Providing Vital Services to the Debtor's Post-Petition Operations**

Debtor owes Sandra Reyes, Pedro Cano and Jorge Reyes Lopez (the "Laborers") wages and penalties for both pre-petition and post-petition work. (*See* Exh. B, D, F.) They were hired in 2024 by Monika Kerber, Debtor's President, to provide services caring for animals and maintaining Debtor's horse ranch. Lagman Decl. ¶¶ 6-9. They continued to work after the filing of this bankruptcy petition for another 23 weeks (Ms. Reyes) to 27 weeks (Mr. Cano and Mr. Reyes Lopez), providing vital services to maintain Debtor's property and keep animals alive. *See id.* ¶ 10. Despite this, Debtor only paid them sporadically during this period. *See id.* ¶¶ 15, 16, 17, 23, 24, 30, 31.

Clearly, the wages that these laborers earned while the Debtor remained in possession of the estate constitute an administrative claim under section 503(b)(1)(A)(i) of the Bankruptcy Code. They provided direct and substantial benefits to the estate. Without their labor, Debtor's grounds almost certainly would have been full of dead animals, collapsing structures, and overwhelming amounts of animal waste. This would have tremendously impaired the value of the Debtor's primary asset.

The Laborers were Debtor's employees. In California, an employee-employer relationship is created when the purported employer "suffers or permits" a person to work for them. *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903, 916 (Cal. 2018).[3] Generally, anyone provided services is deemed to be an employee, unless the hiring entity can demonstrate *all* of the following: (1) "the person is free from the control and direction of the hiring entity, both in fact and by contract"; (2) "the person performs work that is outside the usual course of the hiring entity's business"; and (3) "the person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed." Cal. Lab. Code § 2750.3. Here, the Laborers were under the control of Debtor's principal, Monika Kerber. Lagman Decl. ¶ 6. Moreover, the Laborers' work caring for animals and maintaining the Debtor's horse ranch was clearly well within the Debtor's usual course of operations as a horse sanctuary and ranch. They could not possibly have been "customarily engaged in an independently established trade, occupation, or business" because they worked more than 70 hours per week for Debtor. *See* Lagman Decl. ¶¶ 12, 20, 27. Thus, although the Laborers need only prevail on any one of these three prongs to be considered employees, they easily prevail on all three.

These Laborers remained employees after the trustee took control of the estate and must be paid the wages they earned during this time as an administrative claim of the estate. California workers must be paid for all the time they are "subject to the control of an employer", including all the time the employee is "suffered or permitted to work, whether or not required to do so." Cal.

[3] "[W]e conclude that the [California Industrial Welfare Commission] wage order's **suffer or permit to work definition must be interpreted broadly** to treat as "employees," and thereby provide the wage order's protection to, *all* workers who would ordinarily be viewed as *working in the hiring business*." *Dynamex Operations West, Inc.*, 4 Cal.5th at 916 (italics in the original) (emphasis in bold added).

Code Regs. tit. 8, §§ 11150(2)(H), 11140(2)(G). As the trustee explained in a declaration filed for another motion in this case, during the first three months of her appointment she had relatively little involvement in the on-the-ground operations of the Debtor's animal sanctuary. *See* August 5, 2026 Declaration of Leslie T. Gladstone in Support of Opposition to Motion to Remove Trustee, Doc 255-1 ¶¶ 39-60. During this period, Debtor's principals remained in control of the property, and the trustee allowed them "to continue to care for and feed the animals". *Id.* ¶¶ 43-45. Although the trustee began monitoring the operations more closely as the months passed, the Laborers were not told to stop providing services until May 1, 2026. (*Id.* ¶¶ 56, 59.) Thus, from appointment of the trustee on January 29, 2026, through late April, the trustee suffered or permitted the Laborers to maintain the estate.

Hence, the Laborers must be paid for all their post-petition labor, regardless of whether their labor occurred before or after appointment of the Chapter 11 Trustee.

**c. Post-Petition Wages Owed to Sandra Reyes, Pedro Cano, and Jorge Reyes Lopez**

In total, the estate owes Sandra Reyes, Pedro Cano, and Jorge Reyes Lopez $129,334.18 for post-petition labor**.** This amount derives from an investigation and audit by a Deputy Labor Commissioner, who interviewed workers, reviewed forms they submitted, and applied the relevant California wage and hour laws. *See* Lagman Decl. ¶¶ 1-33. The amount is large because these Laborers apparently lived onsite at Debtor's property[4] and worked upwards of 70 hours per week, seven days per week, with little pay for approximately six months. Lagman Decl. ¶¶ 12, 20, 27.

