MATTHEW SIROLLY, SBN 239984
JAY SHIN, SBN 256082
STATE OF CALIFORNIA
LABOR COMMISSIONER'S OFFICE
320 w. 4th Street, Suite 600
Los Angeles, CA 90013
Telephone No. (213) 897-1511
Facsimile No. (213) 897-2877
E-mail: msirolly@dir.ca.gov

Attorney for Creditor,
Labor Commissioner of the State of California

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO DIVISION**

| | |
|---|---|
| In re<br><br>VILLA CHARDONNAY HORSES WITH WINGS, INC.,<br><br>Debtor. | CASE NO. 25-04245-JBM11<br><br>CHAPTER: 11<br><br>**DECLARATIONS OF CINDY LAGMAN IN SUPPORT OF CREDITOR LABOR COMMISSIONER'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES** |

I, Cindy Lagman, declare as follows:

1. I am Deputy Labor Commissioner with the California State Labor Commissioner's Office.
2. My job entails evaluating and calculating wages due and related claims (e.g., statutory penalties and damages) under California law by reviewing pay and time records, interviewing workers, and reviewing any documents submitted by workers to the Labor Commissioner's Office. As part of this job, I regularly prepare administrative complaints detailing wage claim amounts for administrative wage claim hearings.

3. On April 23, 2023, Sandra Reyes, Pedro Cano, and Jorge David Reyes Lopez filed claims with the California Labor Commissioner alleging that they were owed unpaid wages for their work at Villa Chardonnay Horses with Wings, Inc. ("Villa Chardonnay").

4. In July 2026, I evaluated the wages due and related claims (e.g., statutory penalties and damages) of Sandra Reyes, Pedro Cano, and Jorge David Reyes Lopez against their employer, Villa Chardonnay Horses with Wings, Inc. ("Villa Chardonnay"), which included interviews, reviewing forms submitted by these individuals, and conducting computations. The following facts and computations arise from my evaluation.

**Employees at Villa Chardonnay Horses with Wings, Inc.**

5. Sandra Reyes, Pedro Cano, and Jorge David Reyes Lopez ("Animal Caretakers") allege that they cared for animals and maintained the property at an animal sanctuary operated by Villa Chardonnay. Villa Chardonnay had about 300 sick and elderly horses and 300 sick and elderly cats, in addition to other animals.

6. Each of the Animal Caretakers state they were hired and supervised by Monica Kerber until Ms. Kerber stopped running Villa Chardonnay in early 2026.

7. Sandra Reyes asserts that she worked at Villa Chardonnay's animal sanctuary from January 17, 2024, through March 23, 2026. Exh. B, Reyes Wage Complaint. Her job title was "Animal Caretaker and Housekeeper" and her job duties, which she performed throughout her employment with Villa Chardonnay, included feeding the cats, cleaning their living areas, and maintaining the building where the cats were housed. *See* Exh. B.

8. Pedro Cano asserts that he worked at Villa Chardonnay's animal sanctuary from January 17, 2024, through at least April 22, 2026. Exh. D, Cano Wage Complaint. His job title was "Animal Caretaker" and his job duties, which he performed throughout his employment with Villa Chardonnay, included caring for the horses by feeding them, cleaning their stalls, and attending to them when they were sick, as well as maintaining the property and repairing damaged buildings and fences. *See* Exh. D.

9. Jorge David Reyes Lopez asserts that he worked at Villa Chardonnay's animal sanctuary from February 7, 2024, through at least April 22, 2026. Exh. F, Reyes Lopez Wage

Complaint. His job title was "Animal Caretaker" and his job duties, which he performed throughout his employment with Villa Chardonnay, included caring for the horses by feeding them, cleaning their stalls, and attending to them when they were sick, as well as maintaining the property and repairing damaged buildings and fences. *See* Exh. F.

10. Thus, Mr. Cano and Mr. Reyes Lopez worked for at least 27 weeks after Villa Chardonnay filed for bankruptcy, from October 14, 2025, until April 22, 2026, and Ms. Reyes worked for 23 weeks after Villa Chardonnay filed for bankruptcy, from October 14, 2025, to March 23, 2026.

