**Michael R. Totaro 102229**
**Totaro & Shanahan, LLP**
**P.O. Box 789**
**Pacific Palisades, CA 90272**
**(310) 804 2157**
**Ocbkatty@aol.com**

**Former Attorneys for Debtor in Possession**

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION**

| | |
|---|---|
| **In re**<br><br>**Villa Chardonnay Horses with Wings, Inc**<br><br>**Debtor.** | **Case No. 3:25-bk-04245-JBM11**<br><br>**Chapter 11**<br><br>**REVISED FINAL FEE APPLICATION OF MICHAEL R. TOTARO, MAUREEN J. SHANAHAN AND TOTARO & SHANAHAN LLP FOR FEES AS FORMER GENERAL INSOLVENCY COUNSEL**<br><br>**Date: November 3, 2026**<br>**Time: 1:30 p.m.**<br>**Ctrm: 2 Rm 118**<br>**325 W. F St.**<br>**San Diego, CA 92101**<br><br>**HON. J. BARRETT MARUM** |

Totaro & Shanahan, LLP (the "Firm") respectfully requests this Court to approve its final award of compensation as an administrative expense for professional services rendered to the Debtor for the period from October 15, 2025, through January 29, 2026, in the sum of $39,195.00. No expenses for costs are sought.[1]

[1] On the attached billing statement, the Court will see a notation for a credit of $13,020. That is not relevant to this case. Our program keeps picking up the amount billed on the first case which was never collected. Since I could not find a way to remove it from the billing I gave credit to -0- out that invoice.

**STATEMENT OF FACTS**

This has been an unusually difficult case in that information given to counsel along the way did not turn out to be as represented at the beginning. The principal of the corporation continued to ask for work to be completed while giving counsel what turned out to be false information. Much of this incorrect information did not even come out until the trustee became involved. This was not a matter of being lax in obtaining information rather the actions and work undertaken by counsel were based on patently false information which could not be discovered at the time the work was authorized.

A perfect example of this is the Motion to Value which this Court at first rejected but then apparently realized it was prepared and filed prior to the appointment of the Chapter 11 Trustee. This work was undertaken because counsel was led to believe the family was going to advance funds to purchase the property. In doing so it was important to have an evaluation which would have not only stripped off most of the liens but also put Debtor in a better negotiating position with the SBA on its over $2,000,000 claim. It was the Trustee that withdrew the motion presumably because she had already decided to sell the property free and clear of liens. That was not the approach the Debtor wanted to take with the work that was authorized. Thus, at the time of the motion, it appeared to be a valid step to take to allow the Debtor to purchase the property through family members subject to any overbid procedure.

As the case progressed it became clear that counsel and the Debtor's principal were at odds with the direction of the case. It became clear that certain representations that were made simply did not exist. Once the Trustee was involved it became even clearer that counsel had been misled repeatedly.

As a result of the problems uncovered during the proceedings more time was involved in overcoming these problems. Items presented to the Court had to be vetted to the extent counsel was able to do so, but much of the information was only within the knowledge of the president of the corporation.

At the hearing on the motion to withdraw, the President was complimentary of this Firm. However, thereafter, once the realization set in that there were no funds from the family, no funds to purchase the property or any other property and once the President realized the Trustee was moving forward, her manner changed and she has only berated counsel since that time. As a result, this Court should not expect her approval of this fee request.

Counsel has removed all billing information after January 29, 2026, since the Trustee did not authorize this firm to work on the case. In its amended Order this Court evidently realized the Motion to Value was prepared and filed and set for hearing before the appointment of the Trustee. The question in the Court's mind appears to be whether the motion was justified. As explained above, such motion went to the heart of the principal's family being able to purchase the estate property and thus at the time of the motion this was a realistic prospect although based on false information. In most cases where there is a debtor in possession, they tend to try to save their properties whereas a trustee is more likely to sell properties to avoid having to manage them and perhaps must file a chapter 11 Plan. This, the change from a debtor in possession to a debtor out of possession altered the overall strategy and its viability with a trustee involved.

