Leslie T. Gladstone, Esq. (SBN 144615)
Christin A. Batt, Esq. (SBN 222584)
Hilda Montes de Oca, Esq. (SBN 287605)
FINANCIAL LAW GROUP
5656 La Jolla Blvd.
La Jolla, CA 92037
Telephone: (858) 454-9887
Facsimile: (858) 454-9596
E-mail: HildaM@flgsd.com

Attorneys for Leslie T. Gladstone, Chapter 11 Trustee

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>VILLA CHARDONNAY HORSES WITH WINGS, INC.,<br><br>Debtor. | Case No.: 25-04245-JBM11<br><br>**TRUSTEE'S OPPOSITION TO THE SECOND FINAL APPLICATION FOR AWARD OF COMPENSATION AND REIMBURSEMENT OF EXPENSES, FILED BY MICHAEL TOTARO, ATTORNEY FOR DEBTOR**<br><br>Date: November 3, 2026<br>Time: 1:30 p.m.<br>Dept: Two (2)<br>Honorable J. Barrett Marum |

Leslie T. Gladstone ("**Trustee**"), chapter 11 trustee for the bankruptcy estate (the "**Estate**") of Villa Chardonnay Horses With Wings, Inc. ("**Villa Chardonnay**" **or** "**Debtor**") respectfully submits this Opposition to the *Revised First and Final Application for Award of Compensation and Reimbursement of Expenses of Michael Totaro as Attorney for Debtor* (the "**Second Fee Application**"). The Opposition is supported by the memorandum of points and

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

authorities cited herein, the Declaration of Leslie T. Gladstone filed concurrently herewith, and the record before the Court.[1]

## I.
## INTRODUCTION

Michael Totaro ("**Totaro**"), former counsel for the debtor-in-possession, filed the Second Fee Application on September 9, 2026, after the August 31, 2026 Administrative Claims Bar Date set by this Court. *See Court Modified Order on Ex Parte Application to Establish Chapter 11 Administrative Claims Bar Date and Section 503(b)(1)(D) Claims*, ¶ 5, ECF No. 241. Thus, Totaro's claim is barred from chapter 11 administrative priority treatment and any fees approved here will be a general unsecured claim. Moreover, the Second Fee Application also suffers the same fatal flaws as the earlier Fee Application filed by Totaro (the "First Fee Application") that was denied without prejudice. In the First Fee Application, the Court ruled that Totaro's time entries did not meet the standards under Section 330. Yet, Totaro has now presented the identical time records in support of the Second Fee Application, without clarifying or adding any of the information that the Court indicated was necessary to cure the deficiencies.

Totaro has yet again failed to meet his burden under 11 U.S.C. Section 330 to demonstrate that the services rendered prior to Trustee's appointment were reasonably likely to benefit the Estate or necessary to the administration of this case. The compensation requested in the Second Fee Application is for work that consists primarily of routine administrative tasks, much of which should have

[1] Trustee respectfully requests, pursuant to Rule 201 of the Federal Rules of Evidence, made applicable herein by Rule 9017 of the Federal Rules of Bankruptcy Procedure, that the Court take judicial notice of the case docket for the above-captioned case and each of the pleadings and other documents on file in the case, including without limitation those attached and marked as exhibits to the supporting declaration filed herewith.

been performed prior to the chapter 11 filing, and abandoned work product that Totaro has not demonstrated conferred a benefit to the Estate.

## II.
## STATEMENT OF FACTS

Villa Chardonnay was a non-profit animal sanctuary which housed hundreds of elderly and sick animals, including horses, cats and various farmed animals (collectively, the "**Animals**"). Debtor's principals Monika Kerber Perez ("**Kerber**") and Mercedes Flores ("**Flores**" and collectively with Kerber, the "**Villa Principals**") operated Villa Chardonnay out of real property encompassing approximately 45 acres located at 4554 and 4430 Boulder Creek Road, Julian, California (the "**Property**").

