**Michael R. Totaro 102229**
**Totaro & Shanahan, LLP**
**P.O. Box 789**
**Pacific Palisades, CA 90272**
**(310) 804 2157**
**Ocbkatty@aol.com**

**Former Attorneys for Debtor in Possession**

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION**

| | |
|---|---|
| **In re**<br><br>**Villa Chardonnay Horses with Wings, Inc**<br><br>**Debtor in Possession.** | **Case No. 3:25-bk-04245-JBM11**<br><br>**Chapter 11**<br><br>**SUPPLEMENTA DECLARATION OF MICHAEL R. TOTARO IN SUPPORT OF REPLY TO OPPOSITION TO REVISED FIRST AND FINAL FEE APPLICATION AND EXHIBIT 1**<br><br>**Date: November 3, 2026**<br>**Time: 1:30 p.m.**<br>**Ctrm: 2 Rm 118**<br>**325 W. F St.**<br>**San Diego, CA 92101**<br><br>**HON. J. BARRETT MARUM** |

**SUPPLEMENTAL DECLARATION OF MICHAEL R. TOTARO**
**IN SUPPORT OF REVISED FIRST AND FINAL FEE APPLICATION**
**AND IN REPLY TO TRUSTEE'S OPPOSITION [Dk. 299]**

I, Michael R. Totaro, declare:

1. I am an attorney licensed to practice before all courts of the State of California and before this Court, and a partner in Totaro & Shanahan, LLP (the "Firm"), former general insolvency counsel to the Debtor. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would testify competently to them.

2. The Court's tentative ruling on the Firm's first application [Dkt  261] stated that the time entries made it difficult to tell what work was performed and whether or how that work benefited the estate. This declaration is submitted to supply that information. It describes, task by task, the work the Firm performed between October 15, 2025 and January 29, 2026, why it was done, and what it accomplished for the estate. A revised itemized statement in which each entry is fully described and no tasks are lumped is attached as Exhibit "1."

**A. Background of the Representation**

3. I worked with the Debtor's president, Monika Kerber Perez, for approximately two years before the first chapter 11 case was filed. The Debtor operated an animal sanctuary on approximately 45 acres in Julian, California (the "Property"), caring for hundreds of elderly, sick and rescued animals. All of my instructions came from Ms. Kerber as the Debtor's president and, after the petition, as the manager of the debtor in possession.

4. The pre-filing analysis for this Debtor was performed in connection with the first chapter 11 case, No. 25-03692-JBM11. That work was billed on Invoice No. 129 in the amount of $13,020.00. The Firm never collected any of it. On October 13, 2025, I issued a credit memo writing off the entire $13,020.00. No part of that work is included in this application, and the Firm does not hold or assert any claim against the Debtor or the estate for pre-petition services. That is why the time records begin on October 15, 2025.

5. The Debtor filed this case on October 14, 2025. to stop a foreclosure  Had the

case not been filed, the Property would have been lost to foreclosure, and the sale proceeds the Trustee now expects to administer for creditors would not exist.

**B. The Work Performed and Its Benefit to the Estate**

6. *Keeping the case alive and the Property in the estate (Categories B110, B130).* The first case was dismissed on October 1, 2025 because the Debtor had not provided proof of insurance. In this case I worked with the Debtor's principal and its insurance broker to obtain coverage and provided proof of insurance to the Office of the United States Trustee. I also prepared the Debtor's principal for the Initial Debtor Interview and attended it, attended the Section 341(a) meeting, and attended the status conference and other hearings held before January 29, 2026.

Each hearing required approximately five hours of round-trip travel from Pacific Palisades, and I reduced the travel time I billed. Because these requirements were met, the case was not dismissed a second time, the automatic stay stayed in effect, and the Property remained in the estate. It is that Property the Trustee is now administering.

7. *Monthly operating reports (Category B140).* The Debtor's president did not prepare the monthly operating reports, and the Debtor had no accountant. I gathered the Debtor's receipts, which were numerous because the president sought a separate donation for nearly every purchase, organized them, and prepared and filed three monthly operating reports. Filing those reports was mandatory, and failing to file them is cause for dismissal. The reports also produced the first reliable record of the Debtor's actual income, which never exceeded approximately $60,000 per month.