California law dictates several legal minimum protections for wages, hours, and working conditions, including:

- A minimum hourly wage of $16.50 in 2025 and $16.90 in 2026. Cal. Lab. Code §§ 1182.12, 1197.
- Overtime pay for work in excess of eight hours a workday, 40 hours a workweek, or the first eight hours on the seventh consecutive day of work at a rate of one and one-half times the regular rate of pay. Cal. Lab. Code § 510.

---

[4] *See* August 5, 2026 Declaration of Leslie T. Gladstone in Support of Opposition to Motion to Remove Trustee, Doc 255-1 ¶¶ 59-60.

- Double time pay for work in excess of 12 hours a workday or over eight hours of work on the seventh consecutive day of work at a rate of double the regular rate of pay. Cal. Lab. Code § 510.
- When employees are paid a fixed salary, as here where the Laborers were paid a flat daily rate, California Labor Code section 515 dictates that the salary only compensates them for "regular, nonovertime hours, notwithstanding any private agreement to the contrary."

Applying these rules to the Laborers' post-petition work, and subtracting the amounts actually paid to them, the Deputy Labor Commissioner who performed these audits determined that Sandra Reyes is due and owing $55,260.44 in wages for post-petition labor; Pedro Cano is owed $37,196.24; and Jorge Reyes Lopez is owed $36,877.50. Lagman Decl. ¶¶ 18, 25, 32.

**d. Sandra Reyes, Pedro Cano, and Jorge Reyes Lopez Are Also Entitled to Administrative Expenses for Statutory Damages and Penalties that Accrued Post-Petition.**

Debtor's failure to make timely and complete wage payments to the Laborers imposes additional statutory damages and penalties under the California Labor Code. These statutory damages and penalties also qualify as an administrative claim of the estate. *See In re Metro Fulfillment, Inc.*, 294 B.R. 306, 308, 312 (9th Cir. B.A.P. 2003).

California law provides for several penalties for non-payment of wages, untimely payment of wages, and failure to pay minimum wage, including:

- Waiting time penalties of up to 30 days of wages if an employer willfully fails to pay the wages of an employee who is discharged or who quits. Cal. Lab. Code § 203.
- Late payroll penalties of one hundred dollars ($100) for any initial violation and, for each subsequent violation (or any willful and intentional violation), two hundred dollars ($200) plus 25 percent of the amount unlawfully withheld. Cal. Lab. Code § 210.
- Liquidated damages for failure to pay minimum wages equal to the total unpaid minimum wages plus interest on those unpaid minimum wages at the rate of 10 percent per year. Cal. Lab. Code § 1194.2.

Applying these provisions, the Deputy Labor Commissioner who performed these audits determined that for post-petition statutory damages and penalties, Sandra Reyes is due and owing $54,524.02; Pedro Cano is due and owed $49,878.48; and Jorge Reyes Lopez is owed $50,271.75. Lagman Decl. ¶¶ 18, 25, 32.

The Ninth Circuit Bankruptcy Appellate Panel has held that statutory damages and penalties for unpaid wages constitute administrative expenses of the estate. *In re Metro Fulfillment, Inc.*, 294 B.R. 306, 308, 312 (9th Cir. B.A.P. 2003). Citing the Debtor's obligation to operate according to state law under 28 U.S.C. § 959(b), the B.A.P. held that both waiting time penalties under California Labor Code section 203 and insufficient funds check penalties under California Labor Code section 203.1 constituted administrative expenses of the estate because they "arose out of Debtor's failure post-petition to comply with its obligations under state law." *Id.* at 311-312 ("we conclude under 28 U.S.C. § 959(b) that the penalty wages at issue are entitled to administrative priority as a cost of doing business …"). Thus, these amounts should also be permitted as administrative claims of the estate.

## IV. CONCLUSION

Debtor's Laborers' claims for unpaid wages and statutory damages meet the criteria for the allowance of administrative expenses. Debtor continued their employment after this bankruptcy case commenced, and the trustee did not stop them from providing services until May 1, 2026. Furthermore, their labor directly and substantially benefited the estate because they maintained the estate's primary asset—its horse ranch. Thus, they are entitled to administrative expenses in the amounts requested by the Labor Commissioner.

STATE OF CALIFORNIA
LABOR COMMISSIONER'S OFFICE

DATED: August 31, 2026

By: Matthew Sirolly
Attorney for Creditor
Labor Commissioner of the State of California