11. The following is my evaluation of their wage claims after Villa Chardonnay filed for bankruptcy protection on October 14, 2025. For the purposes of my wage claim evaluation, the term "Regular Hours" reflect the work the Animal Caretakers performed for the first eight (8) hours of a workday or 40 hours of a work week; "Overtime Hours" reflect work more than 40 hours a week or between eight (8) and 12 hours a workday; and "Double Time Hours" reflect work more than 12 hours a workday. Under California law, employees must be paid at one and a half times their regular rate of pay for Overtime Hours and at twice their regular rate for Double Time Hours. Cal. Lab. Code § 510. California law specifies that a daily or weekly salary (for a nonexempt employee) only covers an employee's Regular Time Hours, not overtime or Double Time Hours, irrespective of an agreement to the contrary between the employer and employee. Cal. Lab. Code § 515(c), (d).

**Wage Claim Evaluation of Sandra Reyes**

12. From October 14, 2025, to her last day on March 23, 2026, Sandra Reyes alleges that she typically worked 70 hours per week over a seven-day work week.

13. At the time of the bankruptcy filing, Ms. Reyes alleges she was paid under her existing oral contract with Monika Kerber and Villa Chardonnay at a daily rate of $300.00 per day.

14. Based on my evaluation including communications with Ms. Reyes and review of the forms that she submitted, I tallied the Regular Hours, Overtime Hours, and Double Time Hours that she worked – and the payments that she received – by three (3) periods: from

October 14 through October 20, 2025 (a period where her hourly rate amounted to the then-applicable California minimum wage, or less, of $16.50 per hour); October 21 through December 31, 2025 (where her hourly rate amounted to $30.00); and January 1, 2026 through her last day on March 23, 2026 (where her hourly rate amounted to $30.00, but the California minimum wage had increased to $16.90 per hour).

15. From October 14, 2025, through October 20, 2025, Ms. Reyes worked 40 Regular Hours, 21 Overtime Hours, and 2 Double Time Hours. She was paid $333.33 for the period.

16. From October 21, 2025, to December 31, 2025, Ms. Reyes worked a total of 720 hours, of which 424 were Regular Hours, 256 were Overtime Hours, and 40 were Double Time Hours. Ms. Reyes was paid $552.00 for that entire period, which includes no payment for work performed between November 9, 2025, and December 20, 2025.

17. From January 1, 2026, to March 23, 2026, Ms. Reyes worked 820 hours, of which 490 were Regular Hours, 286 were Overtime Hours, and 44 were Double Time Hours. Ms. Reyes was paid $1,949.98 for that entire period, which includes no payment for the work performed between January 1 and 3, February 8 and 21, and March 15 and 23 of 2026.

18. My calculation of the hours worked, amounts paid, and amounts owed to Ms. Reyes for work after Villa Chardonay filed a bankruptcy petition are shown in **Exhibit A**. Ms. Reyes' total claim for unpaid wages for post-petition labor amounts to $55,260.44. (The "Wages Owed" total on Exhibit A includes liquidated damages because these amounts accrue interest under Labor Code , which I am excluding in the present calculation.) She is owed additional statutory damages and penalties of $54,524.02, bringing her total wage claim for this period to $109,784.46.

19. **Exhibit B** is a true and correct copy of the wage claim complaint signed by Ms. Reyes covering the entire period that she worked at Villa Chardonnay (pre- and post-petition).

**Wage Claim Evaluation of Pedro Cano**

20. From October 14, 2025 to his last day on April 22, 2026, Pedro Cano alleges that he generally worked 70 hours a week over a seven-day work week.

21. Throughout this period, Mr. Cano was under an oral contract with Ms. Kerber and Villa Chardonnay to be paid a daily rate of $150.00, which amounts to an hourly rate of less than below the California minimum wage of $16.50 in 2025 and $16.90 starting January 1, 2026.

22. Based on my evaluation including communications with Mr. Cano and review of the forms that he submitted, I tallied the Regular Hours, Overtime Hours, and Double Time Hours that he worked – and the payments that he received – by two (2) periods: from the October 14, 2025 filing of the bankruptcy through December 31, 2025 (when the state minimum wage was $16.50 per hour); and January 1, 2026 through his last day on April 22, 2026 (when the state minimum wage was $16.90).