**BENEFIT TO THE ESTATE: THE MOTION TO VALUE AND AVOID JUNIOR LIENS**

Compensation under 11 U.S.C. § 330(a) is assessed prospectively, not by hindsight, and not by whether a particular strategy was carried through to completion by a successor fiduciary. Section 330(a)(3)(C) directs the Court to consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." 11 U.S.C. § 330(a)(3)(C) (emphasis added). Section 330(a)(4)(A)(ii)(I) similarly bars compensation only for services that were not "reasonably likely to benefit the debtor's estate," again a forward-looking standard measured against what counsel knew and reasonably intended when the

services were performed. See *Ferrette & Salter v. United States Trustee* (*In re Garcia*) 335 B.R. 717,723-24 (9th Cir BAO 2005). Courts have squarely rejected the more exacting, results-based approach under which fees are denied unless a service is shown, in hindsight, to have produced an identifiable, tangible benefit. See *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner),* 783 F.3d 266, 270-74 (5th Cir. 2015) (en banc) (abrogating *In re Pro-Snax Distribs., Inc*., 157 F.3d 414 (5th Cir. 1998), and holding that compensable services are measured by their reasonableness and likely benefit at the time rendered, not by whether the estate's ultimate course of action later changed). See also *In re Garcia*, 335 B,R, at 724, citing *Roberts, Sheridan & Kobel PC. v. Bergen Brunswig Drug Co, (In re Mednel)*, 251 B.R. 103, 106 (9th Cir, BAO 2000).

The question presented by the Motion to Value and Avoid Junior Liens is therefore not whether that motion was carried through to a final order, but whether preparing and filing it was a reasonable, good-faith step toward reorganization at the time counsel undertook the work. Applying that standard, the work reflected in Category B185 (Motions to Avoid, All Filings, Communication, Hearings) benefited the estate for several independent reasons.

(1) The motion was a reasonable exercise of the Debtor-in-possession's business judgment when it was authorized. As of January 2026, before the Trustee's appointment, the Debtor's principal had represented to counsel that family members were prepared to advance funds to purchase the ranch property. Valuing the property and avoiding the junior judgment liens against it was the necessary legal predicate to that plan, Absent an order establishing that those liens attached to little or no equity, the family could not purchase or refinance the property free of them, and no plan of reorganization could have been built around that transaction. A Debtor-in-possession's choice of reorganization strategy, like a trustee's choice of how to administer estate property, is entitled to deference under the business-judgment standard long applied in bankruptcy practice. See *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp*.), 722 F.2d 1063, 1070-71 (2d Cir. 1983).

Counsel's work reflected and implemented that judgment based on the information the principal had supplied and which counsel had no basis at the time to doubt.

(2) The motion produced an immediate, independent litigation benefit: it strengthened the estate's negotiating position against the SBA's asserted claim of more than $2,000,000. The appraisal obtained and the valuation analysis prepared for the motion did not depend on the motion being granted to have value to the estate. An appraisal-supported valuation of the collateral narrows the factual disputes available to a $2,000,000 secured creditor, creates a record usable in settlement negotiations, and removes the "unknown value" variable that otherwise stalls resolution of a large secured claim. That benefit accrued to the estate as soon as the appraisal and supporting exhibits were prepared, independent of whether the motion was ultimately carried to a contested hearing.

(3) The valuation and lien-priority work remained useful to the estate after the Trustee's appointment, notwithstanding the change in strategy. The Trustee's decision to market and sell the property free and clear of liens under 11 U.S.C. § 363(f), rather than to pursue a lien-strip-and-refinance strategy, did not waste the earlier work product. The same title, appraisal, and lien-priority analysis prepared for the Motion to Value informed what liens would attach to the sale proceeds and in what priority, reducing the risk of costly disputes among lienholders at distribution. A successor fiduciary's decision to pursue a different, equally legitimate exit from the case reflects a change in strategy following a change in decision-maker; it is not a finding that the earlier work was unreasonable or without value when it was performed. See *Woerner*, 783 F.3d at 273-74.