### A. The First Villa Chardonnay Chapter 11

Villa Chardonnay filed its first Chapter 11 on September 1, 2025 (the "First Chapter 11"). On September 13, 2025, Totaro filed the *Application by Debtor in Possession to Employ Michael R. Totaro, Maureen J. Shanahan, and the Law Offices of Totaro & Shanahan, LLP as General Insolvency Counsel* (the "**First Employment Application**"). [25-03692, ECF No. 17] In the First Employment Application, Totaro disclosed that he received a $5,000.00 retainer from Debtor, but the Retainer Agreement attached to the First Employment Application provides for a retainer of $7,500.00. [Gladstone Declaration, Exhibit A] Debtor's *Statement of Financial Affairs* also shows $7,500.00 as the total amount of compensation paid to Totaro. [Gladstone Declaration, Exhibit B]

On October 1, 2025, the First Chapter 11 was dismissed on a motion by the United States Trustee due to Debtor's failure to provide the required proof of insurance. [25-03692, ECF No. 45] A review of the docket for the First Chapter 11 shows that the Court did not enter an Order approving the First Employment Application and that Totaro did not file a fee application seeking approval of his attorney's fees for the First Chapter 11.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

**B. <u>The Kerber Chapter 7</u>**

On October 20, 2025, Totaro filed on behalf of Kerber the Kerber Chapter 7, bankruptcy case no. 25-04318-JBM7. In the *Disclosure of Compensation* filed with the petition, Totaro disclosed that he had received $838.00 as flat fee compensation for his legal services that included analysis of Kerber's financial situation, preparing the petition and schedules, and representing Kerber at the Section 341(a) meeting of creditors. [Gladstone Declaration, <u>Exhibit C</u>]

**C. <u>The Current Villa Chardonnay Chapter 11</u>**

Villa Chardonnay filed a voluntary chapter 11 petition, commencing this bankruptcy case (the "**Bankruptcy Case**") on October 14, 2025. On November 9, 2025, Totaro filed on behalf of Debtor an *Application by Debtor in Possession to Employ Michael R. Totaro, Maureen J. Shanahan, and the Law Offices of Totaro & Shanahan, LLP as General Insolvency Counsel* (the "**Totaro Employment Application**"). [ECF No. 22] In the Totaro Employment Application, Totaro disclosed that he received $2,000.00 from Debtor to cover the filing fee and miscellaneous costs, and the *Statement of Financial Affairs* and *Disclosure of Compensation* reflect that Totaro received $1,738.00 for the filing fee. There remains no explanation for the remaining $262.00. An order was not uploaded on the Totaro Employment Application until July, 2026. The *Court Modified Order on the Totaro Employment Application* was entered on July 24, 2026. [ECF No. 245]

On January 23, 2026, senior secured creditors filed an *Emergency Motion to Appoint Chapter 11 Trustee*. [ECF No. 63]. Trustee was thereafter appointed as chapter 11 trustee of the Bankruptcy Case on January 29, 2026 ("**Trustee's Appointment Date**"). [ECF Nos. 84 and 89].

On March 16, 2026, Totaro filed his *Motion to Be Relieved as Counsel* and his Declaration in Support (the "**Withdrawal Motion**"). [ECF Nos. 143 and 145] Totaro neglected to upload an order granting the Withdrawal Motion until June,

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

2026. The Order Granting the Withdrawal Motion was entered on June 15, 2026. [ECF No. 186]

On July 12, 2026, Totaro filed the First Fee Application. [ECF No. 220] The First Fee Application, wherein Totaro sought approval of attorney's fees for the Bankruptcy Case totaling $45,995.00, was the first notice to Trustee that any outstanding fees were owed to Totaro. On July 27, 2026, Trustee filed her opposition to the First Fee Application [ECF No. 250], which was joined by The Ark Watch Foundation and Celine Myers. [ECF No. 251]

On August 6, 2026, the Court issued its Tentative Ruling denying the First Fee Application without prejudice, so that Totaro could correct the errors:

> With respect to the balance of the fees sought, Applicant's time entries are nearly all lumped or so vague that it is difficult to tell what work Applicant performed and whether or how that work benefited the estate. Instead of reducing fees, the Court will provide Applicant an opportunity to revise the time entries to eliminate lumping and to fully describe the work Applicant performed.

*Tentative Ruling Denying the Original Fee Application*, ECF No. 261.