8. *Restoring the Debtor's ability to accept donations (Category B150).* When the case was filed, the Debtor's status with the California Attorney General's Registry of Charitable Trusts was Donations were the Debtor's only source Susp funds to feed and care for the animals. I worked with the Attorney General's office to resolve the problem so that the Debtor could lawfully accept at least minimal donations to feed the animals. That kept the animals fed without any cost to the estate while the case was pending.

9. *Secured creditors (Category B150).* I communicated with counsel for Investor's Private Mortgage Lending, the holder of the first deed of trust and River Falls and with counsel for the Small Business Administration, whose claim exceeds $2,100,000.

10. *Claims and liens (Category B220).* I reviewed each proof of claim as it was filed, in all, including the SBA's claim of approximately $2,139,920, forwarded each one to the Debtor's president, and discussed any problems with her. Together with the title review, this produced a schedule of approximately $6.6 million in recorded liens against the Property and the order of their priority. That analysis is in the record and is available to the Trustee for the sale and for distributing the proceeds.

11. *The Motion to Value (Category B185).* My partner, Maureen J. Shanahan, researched and drafted the Debtor's Motion to Value Real Property and Avoid Junior Liens, prepared its exhibits, and communicated with the appraiser. The motion was filed on January 26, 2026 [Dkt. 76.] three days before the Trustee was appointed. The time entries for that work were originally misdated February 19 and 21, 2026. The drafting and research work was in fact performed on January 19 and 21, 2026, as the filing date of the motion shows. The motion was supported by the appraisal of William G. Wilson, which valued the Property at $3,625,000 as of October 6, 2025. One creditor had asserted a value of $2,500,000. At the time, the Debtor's president had represented that family members would fund a purchase of the Property. Establishing value and the status of the junior liens was the necessary first step toward that transaction and toward negotiating with the SBA. The Trustee later withdrew the motion because she chose to sell the Property instead. The motion was never denied on its merits, and the appraisal placing the value at more than $1,000,000 above that creditor's figure remains in the record.

12. *Investigating the Debtor's finances (Category B110).* Much of the Case Administration time was spent trying to obtain and verify information the Debtor's president did not volunteer. The Debtor did not initially produce its tax returns. When it did, most bore filing stamps, but at least four did not, and it took weeks to obtain proof that they had been filed. The

returns reported donations of $1.8 to $1.9 million a year, but the receipts never supported more than about $60,000 a month. I questioned the president about this discrepancy repeatedly. To verify the represented family funding, I exchanged emails with the person identified as Ms. Kerber's father, participated in a video conference with him, ran a background check that confirmed he is a real and prominent architect and professor, and confirmed with Merrill Lynch that an account had been opened for the funds. I later learned from Merrill Lynch that the account was never funded. After the Trustee's appointment, I told her what I had learned.

13. The discrepancies were unusual because the reported income was overstated rather than understated. In my experience, people do not overstate their income to taxing authorities, and other bankruptcy practitioners I consulted could not explain why anyone would. After the Trustee was appointed, I learned that a California charity reporting gross revenue of $2 million or more must have its financial statements audited, and that reporting just under that amount may have served to avoid an audit. I also learned only after the appointment that the Debtor's principals held strong anti-government views. I had no reason to know of either before then.

**C. Billing Judgment**

14. The Firm has removed all time after January 29, 2026, including the on-site inspection of the Property I attended at the Trustee's request. In addition, I did not bill for many telephone calls and emails from the Debtor's president, and I reduced my travel time.

15. The Revised Application listed Category B150 twice. The second listing, 6.10 hours and $3,965.00 at page 8, lines 21–26, was a figure left over from the amount requested. The correct totals are: B100, 2.80 hours ($1,820.00); B110, 17.20 hours ($11,180.00); B130, 19.20 hours ($12,480.00); B140, 3.10 hours ($2,015.00); B150, 3.4 hours ($2,210.00); B185, 7.50 hours ($4,875.00); B195, 1.40 hours ($910.00); and B220, 4.80 hours ($3,120.00). Together these come to 60.30 hours and $38,610.00

**D. Specific Points Raised by the Trustee**

16. *The two "RV Loan docs" entries.* The December 9, 2025 entry (1.50 hours) was

for review of Loan document forth existing loans. The January 17, 2026 entry (1.50 hours) was for review of a proof of claim no. 11. They concerned different documents and are not duplicates.