23. From October 14, 2025 through December 31, 2025, Mr. Cano alleges he worked a total of 836 hours, of which 480 were Regular Hours, 308 were Overtime Hours, and 48 were Double Time Hours. Mr. Cano was paid $1,1218.46 for the entire period, which includes no payment for the labor performed between October 19 and 25, November 9 and 29, and December 7 and 20 of 2025.

24. From January 1, 2026 through April 22, 2026, Mr. Cano worked a total of 1,120 hours, of which 670 were Regular Hours, 390 were Overtime Hours, and 60 were Double Time Hours. Mr. Cano was paid $1,1949.80 for the entire period, which includes no payment for the work performed between January 1 and 3, February 8 and 21, and March 15 and April 22 of 2026.

25. My calculation of the hours worked, amounts paid, and amounts owed to Mr. Cano for work after Villa Chardonay filed a bankruptcy petition are shown in **Exhibit C**. Mr. Cano's total claim for unpaid post-petition wages amounts to $37,196.24. (The "Wages Owed" total on Exhibit C includes liquidated damages because these amounts accrue interest under the Labor Code, which I am excluding in the present calculation.) He is owed additional statutory damages and penalties of $49,878.48, bringing his total wage claim for this period to $87,074.72.

26. **Exhibit D** is a true and correct copy of the wage claim complaint signed by Mr. Cano, reflecting all wages, statutory damages, and penalties that he claims for his entire time working at Villa Chardonnay.

**Wage Claim Evaluation of Jorge David Reyes Lopez**

27. From October 14, 2025 to his last day on April 22, 2026, Jorge David Reyes Lopez alleges he generally worked 70 hours a week over a seven-day work week.

28. Throughout this period, Mr. Lopez was under an oral contract with Ms. Kerber and the Villa Chardonnay to be paid a daily rate of $150.00, which amounts to less than the California state minimum wage of $16.50 for 2025 and $16.90 starting January 1, 2026.

29. Based on my evaluation including communications with Mr. Lopez and review of the form that he submitted, I tallied the Regular Hours, Overtime Hours, and Double Time Hours that he worked – and the payments that he received – by two (2) periods: from the October 14, 2025 filing of the bankruptcy through December 31, 2025 (when the state minimum wage wage was $16.50); and January 1, 2026 through his last day on April 22, 2026 (when the state minimum wage was $16.90).

30. From October 14, 2025 through December 31, 2025, Mr. Lopez worked a total of 748 hours, of which 464 were Regular Hours, 252 were Overtime Hours, and 32 were Double Time Hours. Mr. Lopez was paid $826.00 for the entire period, which includes no payment for the work performed between October 19 and November 29, December 7 and 13, and December 21 and 31 of 2025.

31. From January 1, 2026 through April 22, 2026, Mr. Lopez worked a total of 1,120 hours, of which 670 were Regular Hours, 390 were Overtime Hours, and 60 were Double Time Hours. Mr. Lopez was paid $483.00 for the entire period, which includes no payments for the work performed between January 1 and 3, January 11 and March 7, and March 15 and April 22 of 2026.

32. My calculation of the hours worked, amounts paid, and amounts owed to Mr. Reyes Lopez for work after Villa Chardonay filed a bankruptcy petition are shown in **Exhibit E**. Mr.

Reyes Lopez's total claim for unpaid post-petition wages amounts to $36,877.50. The "Wages Owed" total on Exhibit E includes liquidated damages because these amounts accrue interest under the Labor Code, which I am excluding in the present calculation.) He is owed additional statutory damages and penalties of $50,271.75, bringing his total wage claim for this period to $87,149.25

33. **Exhibit F** is a true and correct copy of the wage claim complaint signed by Mr. Reyez Lopez, reflecting all wages, statutory damages, and penalties that he claims for his entire time working at Villa Chardonnay.

I swear under penalty of perjury under the laws of the United States and California that this is true to the best of my knowledge. Executed in ***San Jose***, California.

Cindy Lagman

DATED: August 31, 2026 By: **CINDY LAGMAN,**
**DEPUTY LABOR COMMISSIONER**