(4) The motion was withdrawn, not denied on the merits. No court ever ruled that the Motion to Value and Avoid Junior Liens lacked merit. It was withdrawn by the Trustee, after her appointment, because she had independently elected to pursue a sale rather than a refinance; a business decision, not an adjudication that the motion was unfounded when filed. Compensation is not forfeited merely because a matter becomes moot through a change in the estate's direction rather than through an adverse ruling on the merits.

For these reasons, the work billed under Category B185 was both necessary to the administration of the case and reasonably likely to benefit and did benefit the estate at the time it was rendered, regardless of the Trustee's subsequent decision to pursue a sale rather than the refinance strategy the motion was designed to support.

**CATEGORIES OF EVENTS**

**AND EXPLANATION OF WORK PERFORMED**

The attached billing divides the billing into various categories which counsel has established to conform to the billing requirement of various courts that counsel appears throughout California, Colorado, Texas and Illinois. As this Court will note some of the categories where the Court would expect more activity may be rather slim since counsel did not bill for many of the items to keep the fees as low as possible.

The trustee did not seem to understand what normal abbreviations are. The following are abbreviations used by the billing program used by prior counsel.

RV= Review

Rev=Revise

Prep=Prepare

PC= Phone Conference

CT= Court Appearance

IDI= Initial Debtor Interview

POC=Proof of Claim

Stip=Stipulation

In addition, the program uses various categories based on forms from the Central District of California which are also used in the Northern District of California. The categories are as follows and are itemized on page 5 of the Invoice:

**B100: Client Communication**

This category involves all means of communication with the Debtor's president. It includes emails, text messages, in person meetings and travel time which could be

significant given the location of the physical premises of the Debtor. However, since there is an obscure division between this category and Case Administration, there is usually significant overlap.

| | | |
|---|---|---|
| Michael Totaro | 2.8 | $1820.00 |
| Maureen Shanahan (Not billed) | | |

**B110: Case Administration**

Where communication with the debtor also discusses procedures, tactics and specific actions the entry will usually fall within this category. This also included a lot of discussion re discrepancies in the tax returns and discrepancies between the projections of 1.8M a year to the actual income of $50,000 to $60,000 a month as indicated in the MOR's.

| | | |
|---|---|---|
| Maureen Shanahan | .3 | $ 195.00 |
| Michael Totaro | 16.9 | $10,985.00 |

**B130: IDI, 341, Status, Reports, Hearings, Travel**

This category deals with non-legal matters and routine events that occur in every Chapter 11 case. This category moves the case forward but involves a lot of time due to travel, waiting at hearings and communication with the Debtor concerning attendance and explanation of the process. The travel time has been voluntarily reduced since this Court prefers in court appearances. Since each hearing would involve 5 hours of travel time from Pacific Palisades, counsel has chosen to reduce the fees for travel. One hearing with the UST had to be held in person due to the lack of ability to communicate from Pacific Palisades due to the infrastructure problems resulting from the fires in Pacific Palisades.

| | | |
|---|---|---|
| Michael Totaro | 19.2 | $12,480.00 |

**B140: Monthly Operating Reports**

This is a specific category for dealing with Monthly Operating Reports. After the initial instruction there are always problems where the Debtor does not hire an accountant. In this case the President did not even complete the MOR's and there were continual problems with obtaining and indexing the receipts to determine the actual expenditures.