On July 14, 2026, Trustee filed her *Ex Parte Application to Establish Chapter 11 Administrative Claims Bar Date*. [ECF No. 226] On July 22, 2026, the Court granted Trustee's Application and ordered that professionals employed by Debtor and any other parties in interest who believe they may be entitled to an administrative expense priority claim must file by August 31, 2026 (the "**Administrative Claim Bar Date**"), a motion for approval of their chapter 11 administrative fees and expenses. *See Court Modified Order on Ex Parte Application to Establish Chapter 11 Administrative Claims Bar Date and Section 503(b)(1)(D) Claims*, ECF No. 241 (the "**Administrative Claim Bar Date Order**"). The Administrative Claim Bar Date Order provides that any professionals or other parties in interest who believe they may be entitled to administrative expense priority are prohibited from asserting chapter 11

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

administrative priority if a motion is not filed on or before August 31, 2026. *Id.* at ¶ 5.On September 9, 2026, after the Administrative Claims Bar Date, Totaro filed the Second Fee Application. [ECF No. 288] Trustee opposes the Second Fee Application, for the reasons explained below.

## III. ARGUMENT

### A. TOTARO CANNOT ASSERT A CHAPTER 11 ADMINISTRATIVE PRIORITY CLAIM FOR THE FEES REQUESTED IN THE REVISED FEE APPLICATION.

Generally, fees awarded under Section 330(a) are administrative expenses paid from the bankruptcy estate ahead of most unsecured creditor claims. This priority has real consequences for creditors and should not be extended to claims not entitled to such priority. *See, e.g., In re Millenkamp Cattle, Inc.*, 2026 Bankr. LEXIS 1071, *9 (Bankr. D. Idaho Apr. 27, 2026). In cases where an estate lacks sufficient assets to pay all claims in full, attorney fee awards directly reduce the funds available for distribution to unsecured creditors. *Id.*

Totaro filed the Second Fee Application on September 9, 2026, in direct violation of the Administrative Claims Bar Date Order. *See Court Modified Order on Ex Parte Application to Establish Chapter 11 Administrative Claims Bar Date and Section 503(b)(1)(D) Claims*, ¶ 5, ECF No. 241. Although styled as a "Revised" application, there is no basis to allow the late filing, as the First Fee Application was denied and so the Second Fee Application is a new, independent filing rather than an amendment to an active, ongoing pleading. *See In re Reeves*, 127 B.R. 866, 869 (Bankr. S.D. Cal. 1991) (the effect of a denial without prejudice is to leave [the moving party] in the same position as if the action had never been filed). Also, Totaro has not even sought to justify the late filing whatsoever and clearly received notice of the Administrative Claim Bar Date

Order. Moreover, Totaro has exhibited a pattern of delay in this Bankruptcy Case that should not be condoned by the Court.

The Court's language was clear:

> If a motion is not filed by August 31, 2026, then said professionals, employees, vendors, customers, utility service providers, or any other parties in interest who believe they may be entitled to administrative expense priority will be prohibited from asserting chapter 11 administrative priority and will not be paid any filed claims as a chapter 11 administrative priority in Debtor's bankruptcy case.

*Administrative Claim Bar Date Order*, ¶ 5, ECF No. 241.

For all of the above reasons, Totaro cannot assert a chapter 11 administrative priority claim for the fees in the Second Fee Application. Any fees requested in the Second Fee Application that are approved should be paid with other general unsecured claims.

## B. **APPLICANT HAS NOT MET HIS BURDEN TO DEMONSTRATE THAT THE SERVICES WERE REASONABLY LIKELY TO BENEFIT THE ESTATE.**

### a. **Legal Standard**

Bankruptcy Code Section 330(a)(1) authorizes the court to award to an attorney employed under Bankruptcy Code Section 327(a) for "reasonable compensation for actual, necessary services" rendered by the attorney and for "reimbursement for actual, necessary expenses." 11 U.S.C. Section 330(a)(1)(A) and (B). The Court retains the discretion, upon motion or *sua sponte*, to "award compensation that is *less* than the amount" requested. *In re Buckridge*, 367 B.R. 191, 200-201 (2007) (emphasis in original); *see also In re Eliapo*, 468 F.3d 592, 597 (9th Cir. 2006).