17. *The $262.00.* The Debtor gave me $2,000.00 for the filing fee and costs in this case. The filing fee was $1,738.00. I have received no compensation for fees in this case.

18. *The so-called loan.* Over the past several years I have had serious health problems that sometimes left me unavailable when Ms. Kerber called, and I eventually explained why. After that, Ms. Kerber volunteered that her father was wealthy and offered to have him lend me money to refinance my home. I never asked for any loan.

19. Each time she raised it, and she raised it a number of times, as did Ms. Flores, I told her that nothing of the kind could be discussed while I represented the Debtor, and I ended the conversation. No loan was made, no terms were discussed, no documents were exchanged, and neither I nor the Firm has received anything from Ms. Kerber, her father or any member of her family.

20. I told the Trustee about these approaches myself. The entries in my time records that refer to the father or to family funds concern the proposed purchase of the Property, not any loan to me. Looking back, I believe these repeated offers were part of the same pattern of assurances that the money was "coming next week," was "waiting for the paymaster," or "had to come from Germany."

21. I accepted this representation in good faith and did the work the debtor in possession asked me to do, on the information the principal gave me and the information I could independently verify. I acted on that information until it became clear that no funds would ever come.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 27, 2026, at Pacific Palisades, California.

/s/ Michael R. Totaro
Michael R. Totaro

# EXHIBIT "A"

**REVISED ITEMIZED STATEMENT OF SERVICES (Invoice No. 135, restated)**

Totaro & Shanahan, LLP — Former General Insolvency Counsel to Debtor

In re Villa Chardonnay Horses With Wings, Inc., Case No. 25-04245-JBM11

Period: October 15, 2025 through January 29, 2026

Rate: $650.00 per hour. MRT = Michael R. Totaro; MJS = Maureen J. Shanahan. Each entry of Invoice No. 135 is restated below with a full description of the task and its purpose. Entries that combined several tasks are broken out into their component tasks. Hours and amounts are unchanged; total 60.30 hours, $38,195.00. No time after the Trustee's appointment on January 29, 2026 is included. Pre-petition work (Invoice No. 129, $13,020.00) was written off in full on October 13, 2025 and is not included.

### B100 — Communications with the Debtor's President

| Date | Atty | Hrs. | Amount | Description of Services and Purpose |
|---|---|---|---|---|
| 01/15/2026 | MRT | 0.20 | $130.00 | Review of email from the Debtor's president regarding her communications concerning the operations and evaluation of any effect on the case. |
| 01/25/2026 | MRT | 0.80 | $520.00 | Telephone conference and follow-up email to the Debtor's president regarding the adversary lawsuit by and its effect on the estate and the Property. |
| 01/25/2026 | MRT | 0.90 | $585.00 | Emails with the Debtor's president regarding the represented family contribution to fund a purchase of the Property and a plan, including proof of funds, timing source |
| 01/26/2026 | MRT | 0.90 | $585.00 | Further series of emails with the Debtor's president regarding the family contribution, including verification of Merrill Lynch account . |
| | | **2.80** | **$1,820.00** | **Category total** |