There was also an overlap with case administration as the receipts never matched the projections for income. The taxes always showed 1.8 to 1.9M a year, being about $150,000 a month, but their MOR's never showed income over $60,000 a month. Much of the discussion concerning this fell into the category of Case Administration which increased that category along with the fact that the principal insisted on seeking donations for every single purchase and thus Debtor presented numerous receipts with each report that had to be incorporated into the report. During the period of involvement there were six operating reports generated.

Michael Totaro 3.1 $ 2,015.00

**B150: Communication with Third Parties**

This category consisted mostly of communication with the first lender, the SBA and the attorney general. This covered the stipulations, problems with the suspended license and resolution of the problem so that the Debtor could take in minimal donations to feed the animals.

Michael Totaro 4.3 $2,795.00

**B195: Miscellaneous Filings, Communication, Travel**

This section appears to only have two entries. One to set the claims bar date and insider compensation and a second for reviewing a stip. Both are self-explanatory and minimal.

Michael Totaro 1.4 $910.00

**B150 - Communication with other 3rd Parties**

This involved communication with counsel of the holder of the First Deed of Trust, the UST and the Attorney General to work out various stipulations, visits to the property, appraisals, procedures, and use of funds problems. All contact with anyone who was not the Debtor falls in this category but it also overlaps with Case Administration.

Michael Totaro 6.1 $3965.00

**B185 - Motions to Avoid, All Filings, Communication, Hearings**

This work was undertaken because counsel was led to believe the family was going to advance funds to purchase the property. In doing so it was important to have an evaluation which would not only have stripped off most of the liens but also put Debtor in a better negotiating position with the SBA on its over $2,000,000 claim. The Trustee withdrew the motion presumably because she had already decided to sell the property free and clear of liens. That was not the approach the Debtor wanted to take with the work authorized. Thus, at the time of the Motion to Value, it was a valid step to take to allow the Debtor to purchase the property through family members subject to any overbid procedure.

In the initial Fee Application this entry was erroneously entered under 2-19-2026 and 2-21-2026 instead of 1-19-2026 and 1-21-2026 as indicated by the document being filed on 1-26-2026. Since Ms. Shanahan works from New Orleans the time slips were sent later than the work was completed.

See "Benefit to the Estate: The Motion to Value and Avoid Junior Liens," above, which describes the discrete tasks comprising this entry — legal research and analysis regarding valuation and avoidance of the junior judgment liens, drafting the motion and supporting declaration, review of title and lien-priority records, preparation of the valuation exhibits, and communication with the appraiser — and the specific benefit each conferred on the estate.

| | | |
|---|---|---|
| Maureen Shanahan | 7.5 | $4,875.00 |

**B220 - Claims Review, All Filings, Hearings, Travel**

This section is self-explanatory. When a claim came in it was reviewed forwarded to the President and then there was a call to discuss any ambiguities or concern the President may have. In addition, there were conversations with Fullerton and with the attorney for the SBA loan.

| | | |
|---|---|---|
| Michael Totaro | 4.8 | $3,120.00 |

///

///

## SUMMARY OF FEES AND COSTS

**`Total Fees:**

| | | |
|---|---|---|
| Maureen Shanahan | 7.8 | $ 5.070.00 |
| Michael Totaro | 52.5 | $34,125.00 |
| **Total Fees Sought:** | | **$39,195.00** |
| **Expenses:** | | **-0-** |

## CONCLUSION

The fact is that counsel was induced to perform much of the above work by the principal of the Debtor based on false information that could not be discovered in time to avoid the work. In addition, other work involved ongoing tasks necessary to the administration of the estate as Debtor's Counsel. Given the problems faced by counsel in this case, counsel submits the service for which compensation has been previously challenged were designed to benefit the estate at the time they were rendered. Additionally, the fees sought to be approved are within the guidelines and not excessive.

Counsel asks that this Court approve this application and order the fees to be paid by the Trustee forthwith.

Dated: September 6, 2026

Totaro & Shanahan, LLP

/s/Michael R. Totaro
Michael R. Totaro
Prior Counsel for Debtor