Under Section 330(a)(3), the Court assesses "the nature, the extent, and the value" of the legal services provided when determining the amount of reasonable compensation to award, taking into consideration "all relevant factors," including:

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [title 11].

11 U.S.C. § 330(a)(3). The burden is on the person seeking compensation to establish the value of his services. *In re Coastal Equities, Inc.*, 39 B.R. 304, 310 (Bankr. S.D. Cal. 1984)

**b. <u>Totaro's Revised Fee Application Should Be Denied for Failure to Clarify the Time Records as Directed by the Court</u>.**

Federal Rule of Bankruptcy Procedure 2016 requires an entity seeking compensation to submit a detailed statement of the time expended along with the fee application. In fact, the Court denied the First Fee Application, specifically to allow Totaro an opportunity to "revise the time entries to eliminate lumping and to fully describe the work [Totaro] performed." *Tentative Ruling Denying the Original Fee Application*, ECF No. 261.

Notwithstanding this clear direction, the time entries filed in support of the Second Fee Application are verbatim the exact same time entries that the Court found "all lumped or so vague that it is difficult to tell what work Applicant performed and whether or how that work benefitted the estate." *Id.* For example, entries such as "RV file and prepare papers," "strategy conference," "review document re bankruptcy," "prepare documents re bankruptcy" appear again,

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

without any additional detail included. Similar unclear time record descriptions have been found to amount to a failure to sustain the required burden of proof. *See In re Coastal Equities, Inc.*, 39 B.R. at 311.

Again, Totaro's billing records reflect extensive overlap between categories and vague task descriptions that make it impossible to determine whether services were necessary or duplicative. For example, there are two entries for "RV Loan docs" appearing twice—once in December 9, 2025, for 1.50 hours and again on January 17, 2026, for 1.50 hours—suggesting duplicative work. Totaro himself acknowledges that "there is an inherent overlap between this category and Case Administration" with respect to client communications and similarly admits overlap between Case Administration and Communication with Third Parties. *Revised Fee Application*, 7:1-8:25.

Even though he was afforded the opportunity to file the Second Fee Application, Totaro did not deign to revise his time records to provide sufficiently detailed information so that the Court could determine what services were reasonably performed and whether the services were performed at a reasonable rate and within a reasonable amount of time. *See In re Basham*, 208 B.R. 926 (B.A.P. 9th Cir. 1997). Totaro has not met his burden here and the Second Fee Application should be wholly denied.

**c. <u>Applicant Has Not Met His Burden to Demonstrate that the Services Were Reasonably Likely to Benefit the Estate</u>.**

Section 330(a)(4)(A) prohibits allowing compensation for services that were not either reasonably likely to benefit the debtor's estate nor necessary to its proper administration. 11 U.S.C. Section 330(a)(4)(A). Likewise, hours not reasonably expended because they are "excessive, redundant, or otherwise unnecessary" must be excluded from the lodestar amount. *Hensley*, 461 U.S. at 434.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

Totaro must demonstrate that the services performed satisfy the benefit-to-estate requirement under Section 330(a)(4)(A). The Second Fee Application time entries are vague and difficult to determine whether they were designed to benefit the Debtor's administration or whether they were designed to benefit Debtor's principal.

The time records are replete with services that were not reasonably likely to benefit the Estate at the time they were rendered (*e.g.,* insider compensation and cash collateral entries that were apparently never sought, substantial time spent reviewing title and loan records that assumedly would have been done prior to filing, analysis of claims and adversary lawsuit that did not appear to result in any benefit to the Estate and discussions with Villa Principals and/or alleged family of Villa Principals to fund a purchase by Villa Principals).

To be entitled to compensation from the estate, the efforts of an attorney for a debtor not in possession must have benefitted the administration of the estate. *In re Coastal Equities, Inc.*, 39 B.R. at 310-11 (holding that the request for compensation for time spent in preparation of a plan of reorganization which was unaccompanied by a disclosure statement and was never voted should be reduced).