### B110 — Case Administration

| Date | Atty | Hrs. | Amount | Description of Services and Purpose |
|---|---|---|---|---|
| 10/15/2025 | MRT | 2.00 | $1,300.00 | Review of title reports for all six assessor's parcels owned by the Debtor to identify every recorded lien, its holder and its priority, for the schedules and the U.S. Trustee's compliance requirements. |
| 10/16–10/17/2025 | MRT | 4.00 | $2,600.00 | Completion of the U.S. Trustee's initial compliance requirements over two days: (a) 1. 5 hrs, opening debtor-in-possession accounts; (b) .8 hrs, obtaining and submitting proof of insurance (the prior case was dismissed for lack of proof of insurance); (c) 1.7 Rv and complete all other compliance items]. |
| 11/06/2025 | MRT | 0.20 | $130.00 | Review of requests for special notice filed by Mannex and Fullerton |
| 11/22/2025 | MRT | 3.10 | $2,015.00 | (a) .3 hrs, review of the U.S. Trustee's updated list of deficiencies; (b) .7 hrs, telephone conferences with the Debtor's president to obtain missing information; (c) 1 hrs, amending all schedules; (d) 1.1 hrs, review of state court filings to add pending lawsuits and claims to Schedule B and the Statement of Financial Affairs. |
| 11/22/2025 | MRT | 0.90 | $585.00 | Review of the lawsuit filed by Ron Allen to schedule it accurately and evaluate its effect on the estate. |
| 11/23/2025 | MRT | 0.30 | $195.00 | Telephone conference with the Debtor's president regarding the documents still needed to satisfy the U.S. Trustee's requirements. |
| 12/09/2025 | MRT | 1.50 | $975.00 | Review of loan documents, Note & DOT and all related disclosures Notices in favor of Private Mortgage Lending provided by the |

| | | | | |
|---|---|---|---|---|
| | | | | Debtor, to determine the amount, terms and priority of the first-position debt against the Property. |
| 12/10/2025 | MRT | 2.50 | $1,625.00 | (a) .6 hrs,. telephone conferences with the Debtor's president regarding claims (b) .7 hrs, telephone call with creditor Montgomery regarding Lawsuit (c) .9 hrs, review recent correspondence letters from ; (d) 3 hrs, email to king and the U.S. Trustee regarding compliance |
| 12/17/2025 | MRT | 0.50 | $325.00 | Preparation of proposed orders on the Debtor's motion to set a claims bar date and its motion regarding insider compensation. |
| 12/25/2025 | MRT | 0.40 | $260.00 | Emails with the Debtor's president and Chapter 7 Trustee in the Kerber case regarding the effect on the Debtor's debt. |
| 01/17/2026 | MRT | 1.50 | $975.00 | Review of additional loan document sthat came to light after Proof of Claim No. 7 (relating to the first loan) was filed on or about 12/24/2025; these were different documents from those reviewed on 12/09/2025, and the review reconciled the claimed balance before the Motion to Value was filed. |
| 01/22/2026 | MJS | 0.30 | $195.00 | Review of the list of structures on the Property for insurance coverage; telephone conference with the Debtor's president regarding the same. |
| | | **17.20** | **$11,180.00** | **Category total** |

**B130 — Initial Debtor Interview, § 341(a) Meeting, Status Conferences, Hearings and Travel**

| Date | Atty | Hrs. | Amount | Description of Services and Purpose |
|---|---|---|---|---|
| 11/04/2025 | MRT | 2.50 | $1,625.00 | (a) .7 hrs, preparation of the Debtor's president for the Initial Debtor Interview; (b) .8 hrs, attendance at the Initial Debtor Interview; (c) .3 hrs, telephone conference with the president afterward regarding information the U.S. Trustee requested; (d) hrs, travel. |
| 11/16/2025 | MRT | 3.10 | $2,015.00 | (a) .4 hrs, review of the U.S. Trustee's compliance list; (b) 1.8. hrs, obtaining the required documents and signatures from the Debtor; (c) .9 hrs, amending the schedules. |
| 11/19/2025 | MRT | 2.10 | $1,365.00 | (a) .7. hrs, preparation with client for the § 341(a) meeting; (b) 1 hrs, attendance at the § 341(a) meeting; (c) .4 review of the deficiencies identified at the meeting. |
| 11/28/2025 | MRT | 1.00 | $650.00 | Preparation of the Debtor's chapter 11 status report for the status conference. |
| 12/13/2025 | MRT | 5.00 | $3,250.00 | Travel from Pacific Palisades to San Diego and back (approximately 137 miles each way; about 2 hours 45 minutes each way without traffic, and typically 3 hours or more with traffic), and attendance at the chapter 11 status conference. Actual time was approximately 5 hours and 45 minutes only 5.0 hours are billed, a voluntary reduction of travel time. |
| 01/07/2026 | MRT | 3.00 | $1,950.00 | Round trip from Pacific Palisades to San Diego (approximately 274 miles) and attendance at the continued § 341(a) meeting, which the U.S. Trustee required to be held in person. Actual time approximately 5.5 hours; only 3.0 hours billed, a voluntary reduction of travel time. |
| 01/27/2026 | MRT | 2.50 | $1,625.00 | Round trip from Pacific Palisades to San Diego (approximately 274 miles) and attendance at the hearing required on motion to appoint chapter 11 trustee. Travel time alone over 5.5 hours . approximately 5.5 hours; only 2.5 hours billed, a voluntary reduction of travel time. |
| | | **19.20** | **$12,480.00** | **Category total** |