The Court must assess whether the services outlined in the Second Fee Application were reasonable and necessary at the time they were rendered. *In re TBH19, Ltd. Liab. Co.*, 668 B.R. 881 (B.A.P. 9th Cir. 2025). Trustee is not suggesting that professionals must guarantee any particular result for unsecured creditors. Totaro must, however, demonstrate that his services were reasonably likely to benefit the Estate.

In the Second Fee Application, Totaro defends his services by blaming Kerber for providing "patently false" information and asserts that he was induced to perform "much" of the work described "based on false information that could

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla, California 92037

not be discovered in time to avoid the work." *Revised Fee Application*, 2:3-8; 10:8-10.

Belying his assertion that Kerber's false statements could not have been discovered in time to prevent work that provided no benefit to the Estate, Totaro himself identifies the red flags in the Second Fee Application that would have caused a reasonable attorney to inquire further:

- "[i]n this case the President did not even complete the MOR's and there were continual problems with obtaining and indexing the receipts to determine the actual expenditures." *Revised Fee Application*, 7:26-28.
- "the receipts never matched the projections for income. The taxes always showed 1.8 to 1.9 million a year, being about $150,000 a month, but their MORS never showed income over $60,000 per month. *Id.*, 8:2-3.
- "This [category] also included a lot of discussions re discrepancies in the tax returns and discrepancies between the projections […] to the actual income…" *Id.*, 7:8-10.

As detailed above, Totaro filed no less than three cases on behalf of Villa Chardonnay and/or Kerber individually. The time records accompanying the Second Fee Application show no entries for work done by Totaro until October 15, 2025, one day after the Bankruptcy Case was filed.[2] Presumably, Totaro would have engaged in pre-filing due diligence here, or have learned facts in his dealings with Kerber in the two prior cases he filed on her behalf, that would have raised red flags by the time he got to this third case. It defies credulity that Totaro

[2] If any sum for prepetition work remains unpaid, it should have been disclosed in the Employment Application filed by Totaro in the Bankruptcy Case.

now argues, with no supporting evidence, that '[t]his was not a matter of being lax in obtaining information."

The Bankruptcy Code Sections and Rules covering the employment, compensation, and dealings between a debtor and the debtor's attorney are "premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor and his attorney to protect creditors of the estate and the debtor." *In re Shirley*, 134 B.R. 940, 945 (B.A.P. 9th Cir. 1992).

Trustee was previously informed by Totaro that he was attempting to obtain a substantial post-petition loan or funding from Kerber's father to fund Totaro's own finances. With no retainer disclosed in the Bankruptcy Case to fund Totaro's fees, and Totaro's active solicitation of funding from Kerber's family, it appears that it was never intended for the Debtor to fund Totaro's fees in the Bankruptcy Case.[3]

The time records here are not sufficient to identify the specific work performed, and so the Court cannot determine what services were reasonably performed and whether the services were performed at a reasonable rate and within a reasonable amount of time. Even though Totaro was given an additional opportunity to demonstrate the value of his services in the Second Fee Application, he again fails to meet his burden under Section 330 to show that his services were reasonably likely to benefit the estate or necessary for proper administration of the Bankruptcy Case.

## CONCLUSION

Based on the deficiencies identified above, Trustee respectfully requests that the Court deny the Second Fee Application or exercise its discretion to

[3] Trustee also remains concerned whether the compensation contemplated by Totaro and Debtor's principal Kerber would have created an actual conflict for Totaro in his representation of Villa Chardonnay, that at least should have been disclosed in the Totaro Employment Application.

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037

substantially reduce any fee award considering the pervasive documentation deficiencies, potential conflicts of interest, and lack of demonstrated benefit to the Estate. If the Court is inclined to award any fees requested in the Second Fee Application, Trustee requests that such fees constitute a general unsecured claim.

Respectfully submitted,

Dated: September 23, 2026

FINANCIAL LAW GROUP

By: _/s/ Hilda Montes de Oca_______
Hilda M. Montes de Oca, Esq.
Attorneys for Leslie T. Gladstone, Trustee

FINANCIAL LAW GROUP
5656 La Jolla Boulevard
La Jolla. California 92037