## B140 — Monthly Operating Reports

| Date | Atty | Hrs. | Amount | Description of Services and Purpose |
|---|---|---|---|---|
| 12/20/2025 | MRT | 1.20 | $780.00 | Collection and organization of the Debtor's receipts and preparation of the October 2025 monthly operating report, which the Debtor's president did not prepare. |
| 12/27/2025 | MRT | 1.10 | $715.00 | Preparation of the November MOR 2025 from the Debtor's receipts. |
| 01/06/2026 | MRT | 0.80 | $520.00 | Preparation and review of the December 2025 monthly operating report from Debtor's receipts |
| | | **3.10** | **$2,015.00** | **Category total** |

## B150 — Communications with Third Parties

| Date | Atty | Hrs. | Amount | Description of Services and Purpose |
|---|---|---|---|---|
| 10/21/2025 | MRT | 0.50 | $325.00 | (a) .1 hrs., review of emails from the U.S. Trustee regarding insurance coverage for the Debtor's volunteers; (b) .1 hrs, telephone conference with the Debtor's president regarding the same; (c) .3 hrs, telephone conference with the Debtor's insurance agent to obtain the coverage. |
| 01/20/2026 | MRT | 0.10 | $65.00 | Review of emails from King regarding inspection of the Property. |
| 01/20/2026 | MRT | 0.10 | $65.00 | Emails with King regarding W-9 forms. |
| 01/21/2026 | MRT | 0.10 | $65.00 | Review of email from King regarding insurance coverage. |
| 01/21/2026 | MRT | 0.50 | $325.00 | Communications with counsel for Private Mortgage lending regarding a stipulation for use of cash collateral, so the Debtor could pay operating expenses, including care of the animals. |
| 01/22/2026 | MRT | 0.90 | $585.00 | Further communications with Mortgage Lender regarding open issues in the cash collateral stipulation, and review of the draft stipulation. |
| 01/22/2026 | MRT | 1.20 | $780.00 | [(a) .6 hrs, telephone conference with Ricik Citron, attorney to — identify issues regarding a possible sale of the non-profit; (b) .4 hrs, email analysis of the proposed sale; (c) .2 hrs, telephone conference and email with the Debtor's president regarding the proposed sale. |
| 01/23/2026 | MRT | — | No charge | Review of cease-and-desist letter ; telephone conference with the Debtor's president. (Not billed.) |
| | | | | |
| | | **3.4** | **$2,210.00** | **Category total** |

## B185 — Motion to Value Real Property and Avoid Junior Liens

| Date | Atty | Hrs. | Amount | Description of Services and Purpose |
|---|---|---|---|---|
| 01/19/2026 | MJS | 4.00 | $2,600.00 | Legal research on valuation under 11 U.S.C. § 506(a) and avoidance of wholly unsecured liens under § 506(d) in chapter 11; drafting of the Debtor's Motion to Value Real Property and Avoid Junior Liens and supporting declaration, covering the Property's three parcels and approximately $6.6 million in recorded liens. Purpose: to establish the Property's value and the unsecured status of the junior liens, as the first step toward the family-funded purchase the Debtor's president represented, and to strengthen the Debtor's position against the SBA's claim of more than $2.1 million. (Previously misdated 02/19/2026; motion filed 1/23/2026 Dkt nos. 68 & 69 |

| | | | | |
|---|---|---|---|---|
| 01/21/2026 | MJS | 3.50 | $2,275.00 | Preparation of exhibits to the Motion to Value, including the lien and priority schedule; review of the appraisal of William G. Wilson valuing the Property at $3,625,000 as of 10/06/2025; telephone conference with the appraiser regarding the appraisal and his supporting declaration. (Previously misdated 02/21/2026.) |
| | | **7.50** | **$4,875.00** | **Category total** |

### B195 — Miscellaneous Filings

| Date | Atty | Hrs. | Amount | Description of Services and Purpose |
|---|---|---|---|---|
| 11/27/2025 | MRT | 0.80 | $520.00 | Preparation of the Debtor's motion to set a claims bar date and its motion regarding compensation of insiders. |
| 01/22/2026 | MRT | 0.60 | $390.00 | Review of motion for approval of the cash collateral stipulation. |
| | | **1.40** | **$910.00** | **Category total** |

### B220 — Claims Review

| Date | Atty | Hrs. | Amount | Description of Services and Purpose |
|---|---|---|---|---|
| 12/01/2025 | MRT | 0.20 | $130.00 | Review of Proof of Claim No. 1 filed by Jeff Capital Systems forwarded it to the Debtor's president and conferred regarding any objection. |
| 12/02/2025 | MRT | 0.80 | $520.00 | Review of Proof of Claim No. 2 filed by the California Labor Commissioner; forwarded it to the Debtor's president and conferred regarding any objection. |
| 12/03/2025 | MRT | 0.70 | $455.00 | Review of Proof of Claim No. 3 filed by the Internal Revenue Service; forwarded it to the Debtor's president and conferred regarding any objection. |
| 12/20/2025 | MRT | 0.20 | $130.00 | Review of amended Proof of Claim No. 2 filed by the Labor Commissioner. |
| 12/20/2025 | MRT | 1.00 | $650.00 | Review of Proof of Claim No. 4 filed by Ark Watch / Celine Myers forwarded it to the Debtor's president and conferred regarding any objection. |
| 12/22/2025 | MRT | 0.40 | $260.00 | Review of Proof of Claim No. 6 filed by Celine Myers and The Ark Watch Foundation; forwarded it to the Debtor's president and conferred regarding any objection. |
| 12/23/2025 | MRT | 0.30 | $195.00 | Review of Proof of Claim No. 5 filed by Darlene Sears; forwarded it to the Debtor's president and conferred regarding any objection. |
| 12/23/2025 | MRT | 0.20 | $130.00 | Review of Proof of Claim No. 9 filed by San Diego Gas & Electric; forwarded it to the Debtor's president and conferred regarding any objection. |
| 12/24/2025 | MRT | 0.20 | $130.00 | Review of Proof of Claim No. 7 relating to the River Falls, first loan; comparison with the loan documents and title report. |
| 12/25/2025 | MRT | 0.30 | $195.00 | Review of Proof of Claim No. 8 filed by Bruno Gonzalez; forwarded it to the Debtor's president and conferred regarding any objection. |
| 01/12/2026 | MRT | 0.20 | $130.00 | Review of Proof of Claim No. 10 filed by Margaret Mannex |
| 01/17/2026 | MRT | 0.30 | $195.00 | Review of Proof of Claim No. 11 filed by Dale Fullerton telephone conference with the Debtor's president regarding the claim. |
| | | **4.80** | **$3,120.00** | **Category total** |

### SUMMARY

| Category | Hours | Amount |
|---|---|---|

| | | |
|---|---|---|
| B100 Client communications | 2.80 | $1,820.00 |
| B110 Case administration (MRT 16.90 / MJS 0.30) | 17.20 | $11,180.00 |
| B130 IDI, 341, hearings, travel | 19.20 | $12,480.00 |
| B140 Monthly operating reports | 3.10 | $2,015.00 |
| B150 Third-party communications | 3.40 | $2,210.00 |
| B185 Motion to Value (MJS) | 7.50 | $4,875.00 |
| B195 Miscellaneous filings | 1.40 | $910.00 |
| B220 Claims review | 4.80 | $3,120.00 |
| **TOTAL (MRT 52.50 / MJS 7.80)** | **60.30** | **$38,195.00** |